## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| **MAYOR AND CITY COUNCIL OF OCEAN CITY MARYLAND,** *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No: 1:24-cv-03111-SAG |
| **UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.* | * | |
| Defendants, | * | |
| and | * | |
| **US WIND, INC.** | * | |
| Defendant-Intervenor. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT-INTERVENOR US WIND'S AMENDED ANSWER, CROSS CLAIM AND COUNTERCLAIM

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant-Intervenor US Wind, Inc. ("US Wind"), by and through its undersigned counsel, submit the following Answer to the claims and allegations set forth in the Amended Complaint to Reverse and Set Aside Final Agency Action ("Amended Complaint") (ECF No. 32) filed by Plaintiffs. This Answer is made subject to the following limitations as if fully set forth herein.

*First*, this Answer is made subject to the Court's Order (ECF No. 69, the "Order"), dated July 2, 2025, which ruled on Defendants' Motions to Dismiss (ECF Nos. 37 & 39). To the extent that the Amended Complaint contains allegations regarding claims, theories, or facts that have been dismissed or have been otherwise rendered immaterial by the Order or any other orders issued by the Court, or which refer to the claims, theories, or facts that have been dismissed, no response

is required to such allegations. Moreover, any responses in this Answer do not constitute acknowledgment or admission of the validity or relevance of such allegations.

*Second*, where US Wind states that it lacks knowledge or information sufficient to form a belief about the truth of a certain allegation, US Wind reserves the right to argue that the allegation is true or false based on the evidence. Similarly, where US Wind denies a certain allegation on the basis that the allegation pertains to Plaintiffs' claims, theories, or facts that have been dismissed, mooted, stayed, or otherwise rendered immaterial by the Court's July 2, 2025 Order granting in part Defendants' Motions to Dismiss, US Wind reserves the right to argue that the allegation is true or false based on the evidence.

*Third*, the corresponding section headings and subheadings throughout the Amended Complaint contain characterizations to which no response is required. To the extent a response is deemed required, US Wind denies any allegations in the section headings and subheadings.

*Fourth*, where an allegation identifies, incorporates, or references a separate document, denial of such allegation also denies any similar allegation contained in such document and denies that such document supports the allegation.

First unnumbered paragraph: US Wind denies the allegations in the first unnumbered paragraph of the Amended Complaint.

Second unnumbered paragraph: US Wind admits that the Bureau of Ocean Energy Management ("BOEM") issued the referenced Record of Decision ("ROD") approving the Final Environmental Impact Statement ("FEIS") for the Construction and Operations Plan ("COP") of the Maryland Offshore Wind Project (the "Project") on September 4, 2024, but denies the allegation in the first sentence of the second unnumbered paragraph of the Amended Complaint that the ROD constituted BOEM's approval of the COP and denies all other allegations in such

sentence. The allegations in the second sentence of such paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, US Wind denies such allegations.

Third unnumbered paragraph: US Wind denies the allegations in the third unnumbered paragraph of the Amended Complaint.

1. In response to the allegations in paragraph 1 of the Amended Complaint, US Wind denies the allegations in the seventh sentence, including without limitation that "Ocean City will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the construction and operations of the Maryland Offshore Wind Project." US Wind admits that Plaintiff the Mayor and City Council of Ocean City, Maryland submitted comments on the Draft Environmental Impact Statement ("DEIS") and otherwise denies the allegations in the eighth sentence of paragraph 1 on the basis that such comments speak for themselves. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

2. In response to the allegations in paragraph 2 of the Amended Complaint, US Wind denies the allegation in the fifth, sixth, and seventh sentences, including without limitation that the "Project's 114 turbines just 10.7 miles off the coast will destroy the pristine ocean view, degrade water quality, injure marine life, and create safety issues, and will deter seasonal residents and tourists from traveling to Fenwick Island" and that "the Town of Fenwick Island will suffer significant, cognizable injuries in fact by the construction and operations of the Maryland Offshore Wind Project." US Wind admits that Plaintiff the Mayor and Town Council of Fenwick Island submitted certain comments on the DEIS and a proposed Marine Mammal Protection Act ("MMPA") Letter of Authorization and otherwise denies the allegations in the eighth and ninth

sentences of paragraph 2 on the basis that the referenced comments speak for themselves. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

3.      In response to the allegations in paragraph 3 of the Amended Complaint, US Wind denies the allegations in the seventh sentence, including without limitation that "the unobstructed views, healthy marine life, and property values of the County will be adversely impacted by the Project" and that "Worcester County will suffer direct, substantial, and cognizable injuries-in-fact by the construction and operations of the Maryland Offshore Wind Project." US Wind denies the allegations in sentence eight of paragraph 3 on the basis that any such comments and objections speak for themselves. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

4.      In response to the allegations in paragraph 4 of the Amended Complaint, US Wind denies the allegations in the third sentence, including without limitation that "the Project will degrade the marine environment, create navigational hazards, exclude sportfisherman from their popular and traditional fishing spots" and that "the Association and its members will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

5.      In response to the allegations in paragraph 5 of the Amended Complaint, US Wind denies the allegations in the fourth sentence, including without limitation that "the Project will cause adverse impacts to tourism, recreation, and industry in the area" and that "Bay Shore Development Corporation will suffer direct, substantial, and cognizable injuries-in-fact by the

construction and operations of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

6.    In response to the allegations in paragraph 6 of the Amended Complaint, US Wind denies the allegations in the first and third through tenth sentences, including without limitation that "many of the Institute's members will suffer injury-in-fact caused by this Project," "the Project will generate unreliable energy . . . forcing the Institute, and its members, to pay for more electricity," "prices will continue to rise once the Project is constructed," and "the Project's impacts to the marine environment and commercial fisherman will injure the Institute's members." US Wind further denies that the Institute "will be injured by the Project because the Project directly injures the Institute's, and the ability of David Stevenson, the Director of the Center for Energy & Environment and member of the Institute, to study the North Atlantic Right Whale," "the Project adversely impacts tourism, degrades the marine environment, excludes commercial fisherman from their traditional fishing grounds, and threatens the continued existence and presence of the North American Right Whale" and "the Caesar Rodney Institute will suffer significant, cognizable injuries." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

7.    In response to the allegations in paragraph 7 of the Amended Complaint, US Wind denies the allegations in the seventh sentence, including without limitation that "the Project will cause adverse impacts to the ocean views and pristine marine environment that draws tourists to Ocean City and supports property values in the Caine Woods community" and that the "Association will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of

Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

8.    In response to the allegations in paragraph 8 of the Amended Complaint, US Wind denies the allegations in the seventh sentence, including without limitation that "the Project will adversely impact the unobstructed ocean views and destroy the healthy marine environment that Castle in the Sand's hotels and businesses depend on" and "Castle in the Sand, Inc. will suffer direct, substantial and cognizable injuries in fact by the construction and operations of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

9.    In response to the allegations in paragraph 9 of the Amended Complaint, US Wind denies the allegations in the third through fifth sentences, including without limitation that "the Project will negatively impact Citizens for Ocean City's members, who include residents, business owners, and fishermen of Ocean City, and they will experience a decrease in tourism, which will lead to a loss of revenue, navigation issues that will create safety hazards, and an industrialized ocean view that will decrease property values and discourage people from living in Ocean City," US Wind further denies that the "Project will cause Citizens for Ocean City to lose members, who will leave the community and no longer utilize the information sources Citizens for Ocean City provides" and that "the Project will cause adverse impacts to the tourism industry, degrade the marine environment, drive commercial fishermen from their traditional fishing locations, and push residents and tourists out of Ocean City" and "Citizens for Ocean City will suffer significant, cognizable injuries." US Wind lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

10.     In response to the allegations in paragraph 10 of the Amended Complaint, US Wind denies the allegations in the fourth, sixth, and seventh sentences, including without limitation that "the Association's purpose, and its members interests, are inextricably linked to the health of the marine environment and the pristine unobstructed ocean views," that "the Project's adverse impacts on the marine environment and coastal visual resources will adversely affect the property values in Ocean City and nearby communities" and "the Association will suffer direct, substantial, and cognizable injuries-in-fact by the construction and operations of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

11.     In response to the allegations in paragraph 11 of the Amended Complaint, US Wind denies the allegations in sentences three through five, eight, eleven, and twelve, including without limitation that "the construction boats for the Project, which will be utilizing the Ocean City Inlet and Harbor, causing boat traffic congestion and dangerous conditions for Collins when he is traveling in and out of the Harbor," that "the construction and operation of the turbines and substations will force Collins out of the Project area, and he will lose access to the beautiful, unimpeded ocean landscape that Collins has enjoyed for many years," that "the Project will also interfere with the navigation and radar systems that Collins relies on to safely travel through the Project's lease area," that "the viewshed that Collins has enjoyed for years will be destroyed and will drive the whales that he views out of the area," that the "Project's turbines will endanger these birds, which will be killed by flying into the turbines," that the "Project will cause adverse impacts to Collins' recreational boating, birdwatching, and whale watching activities," that "the Project

will degrade the marine environment," that "Collins will suffer significant, cognizable injuries-in-fact due to the Project's impacts on recreational boating, whale watching, and birdwatching and the impact to whales and migratory and endangered birds." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

12.    In response to the allegations in paragraph 12 of the Amended Complaint, US Wind denies the allegations in the fifth sentence, including without limitation that the "Project will cause fewer tourists to come to Ocean City" and that "the Association will suffer direct, substantial, and cognizable injuries-in-fact as a result of the construction and operations of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

13.    In response to the allegations in paragraph 13 of the Amended Complaint, US Wind denies the allegations of the fifth and sixth sentences, including without limitation that "[t]he construction, installation, and operation of the Maryland Offshore Wind Project will cause tourists and seasonal visitors to choose to visit other resort locations with unindustrialized views and destroyed healthy marine environments, meaning less demand and less revenue for the Fagers Island hotels and restaurants," that the "Project will cause fewer tourists to come to Ocean City" and that "Fagers Island Ltd will suffer direct, substantial, and cognizable injuries in fact as a result of the construction and operations of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

14.    In response to the allegations in paragraph 14 of the Amended Complaint, US Wind denies the allegations in the seventh sentence, including without limitation that "Mr. Topping will suffer direct, substantial, and cognizable injuries-in-fact from the Project's adverse impacts on the marine environment and ocean-based business and industry." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

15.    In response to the allegations in paragraph 15 of the Amended Complaint, US Wind denies the allegations in the sixth sentence, including without limitation that the "Maryland Offshore Wind Project will adversely impact the unobstructed ocean views, healthy marine environment, and interfere with the full enjoyment of Maryland's beaches" and that "Harrison Group General LLC will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

16.    In response to the allegations in paragraph 16 of the Amended Complaint, US Wind denies the allegations in the fourth sentence, including without limitation that the "Project will cause fewer tourists to come to Ocean City" and that "James Hospitality's business will suffer direct, substantial, and cognizable injuries-in-fact from the Project's impacts on the environment and tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

17.    In response to the allegations in paragraph 17 of the Amended Complaint, US Wind denies the allegations in the eighth sentence, including without limitation that "the Project will

degrade the marine environment, create navigational hazards, exclude commercial fisheries from popular fishing spots, and stymie tourism" and that "the Gwins will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

18.     In response to the allegations in paragraph 18 of the Amended Complaint, US Wind denies the allegations in the third sentence, including without limitation that the "Project will destroy the open ocean landscape that Pawloski photographs and destroy her aesthetic enjoyment of the Delaware and Maryland coastlines" and that "Pawloski will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

19.     In response to the allegations in paragraph 19 of the Amended Complaint, US Wind denies the allegations in the sixth sentence, including without limitation that the "Project will cause adverse impacts to tourism, recreation, and industry in the area," that "the Project will degrade the marine environment that migratory and endangered birds rely on and injure and kill migratory birds" and that "Trader will suffer significant, cognizable injuries in fact due to the Project's impacts on tourism and impacts on migratory and endangered birds." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

20.     In response to the allegations in paragraph 20 of the Amended Complaint, US Wind denies the allegations in the fourth and fifth sentences, including without limitation that "the construction and operation of the turbines for this Project will substantially and adversely impact

10

the marine environment, the unimpeded view, and destroy access to fishing areas," that "fewer people will buy or lease properties in this community, and property values will go down," that "the Little Salisbury Civic Association will suffer direct, substantial, and cognizable injuries-in-fact from the Project's impacts on Ocean City's visual resources." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

21.     In response to the allegations in paragraph 21 of the Amended Complaint, US Wind denies the allegations in the ninth sentence, including without limitation that "the Project will degrade the marine environment where he fishes, create navigational hazards, exclude him and the fishermen who rent his boat from fishing in their traditional fishing grounds, and reduce the population of target species" and that "Coppa will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

22.     In response to the allegations in paragraph 22 of the Amended Complaint, US Wind denies the allegations in the fourth sentence, including without limitation that "the Project will cause adverse impacts to tourism, recreation, and industry in the area" and that Ocean Amusement Inc. "will suffer significant, cognizable injuries-in-fact due to the Project's impact on tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

23.     In response to the allegations in paragraph 23 of the Amended Complaint, US Wind denies the allegations in the sixth, eighth, and ninth sentences, including without limitation that "the Maryland Offshore Wind Project and its 114 turbines sited 10.7 miles off the beach will

directly impact the Corporation because it will deter people from visiting Ocean City, directly injuring the Downtown community and the businesses," that "once this Project is built" people will "stop coming to Ocean City because the features that they once enjoyed are gone," that "the Downtown businesses will face substantial if not ruinous financial hardship, and the essence of Downtown Ocean City will be destroyed, including the Corporation," and that "the Corporation will suffer significant, cognizable injuries-in-fact due to the Project's impacts on tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

24.    In response to the allegations in paragraph 24 of the Amended Complaint, US Wind denies the allegations in the seventh, eighth, and ninth sentences, including without limitation that the "Project will deter people from visiting," "the Project will directly threaten the livelihood of the Association's members and their business's continued existence," that the "Maryland Offshore Wind Project's 114 turbines, 10.7 miles off the Ocean City beach, pose an immediate concrete threat to the tourism-based businesses who are members of the Association," and that "the Association will suffer significant cognizable injuries-in-fact by the construction and operation of the Maryland Offshore Wind Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

25.    In response to the allegations in paragraph 25 of the Amended Complaint, US Wind denies the allegations in the sixth sentence, including without limitation that the Maryland Offshore Wind Project will be "devastating" on the "views of the Ocean City Inlet, Assateague Island, and the Atlantic Ocean," that the "Project will cause fewer tourists to come to Ocean City" and that the Marlin Club "will suffer direct, substantial, and cognizable injuries-in-fact from the

Project's impacts on the marine environment, navigability, port utilization, and marine safety." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

26.     In response to the allegations in paragraph 26 of the Amended Complaint, US Wind denies the allegations in the sixth, seventh, and eighth sentences, including without limitation that "the Project will drive tourists away from Ocean City by degrading the ocean and marine environment, interfere with boating and sailing, endangering marine mammals, birds, and fish, excluding fisherman from the Project area, and destroying the open ocean view," that, as a result of the Maryland Offshore Wind Project, tourists will "no longer enjoy trash and debris-free beaches, swim, boat, sail, and fish in clean waters off Ocean City, enjoy coastal birds and marine life that fly and swim offshore, and enjoy the vast, unindustrialized ocean views," and that the "Chamber of Commerce will suffer significant, cognizable injuries-in-fact from the Project's impacts on the environment and tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

27.     In response to the allegations in paragraph 27 of the Amended Complaint, US Wind denies the allegations in the sixth sentence, including without limitation "the Project will cause adverse impacts to tourism and will degrade the marine environment" and that "the Association will suffer significant, cognizable injuries-in-fact due to the Project's impacts on tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

28.     In response to the allegations in paragraph 28 of the Amended Complaint, US Wind denies the allegations in the sixth sentence, including without limitation that the "Project's adverse

impacts threaten the continued viability of the North Atlantic Right Whale" and that "the Coalition will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project's impacts on the marine environment, including marine mammals and the interconnected marine benthic habitat." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

29.    In response to the allegations in paragraph 29 of the Amended Complaint, US Wind denies the allegations in the ninth, tenth and eleventh sentences, including without limitation that "the Maryland Offshore Wind Project will adversely impact the tourism that the Buas hotels and motel depend on by cluttering the Ocean City viewshed with massive physical structures that will be visible during the day and night," that the Project is "degrading the marine environment, endangering wildlife, excluding fisherman from the Project area, and littering debris and trash on the beaches," that "the Project will cause adverse impacts to the tourism industry by destroying the viewshed and degrading the marine environment" and that "Spiros Buas will suffer significant, cognizable injuries." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

30.    In response to the allegations in paragraph 30 of the Amended Complaint, US Wind denies the allegations in the tenth sentence, including without limitation that "the Project will degrade the marine environment critical for the recreational fishing industry and add massive turbines that will obstruct the safe passage of vessels offshore" and "will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

31.    In response to the allegations in paragraph 31 of the Amended Complaint, US Wind denies the allegations in the fourth sentence, including without limitation that "the Project will cause adverse impacts to tourism, marine and ocean-based recreation and industry in the area" and that Time Inc. "will suffer significant, cognizable injuries-in-fact due to the Project's impacts on tourism." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

32.    In response to the allegations in paragraph 32 of the Amended Complaint, US Wind denies the allegations in the fourth, fifth, and sixth sentences, including without limitation that "the 114 turbines will be a safety hazard for their members to navigate through and will create congested transit lanes for their boaters and fishermen who are to travel through a safe passage around the Project," that "the Project will increase the amount of time it takes for their members to reach their fishing grounds, which will reduce the amount of time they have to fish and will decrease their income," that "the Project creates navigational hazards that block the traditional transit lanes" and that the Waterman's Association of Worcester County "will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

33.    In response to the allegations in paragraph 33 of the Amended Complaint, US Wind denies the allegations in the fourth, fifth, and sixth sentences, including without limitation that "the Project threatens to destroy the areas fish habitat and decrease the fish population and directly impair the sport of large game fishing in Ocean City, Maryland." US Wind further denies that "the

Project also poses navigational hazards for fishermen who must navigate around the many Project structures, often times hours out of the way, to reach their fishing destinations." US Wind further denies that "the Project creates navigational hazards and degrades the marine life that the Open depends on to draw visitors each year" and that White Marlin Open, Inc. "will suffer direct, substantial, and cognizable injuries-in-fact as a direct result of the Project." US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the referenced paragraph and, on that basis, denies those allegations.

34.    The allegations in paragraph 34 of the Amended Complaint assert legal conclusions, to which no response is required.

35.    US Wind admits that the U.S. Department of the Interior is an agency of the federal government and otherwise denies the allegations in paragraph 35 of the Amended Complaint.

36.    US Wind admits that BOEM is a federal agency within the Department of the Interior and otherwise denies the allegations in paragraph 36 of the Amended Complaint.

37.    US Wind admits that the National Marine Fisheries Services is a federal agency and is part of the National Oceanic and Atmospheric Administration within the U.S. Department of Commerce. US Wind otherwise denies the allegations in paragraph 37 of the Amended Complaint.

38.    The allegations in paragraph 38 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

39.    The allegations in paragraph 39 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

40.    The allegations in paragraph 40 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

41. The allegations in paragraph 41 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

42. The allegations in paragraph 42 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

43. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Amended Complaint and, on that basis, denies those allegations.

44. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Amended Complaint and, on that basis, denies those allegations. In further response, US Wind refers to the vision statement referenced in said paragraph for its full and complete contents.

45. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Amended Complaint and, on that basis, denies those allegations.

46. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Amended Complaint and, on that basis, denies those allegations.

47. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Amended Complaint and, on that basis, denies those allegations.

48. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Amended Complaint and, on that basis, denies those allegations.

49.    The allegations in paragraph 49 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations for failing to fully and accurately set forth the contents of the Outer Continental Shelf Lands Act ("OCSLA") and cited caselaw, which speak for themselves.

50.    The allegations in paragraph 50 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, including for failing to fully and accurately set forth the contents of OCSLA, which speak for themselves.

51.    US Wind admits the allegations in the first sentence of paragraph 51 of the Amended Complaint and denies the remaining allegations of paragraph, including for failing to fully and accurately set forth the contents of the referenced document, which speaks for itself.

52.    US Wind denies the allegations in paragraph 52 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the referenced document, which speaks for itself.

53.    US Wind denies the allegations in paragraph 53 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the referenced document, which speaks for itself.

54.    US Wind denies the allegations in paragraph 54 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the referenced documents, which speak for themselves.

55.    US Wind admits that BOEM and US Wind executed Leases OCS-A 0489 and OCS-A 0490 effective December 1, 2014; that, by lease amendment effective March 1, 2018, the leases were merged into a single lease, Lease OCS-A 0490, and that such merged lease consists of

approximately 79,707 acres. US Wind otherwise denies the allegations of paragraph 55 of the Amended Complaint.

56.     In response to the allegations in paragraph 56 of the Amended Complaint, US Wind admits that in 2017, the State of Maryland awarded US Wind Offshore Wind Renewable Energy Credits ("ORECs") for an approximately 300 megawatts (MW) offshore wind facility; that in 2021, the State of Maryland awarded US Wind another set of ORECS for an 808 MW offshore wind facility; but US Wind otherwise denies the remaining allegations in paragraph 56, including for failing to fully and accurately set forth the contents of the referenced laws and government actions, which speak for themselves.

57.     In response to the allegations in paragraph 57 of the Amended Complaint, US Wind admits that the COP for the Project encompasses MarWin, a wind farm of approximately 300 MWand Momentum Wind consisting of approximately 808 MW as well as the build out of the remainder of the Lease area. US Wind otherwise denies the allegations of paragraph 57, including for failing to fully and accurately set forth the contents of the COP, which speaks for itself.

58.     US Wind admits that, on October 6, 2023, BOEM gave notice of the public availability of the Draft Environmental Impact Statement for the COP for the Project for public review and comment and that, on July 29, 2024, BOEM gave notice of the public availability of the FEIS. US Wind denies any other or inconsistent allegation in paragraph 58 of the Amended Complaint.

59.     US Wind admits that, on June 18, 2024, NMFS published a Biological Opinion ("BiOp") in accordance with Section 7 of the Endangered Species Act ("ESA") on the effects of BOEM's proposed approval, with conditions, of the COP for the Project, and that the BiOp determined after extensive analysis that the COP activities are not likely to jeopardize the

continued existence of any ESA-listed species, including the North Atlantic Right Whale. US Wind otherwise denies the allegations in paragraph 59 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the BiOp, which speaks for itself.

60.    US Wind admits that, on September 4, 2024, BOEM and NMFS issued their joint ROD for the FEIS for the Project. US Wind denies any other or inconsistent allegation in paragraph 60 of the Amended Complaint.

61.    US Wind admits that, on October 23, 2024, NMFS promulgated regulations pursuant to the Marine Mammal Protection Act ("MMPA") to govern the Level B incidental taking of marine mammals during the construction of the Project from January 1, 2025, through December 31, 2029. US Wind denies any other or inconsistent allegation in paragraph 61 of the Amended Complaint.

62.    US Wind admits that, on December 2, 2024, BOEM notified US Wind that it had approved the COP for the Project and granted a project easement requested by US Wind pursuant to the terms of the Lease and 30 C.F.R. § 585.200(b). US Wind denies any other or inconsistent allegation in the first sentence of paragraph 62 of the Amended Complaint. US Wind denies the allegations in the second sentence of paragraph 62.

63.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

64.    The allegations in paragraph 64 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

65.     The allegations in paragraph 65 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

66.     The allegations in paragraph 66 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

67.     The allegations in paragraph 67 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

68.     US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

69.     US Wind admits that the Project will be built on the Outer Continental Shelf ("OCS") and that the OCS is vast. US Winds lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 69 of the Amended Complaint and, on that basis, denies those allegations. The second sentence of paragraph 69 states legal conclusions to which no response is required. To the extent a response is required, US Wind denies those allegations for failing to fully and accurately set forth the contents of the referenced decision, which speaks for itself.

70.     Paragraph 70 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, US Wind denies those allegations for

failing to fully and accurately set forth the contents of the referenced statute, which speaks for itself.

71.     Paragraph 71 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, US Wind denies those allegations for failing to fully and accurately set forth the contents of the referenced statute, which speaks for itself.

72.     US Wind denies the allegations in paragraph 72 of the Amended Complaint.

73.     US Wind denies the allegations in paragraph 73 of the Amended Complaint

74.     US Wind denies the allegations in paragraph 74 of the Amended Complaint, for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself.

75.     US Wind denies the allegations in the first, second and third sentences of paragraph 75 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself. US Winds lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75 and, on that basis, denies those allegations.

76.     US Wind denies the allegations in paragraph 76 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

77.     US Wind denies the allegations in paragraph 77 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

78.     US Wind denies the allegations in paragraph 78 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

79.     The allegations in the first sentence of paragraph 79 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations

on the basis that they fail to fully and accurately set forth the contents of OCSLA, which speaks for itself. US Wind denies the allegations in the second sentence of paragraph 79.

80.    US Wind denies the allegations in paragraph 80 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself.

81.    In response to paragraph 81 of the Amended Complaint, US Wind denies the allegations in the first sentence. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said paragraph and, on that basis, denies those allegations.

82.    US Wind denies the allegations in paragraph 82 of the Amended Complaint.

83.    US Wind denies the allegations in paragraph 83 of the Amended Complaint.

84.    US Wind denies the allegations in paragraph 84 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

85.    US Wind denies the allegations in paragraph 85 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

86.    US Wind denies the allegations in paragraph 86 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

87.    US Wind denies the allegations in paragraph 87 of the Amended Complaint.

88.    US Wind denies the allegations in paragraph 88 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

89.    US Wind denies the allegations in paragraph 89 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

90.    US Wind denies the allegations in paragraph 90 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself.

91.    US Wind denies the allegations in paragraph 91 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself.

92.    US Wind denies the allegations in paragraph 92 of the Amended Complaint, including for failing to fully and accurately set forth the contents of the FEIS, which speaks for itself.

93.    US Wind denies the allegations in the first and second sentences of paragraph 93 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself. US Wind denies the allegations in the third sentence of paragraph 93.

94.    US Wind denies the allegations in paragraph 94 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the EIS, which speaks for itself.

95.    US Wind denies the allegations in the first and fourth sentences of paragraph 95 of the Amended Complaint. on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said paragraph and, on that basis, denies those allegations.

96.    In response to the allegations in paragraph 96 of the Amended Complaint, US Wind denies the allegations in the first, third, and fourth sentences. US Wind lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 96 and, on that basis, denies those allegations.

97.    In response to the allegations in paragraph 97 of the Amended Complaint, US Wind admits that the North Atlantic right whale is listed as an endangered species under the ESA; and that BOEM and NMFS issued the referenced document. US Wind otherwise denies the allegations in the first three sentences of paragraph 97, on the basis that they fail to fully and accurately set forth the contents of the document to which they refer, which speaks for itself.

98.    US Wind denies the allegations in paragraph 98 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

99.    US Wind denies the allegations in paragraph 99 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

100.    US Wind denies the allegations in paragraph 100 of the Amended Complaint.

101.    In response to the allegations in paragraph 101 of the Amended Complaint, the allegations in the first, second, fourth, and fifth sentences assert legal conclusions to which no response is required. To the extent a response is nonetheless deemed to be required, US Wind denies those allegations. US Wind denies the allegations in the third sentence of paragraph 101.

102.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the Amended Complaint and, on that basis, denies those allegations.

103.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 of the Amended Complaint and, on that basis, denies those allegations.

104.    US Wind denies the allegations in the first sentence of paragraph 104. US Wind denies the allegations in the second and third sentences of paragraph 104 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

105.    US Wind denies the allegations in the fifth sentences of paragraph 105. US Wind denies the remaining allegations in paragraph 105 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

106.    US Wind denies the allegations in paragraph 106 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

107.    US Wind denies the allegations in paragraph 107 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

108.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Amended Complaint and, on that basis, denies those allegations.

109.    US Wind denies the allegations in paragraph 109 of the Amended Complaint. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first through fourth sentences and, on that basis, denies those allegations. US Wind denies the allegations in the fifth sentence of paragraph 109, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

110.    US Wind denies the allegations in the first sentence of paragraph 110. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

second and third sentences and, on that basis, denies those allegations. The allegations in the fourth sentence of paragraph 110 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies those allegations.

111.    US Wind denies the allegations in paragraph 111 of the Amended Complaint.

112.    US Wind denies the allegations in paragraph 112 of the Amended Complaint.

113.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 113 and, on that basis, denies those allegations. US Wind denies the remaining allegations of paragraph 113, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

114.    US Wind denies the allegations in paragraph 114 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

115.    US Wind denies the allegations in paragraph 115 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the cited study, which speaks for itself.

116.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

117.    The allegations in paragraph 117 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

118.    The allegations in paragraph 118 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

119.    The allegations in paragraph 119 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations

120.    US Wind denies the allegations in paragraph 120 of the Amended Complaint.

121.    The allegations in paragraph 121 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

122.    The allegations in paragraph 122 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

123.    US Wind denies the allegations in the first sentence of paragraph 123 of the Amended Complaint. The allegations in the second sentence consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

124.    The allegations in paragraph 124 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations. US Wind also denies the allegations in paragraph 124 because they fail to fully and accurately set forth the contents of the cited documents, which speak for themselves.

125.    The allegations in paragraph 125 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations. US Wind also denies the allegations in paragraph 125 because they fail to fully and accurately set forth the contents of the cited documents, which speak for themselves.

126.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 126 and, on that basis, denies those allegations. US Wind denies the remaining allegations of paragraph 126.

127.    US Wind denies the allegations in the first and second sentences of paragraph 127, including on the basis that they fail to fully and accurately set forth the contents of the referenced document, which speaks for itself. The remaining allegations in paragraph 127 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

128.    The allegations in paragraph 128 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 128 of the Amended Complaint.

129.    The allegations in paragraph 129 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations on the basis that they fail to fully and accurately set forth the contents of the referenced statute and regulation; the allegations speak for themselves.

130.    The allegations in paragraph 130 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

131.    The allegations in paragraph 131 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations

132.    US Wind denies the allegations in paragraph 132 of the Amended Complaint.

133.    US Wind denies the allegations in paragraph 133 of the Amended Complaint.

134.    US Wind denies the allegations in paragraph 134 of the Amended Complaint.

135.    US Wind denies the allegations in paragraph 135 of the Amended Complaint.

136.    US Wind denies the allegations in paragraph 136 of the Amended Complaint.

137.    US Wind denies the allegations in paragraph 137 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

138.    US Wind denies the allegations in paragraph 138 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

139.    US Wind denies the allegations in the first and third sentences of paragraph 139 on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself. US Wind denies the allegations in the second sentence of paragraph 139. US Wind admits that, to date, the State of Maryland has granted US Wind the ORECs reflected in the COP and otherwise denies the allegations in paragraph 139 of the Amended Complaint.

140.    US Wind denies the allegations in paragraph 140 of the Amended Complaint.

141.    US Wind denies the allegations in paragraph 141 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

142.    The allegations in paragraph 142 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 142 of the Amended Complaint.

143.    The allegations in paragraph 143 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 143 of the Amended Complaint.

144.    The allegations in paragraph 144 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 144 of the Amended Complaint

145.    The allegations in paragraph 145 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 145 of the Amended Complaint.

146.    The allegations in paragraph 146 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 146 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

147.    US Wind denies the allegations in paragraph 147 of the Amended Complaint.

148.    US Wind denies the allegations in paragraph 148 of the Amended Complaint.

149.    The allegations in paragraph 149 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in the first sentence of paragraph 149 of the Amended Complaint. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences and, on that basis, denies those allegations.

150.    US Wind denies the allegations in the first sentence of paragraph 150 of the Amended Complaint. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 150 and, on that basis, denies those allegations.

151.    US Wind denies the allegations in paragraph 151 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the FEIS and COP, which speak for themselves.

152.    US Wind denies the allegations in paragraph 152 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

153.    US Wind denies the allegations in paragraph 153 of the Amended Complaint.

154.    US Wind denies the allegations in paragraph 154 of the Amended Complaint.

155.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155 of the Amended Complaint and, on that basis, denies those allegations.

156.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the Amended Complaint and, on that basis, denies those allegations.

157.    US Wind denies the allegations in paragraph 157 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the cited letter, which speaks for itself.

158.    US Wind denies the allegations in the first, second and third sentences of paragraph 158 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the referenced comments, which speak for themselves. US Wind denies the allegations in the fourth sentence of paragraph 158.

159.    US Wind denies the allegation in the second sentence of paragraph 159 of the Amended Complaint that "BOEM failed to adequately analyze the impacts on the local economy

and tourism-based industries of Ocean City, Maryland, Fenwick Island, Delaware, and Worcester County, Maryland." The remaining allegations of the referenced paragraph consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

160.    US Wind denies the allegations in paragraph 160 of the Amended Complaint.

161.    US Wind denies the allegations in the first sentence of paragraph 161 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced studies, which speak for themselves.

162.    US Wind denies the allegations in paragraph 162 of the Amended Complaint.

163.    US Wind denies the allegations in paragraph 163 of the Amended Complaint.

164.    US Wind denies the allegations in paragraph 164 of the Amended Complaint.

165.    US Wind denies the allegations in paragraph 165 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

166.    US Wind denies the allegations in paragraph 166 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

167.    US Wind denies the allegations in paragraph 167 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

168.    US Wind denies the allegations in paragraph 168 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

169.    US Wind denies the allegations in paragraph 169 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

170.    US Wind denies the allegations in paragraph 170 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

171.    US Wind denies the allegations in paragraph 171 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the referenced FEIS, which speaks for itself.

172.    US Wind denies the allegations in paragraph 172 of the Amended Complaint.

173.    US Wind denies the allegations in paragraph 173 of the Amended Complaint.

174.    The allegations in Paragraph 174 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

175.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 of the Amended Complaint and, on that basis, denies those allegations.

176.    US Wind denies the allegations in paragraph 176 of the Amended Complaint.

177.    US Wind denies the allegations in paragraph 177 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the COP, DEIS, and FEIS, which speak for themselves.

178.    US Wind lacks knowledge or information sufficient to form a belief as to the trust of the allegations in the first and second sentences of Paragraph 178 of the Amended Complaint

and, on that basis, denies these allegations, and US Wind denies the allegations in the third sentence.

179.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

180.    The allegations in Paragraph 180 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

181.    The allegations in Paragraph 181 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

182.    The allegations in Paragraph 182 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

183.    US Wind denies the allegations in paragraph 183 of the Amended Complaint.

184.    US Wind denies the allegations in paragraph 184 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the BiOp and the BOEM and NOAA Fisheries North Atlantic Right Whale and Offshore Wind Strategy ("Strategy"), which speak for themselves.

185.    US Wind denies the allegations in paragraph 185 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the BiOp and Strategy, which speak for themselves.

186.    US Wind denies the allegations in paragraph 186 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the Strategy, which speaks for itself.

187.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187 of the Amended Complaint and, on that basis, denies those

allegations. US Wind also denies the allegations in paragraph 186 on the basis that they fail to fully and accurately set forth the contents of the cited NOAA report, which speaks for itself.

188.    US Wind denies the allegations in Paragraph 188 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the Draft North Atlantic Right Whale and Offshore Wind Strategy ("Draft Strategy") and refers to the Draft Strategy, which speak for themselves.

189.    US Wind denies the allegations in Paragraph 189 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the Strategy and refers to the Strategy, which speak for themselves.

190.    US Wind denies the allegations in Paragraph 190 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the Strategy and refers to the Strategy, which speak for themselves.

191.    US Wind denies the allegations in paragraph 191 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the BiOp, which speaks for itself..

192.    US Wind denies the allegations in paragraph 192 of the Amended Complaint.

193.    US Wind denies the allegations in Paragraph 193 of the Amended Complaint on the basis that they fail to fully and accurately set forth the contents of the Strategy and BiOp, which speak for themselves.

194.    The allegations in Paragraph 194 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 194 of the Amended Complaint.

195.    The allegations in Paragraph 195 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 195 of the Amended Complaint.

196.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196 of the Amended Complaint and, on that basis, denies those allegations.

197.    US Wind denies the allegations in paragraph 197 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the FEIS, which speaks for itself.

198.    US Wind denies the allegations in paragraph 198 of the Amended Complaint, including on the basis that the allegations fail to fully and accurately set forth the contents of the BiOp, which speaks for itself.

199.    US Wind denies the allegations in paragraph 199 of the Amended Complaint.

200.    The allegations in Paragraph 200 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations in paragraph 200 of the Amended Complaint on the basis that the allegations fail to fully and accurately set forth the contents of the BiOp, which speaks for itself.

201.    US Wind denies the allegations in paragraph 201 of the Amended Complaint and refers to the Strategy, which speaks for itself.

202.    US Wind denies the allegations in paragraph 202 of the Amended Complaint.

203.    US Wind denies the allegations in paragraph 203 of the Amended Complaint.

204.    US Wind denies the allegations in paragraph 204 of the Amended Complaint.

205.     US Wind denies the allegations in Paragraph 205 of the Amended Complaint on the basis that the allegations fail to fully and accurately set forth the contents of the July 2023 study which speaks for itself.

206.     US Wind denies the allegations in paragraph 206 of the Amended Complaint.

207.     US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third and fourth sentences in Paragraph 207 of the Amended Complaint and, on that basis, denies those allegations. US Wind denies the remaining allegations in paragraph 207 of the Amended Complaint and refers to the BiOp, which speaks for itself.

208.     US Wind denies the allegations in paragraph 208 of the Amended Complaint, including on the basis that they fail to fully and accurately set forth the contents of the BiOp, which speaks for itself.

209.     US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

210.     The allegations in Paragraph 210 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

211.     The allegations in Paragraph 211 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

212.     The allegations in Paragraph 212 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations.

213.     The allegations in Paragraph 213 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited regulation speaks for itself.

214.    The allegations in Paragraph 214 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited NMFS rulemaking speaks for itself.

215.    The allegations in Paragraph 215 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited statute speaks for itself.

216.    The allegations in Paragraph 216 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited NMFS rulemaking speaks for itself.

217.    The allegations in Paragraph 217 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited NMFS rulemaking speaks for itself.

218.    The allegations in Paragraph 218 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations and refers to the cited NMFS rulemaking, Strategy, and NMFS report, which speak for themselves.

219.    The allegations in paragraph 219 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies those allegations and refers to the Letter of Authorization statute, which speaks for itself, in said paragraph for its full and complete contents.

220.    The allegations in Paragraph 220 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations and refers to the cited NMFS rulemaking in said paragraph, which speaks for itself.

221.    The allegations in Paragraph 221 of the Amended Complaint consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations and the cited statute and NMFS materials, which speak for themselves.

222.    The second sentence in the allegations in Paragraph 222 of the Amended Complaint consists of legal conclusions, to which no response is required. US Wind denies the last sentence in the allegations in Paragraph 222 of the Amended Complaint. US Wind lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 222 of the Amended Complaint and, on that basis, denies those allegations. US Wind also denies the allegations in paragraph 222 of the Amended Complaint for failing to fully and accurately set forth the contents of the cited documents, which speak for themselves.

223.    US Wind denies the allegations in paragraph 223 of the Amended Complaint.

224.    US Wind denies the allegations in paragraph 224 of the Amended Complaint.

225.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225 of the Amended Complaint and which speaks for itself..

226.    US Wind denies the allegations in Paragraph 226 of the Amended Complaint for failing to fully and accurately set forth the contents of the NMFS authorization, which speaks for itself.

227.    US Wind denies the allegations in Paragraph 227 of the Amended Complaint.

228.    Paragraph 228 in the Amended Complaint does not contain any allegations. Therefore, no response is necessary.

229.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

230.    The allegations in paragraph 230 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statute speaks for itself.

231.    The allegations in Paragraph 231 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in Paragraph 231 of the Amended Complaint and the cited FEIS speaks for itself.

232.    The allegations in paragraph 232 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited FEIS speaks for itself.

233.    The allegations in paragraph 233 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

234.    The allegations in paragraph 234 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

235.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

236.    The allegations in paragraph 236 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statute speaks for itself.

237.    The allegations in paragraph 237 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statutes speak for themselves.

238.    The allegations in paragraph 238 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statute speaks for itself.

239.    The allegations in paragraph 239 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statute speaks for itself.

240.    The allegations in paragraph 240 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

241.    The allegations in paragraph 241 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no

response is required. To the extent a response is required, US Wind denies the allegations in said paragraph and the cited statute and regulations speak for themselves.

242.    The allegations in paragraph 242 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

243.    The allegations in paragraph 243 of the Amended Complaint relate to a cause of action that was dismissed by the Court in its July 2, 2025 Order. As such, US Wind states that no response is required. To the extent a response is required, US Wind denies the allegations in said paragraph.

244.    US Wind incorporates each of its responses to the allegations in the paragraphs above and below as if fully set forth herein.

245.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245 of the Amended Complaint and, on that basis, denies those allegations.

246.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246 of the Amended Complaint and, on that basis, denies those allegations.

247.    US Wind lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247 of the Amended Complaint and, on that basis, denies those allegations.

248.    The allegations in Paragraph 248 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies the allegations, and the cited statute speaks for itself.

249.    The allegations in the first sentence of Paragraph 248 consist of legal conclusions, to which no response is required. To the extent a response is required, US Wind denies such allegation. US Wind denies the remaining allegations in paragraph 249 of the Amended Complaint.

250.    US Wind denies the allegations in paragraph 250 of the Amended Complaint.

251.    US Wind denies the allegations in paragraph 251 of the Amended Complaint.

252.    US Wind denies the allegations in paragraph 252 of the Amended Complaint.

Any allegation in the Amended Complaint that is not expressly admitted or denied above is hereby denied.

In response to the Prayer for Relief, US Wind denies that Plaintiffs are entitled to any relief. To the extent US Wind has not specifically admitted any allegation herein, it is denied. Further, US Wind states that it is entitled to any relief that this Court may deem just or appropriate, in equity or at law.

## AFFIRMATIVE AND OTHER DEFENSES

The following matters are denominated as defenses without regard to whether they constitute affirmative defenses, and without altering Plaintiffs' burden of proof:

### FIRST DEFENSE

This Court does not have subject matter jurisdiction because Plaintiffs lack standing.

### SECOND DEFENSE

Plaintiffs have failed to state a claim upon which relief can be granted with respect to one or more of their claims.

**THIRD DEFENSE**

Judicial review of Plaintiffs' claims is barred pursuant to 42 U.S.C.A. § 4370m-6(a)(1)(B) and other applicable law as to one or more Plaintiffs because such Plaintiffs did not submit a comment during the environmental review.

**FOURTH DEFENSE**

Judicial review of Plaintiffs' claims is barred pursuant to 42 U.S.C.A. § 4370m-6(a)(1)(B) and other applicable law as to one or more issues on which Plaintiffs seek judicial review because Plaintiffs cannot establish that any commenter filed a sufficiently detailed comment so as to put the lead agency on notice of the issue.

**FIFTH DEFENSE**

One or more of Plaintiffs' claims is barred in whole or in part for failure to exhaust administrative remedies.

**SIXTH DEFENSE**

One or more of Plaintiffs' claims is barred by lack of legal capacity to sue.

**SEVENTH DEFENSE**

Plaintiffs' claims are barred in whole or in part by their reliance on materials outside the applicable administrative record.

**EIGHTH DEFENSE**

Plaintiffs' claims are barred because any and all final agency actions comported with the requirements of the Administrative Procedure Act and all other applicable statutes.

**NINTH DEFENSE**

Plaintiffs' claims for equitable relief are by unclean hands, waiver, or estoppel.

## **RESERVATION OF RIGHTS**

US Wind reserves the right to amend or supplement this Answer with additional defenses that become available or apparent during the course of the litigation.

## CROSS CLAIM AND COUNTERCLAIM

US Wind, Inc. ("US Wind") brings this Cross Claim and Counterclaim against the below-listed Cross and Counterclaim Defendants for declaratory and other relief and alleges as follows:

## **INTRODUCTION**

1.      Defendants the Department of the Interior, Secretary of the Interior Doug Burgum,[1] Bureau of Ocean Energy Management ("BOEM"), BOEM Acting Director Matthew Giacona,[2] National Marine Fisheries Service ("NMFS"), and NMFS Acting Assistant Administrator Eugenio Piñeiro Soler[3] (the "Federal Defendants") are illegally seeking to remand, vacate, and otherwise undermine their own approvals of actions (collectively, the "Federal Approvals") that are necessary for US Wind to exercise its rights under its Outer Continental Shelf ("OCS") lease to construct and operate the Maryland Offshore Wind Project (the "Project") off the coast of Maryland.

2.      The Federal Defendants' efforts to vacate and undermine the Federal Approvals are inextricably tied to a wider plan to hinder or kill outright offshore wind projects (and renewable energy projects more generally) for political purposes, as evidenced by numerous official acts and public statements by Federal Defendants, various members of the current Presidential Administration, and others within the federal government acting in concert with Federal Defendants.  The rationale offered by the Federal Defendants to justify the remand, vacatur, and undermining of the Federal Approvals—and any future rationales—are illegal, factually incorrect,

---

[1] Doug Burgum has been substituted for Deb Haaland per Federal Rule of Civil Procedure 25(d).
[2] Matthew Giacona has been substituted for Liz Klein per Federal Rule of Civil Procedure 25(d).
[3] Eugenio Piñeiro Soler has been substituted for Janet Coit per Federal Rule of Civil Procedure 25(d).

and pretextual means to arrive at a pre-determined outcome in accordance with the aforementioned plan.

3.    The Federal Defendants' efforts to vacate and undermine the Federal Approvals violate the Administrative Procedure Act ("APA"), US Wind's due process rights, and multiple federal environmental and development statutes, including the Marine Mammal Protection Act ("MMPA"), Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), the Outer Continental Shelf Lands Act ("OCSLA"), the National Historic Preservation Act ("NHPA"), and the Fixing Americas Surface Transportation Act ("FAST-41") (the "Subject Statutes"). By this Cross Claim, US Wind requests declaratory and other relief to establish that the Federal Approvals are valid and enforceable and to block Federal Defendants from seeking to vacate or undermine them in any way.

4.    Plaintiffs in this action (hereafter "Counterclaim Defendants") seek to block development of the Project through their claims asserted in this case under the APA and one or more of the Subject Statutes, as well as through direct and indirect extrajudicial communications with the Federal Defendants. On information and belief, Counterclaim Defendants claim interests relating to the subject of this Cross Claim and are so situated that disposing of the action in their absence may leave US Wind subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the Counterclaim Defendants' asserted interests. Further, on information and belief, Counterclaim Defendants have acted or intend to act in concert with the Federal Defendants in vacating and otherwise undermining the Federal Approvals.

5.    The actions of Counterclaim Defendants have created uncertainty regarding the status of the Project's approvals, have impaired US Wind's significant financial investment in the Project, and further impairs US Wind's financial investment every day such uncertainty continues.

Declaratory judgment in favor of US Wind would resolve the controversy between the parties of the legal status of the Federal Approvals.

6.     US Wind's Counterclaim against the Counterclaim Defendants (but not its Cross Claim against the Federal Defendants) is conditioned on, and asserted without waiver of, US Wind's position that Counterclaim Defendants lack standing, fall outside applicable statutory zones of interest, and are otherwise barred from asserting their claims herein. Accordingly, insofar as the Court determines that any or all Counterclaim Defendants lack standing or are otherwise barred from asserting their claims herein, US Wind does not intend to pursue this Counterclaim against such Counterclaim Defendants.

## **PARTIES**

7.     US Wind is an offshore wind developer, owner, and operator based in Baltimore, Maryland. US Wind is co-owned by funds managed by Apollo Global Management ("Apollo"), an American investment firm, and Renexia SpA, a subsidiary of Toto Holding SpA. The United States Department of the Interior is an agency of the federal government. Doug Burgum is the Secretary of the Interior.

8.     BOEM is a federal agency within the Department of the Interior. Matthew Giacona is the current Acting Director of BOEM.

9.     NMFS is a federal agency within the National Oceanic and Atmospheric Administration. Eugenio Piñeiro Soler is the current Acting Assistant Administrator of NMFS.

10.    Counterclaim Defendants include organizations and individuals opposed to offshore wind who allege that the Project will negatively impact their recreation and businesses, who claim interests in the subject matter of this Cross and Counterclaim and who, on information belief, have acted in concert with the Federal Defendants to vacate or otherwise undermine the

Federal Approvals.

11.     Counterclaim Defendant Mayor and City Council of Ocean City, Maryland is a political subdivision of the State of Maryland.

12.     Counterclaim Defendant Mayor and Town Council of Fenwick Island, Delaware is a political subdivision of the State of Delaware.

13.     Counterclaim Defendant Commissioners of Worcester County, Maryland is a Maryland non-profit organization.

14.     Counterclaim Defendant Atlantic Coast Sportfishing Association, Inc. is a Maryland non-profit organization located in Bishopville, Maryland.

15.     Counterclaim Defendant Bay Shore Development Corporation is a Maryland corporation located in Ocean City, Maryland.

16.     Counterclaim Defendant Caesar Rodney Institute is a Delaware corporation located in Newark, Delaware.

17.     Counterclaim Defendant Caine Woods Community Association, Inc. is a non-profit organization located in Ocean City, Maryland.

18.     Counterclaim Defendant Castle In The Sand, Inc. is a Maryland corporation located in Ocean City, Maryland.

19.     Counterclaim Defendant Citizens for Ocean City, Inc. is a Maryland corporation located in Ocean City, Maryland.

20.     Counterclaim Defendant Coastal Association of Realtors of Maryland, Inc is a Maryland corporation located in Berlin, Maryland.

21.     Counterclaim Defendant John Collins is a Maryland resident who lives in Ocean City, Maryland.

22.     Counterclaim Defendant Delmarva Community Managers Association, Inc. is a Maryland corporation located in Ocean City, Maryland.

23.     Fagers Island, Ltd. is a Maryland corporation located in Ocean City, Maryland.

24.     Counterclaim Defendant George Topping is a Maryland resident who lives in Salisbury, Maryland.

25.     Counterclaim Defendant Harrison Group General LLC is a limited liability company located in Ocean City, Maryland.

26.     Counterclaim Defendant James Hospitality LLC is a limited liability company located in Ocean City, Maryland.

27.     Counterclaim Defendants Jeanene Gwin and Earl Gwin, Jr. are Maryland residents who live in Berlin, Maryland and are owners of Skilligalee Seafood, LLC, a limited liability company located in Berlin, Maryland.

28.     Counterclaim Defendant Jennifer Pawlowski is a Delaware resident who lives in Millville, Delaware.

29.     Counterclaim Defendant John Trader is a Maryland resident who lives in Ocean City, Maryland.

30.     Counterclaim Defendant Little Salisbury Civic Association is a Maryland corporation located in Ocean City, Maryland.

31.     Counterclaim Defendant Michael Coppa is a New Jersey resident, and is the owner of CDK Trawlers, Inc., a New Jersey corporation, located in Ocean City, Maryland, and is the owner of Instigator Fresh LLC, a New Jersey corporation, located in Ocean City, Maryland.

32.     Counterclaim Defendant Ocean Amusements, Inc. is a Maryland corporation located in Ocean City, Maryland.

33.     Counterclaim Defendant Ocean City Development Corporation is a Maryland corporation located in Ocean City, Maryland.

34.     Counterclaim Defendant Ocean City Hotel-Motel-Restaurant Association, Inc. is a Maryland corporation located in Ocean City, Maryland.

35.     Counterclaim Defendant Ocean City Marlin Club, Inc. is a Maryland corporation located in Ocean City, Maryland.

36.     Counterclaim Defendant Ocean City, Maryland, Chamber of Commerce, Inc. is a Maryland non-stock organization located in Ocean City, Maryland.

37.     Counterclaim Defendant Ocean Pines Association, Inc. is a Maryland corporation located in Ocean Pines, Maryland.

38.     Counterclaim Defendant Save Right Whales Coalition is an unincorporated organization located in Lyman, New Hampshire.

39.     Counterclaim Defendant Sunset Marina, LLC D/B/A Ocean City Fishing Center, OC Fisherman's Marina, and Sunset Marina, is a Maryland limited liability company located in Ocean City, Maryland.

40.     Counterclaim Defendant Time, Inc. is a Maryland corporation located in Ocean City, Maryland.

41.     Counterclaim Defendant Waterman's Association of Worcester County, Inc. is a Maryland corporation located in Berlin, Maryland.

42.     Counterclaim Defendant White Marlin Open, Inc. is a Maryland corporation located in Ocean City, Maryland.

## JURISDICTION AND VENUE

43.     This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701–706,

and the Due Process Clause of the U.S. Constitution. This Court has jurisdiction over this Cross and Counterclaim pursuant to 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1367(a) (supplemental jurisdiction). The Court may grant declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

44.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(e)(1).

## **FACTUAL BACKGROUND**

45.     The Project is the result of a years-long effort, involving the coordination of multiple federal and state agencies, as well as private investors, local stakeholders, and suppliers, to build an offshore wind energy projects off the coast of Maryland that is essential to achieving the state's renewable energy goals, creating jobs and domestic supply chain investments, and achieving the "expeditious and orderly development" of the "vital national resource reserve" that is the OCS, as envisioned by Congress. 43 U.S.C. § 1332(3).

46.     In 2014, BOEM held a competitive auction for two lease areas off the coast of Maryland, Leases OCS-A 0489 and 0490. US Wind won both leases with a bid of $8,701,098 and thereby secured the exclusive right to propose an offshore wind farm within these leases through the submission of a Construction and Operations Plan ("COP") to BOEM. *See* 30 C.F.R. § 585.200 (describing rights granted with an OCS lease). US Wind merged Lease OCS-A 0498 into Lease OCS-A 0490 by amendment effective March 1, 2018 to form one lease (the "Lease").

47.     BOEM commenced its NEPA process for the Project in 2022. On October 6, 2023, BOEM published its draft Environmental Impact Statement ("EIS") for the Project pursuant to NEPA. Only five Counterclaim Defendants, Mayor & City Council of Ocean City, Maryland, Mayor & City Council of Fenwick Island, Delaware, Commissioners of Worcester County, Maryland, Jennifer Pawloski, and Fagers Island, Ltd., submitted comments regarding the Project

53

during the relevant public comment periods.

48.     On June 18, 2024, NMFS issued a Biological Opinion ("BiOp") for the Project pursuant to the ESA and determined that the Project is not likely to jeopardize the continued existence of threatened or endangered marine mammals (including the North Atlantic right whale) and that the Project was not likely to destroy or adversely modify critical habitat. NMFS prepared the BiOp in full compliance with the ESA and it was the product of reasoned decision making, consistent with the APA.

49.     On August 2, 2024, BOEM published its final EIS for the Project. BOEM prepared the final EIS in full compliance with NEPA and consistent with the APA. The final EIS analyzed a wide range of environmental and socioeconomic factors, including impacts to national security. BOEM's analysis of national security impacts was based on recommendations received from the U.S. Department of Defense ("DoD") in consultation with the Siting Clearinghouse, a Congressionally authorized division within DoD that works to "ensure that the robust development of renewable energy sources and the increased resiliency of the commercial electrical grid may move forward in the United States, while minimizing or mitigating any adverse impacts on military operations and readiness."  Ike Skelton Nat'l Def. Authorization Act, PL 111-383, 358 (Jan. 7, 2011).

50.     On September 9, 2024, BOEM issued a Record of Decision ("ROD") documenting its adoption of the final EIS pursuant to NEPA, its decision to approve the COP, and its findings as to other applicable statutory requirements.

51.     On December 2, 2024, BOEM formally approved the Project's COP in compliance with OCSLA and the APA. BOEM's COP approval requires US Wind to follow over eighty pages of detailed terms and conditions aimed at avoiding, minimizing, and mitigating project impacts.

52.     After conducting a formal rulemaking process, on October 23, 2024, NMFS promulgated an Incidental Take Regulation ("ITR") and Letter of Authorization ("LOA") pursuant to the MMPA setting out a wide range of conditions, mitigation measures, and monitoring and reporting requirements for US Wind's construction activities. NMFS promulgated the ITR and LOA consistent with the MMPA and the APA.

53.     Pursuant to NHPA's Section 106 consultation process, BOEM identified historic properties and assessed any adverse effects to such properties, extended invitations to consult to governments and agencies as potential consulting parties, held consulting party meetings and in August 2024 executed a Memorandum of Agreement ("MOA") with the State Historic Preservation Officers for all consulted States, including Maryland and Delaware, to address effects. BOEM used the NEPA process to conduct its NHPA review, 36 C.F.R. § 800.8(c), and BOEM's NHPA findings are set forth in Appendix J of the final EIS. In the MOA, which imposed additional measures, the State Historic Preservation Officers concurred in BOEM's findings. BOEM's NHPA Section 106 process was consistent with the NHPA and the APA.

54.     The Project was subject to a permitting timetable under FAST-41, resulting in the Project receiving all the necessary agency approvals to proceed with construction and operation, as reflected in the Federal Approvals.

55.     On information and belief, the Federal Defendants have made a determination to vacate, rescind or otherwise withdraw or undermine the Federal Approvals. Federal Defendants' decision to disturb the Federal Approvals constitutes final agency action under the APA.

56.     An actual and justiciable controversy exists between US Wind, the Federal Defendants and the Counterclaim Defendants as to the legality of one or more Subject Actions. Entry of declaratory relief is necessary, appropriate and effective to resolve such controversy.

57.     Any and all conditions precedent to prosecution of this Cross and Counterclaim have been satisfied and/or waived by Cross and Counterclaim Defendants.

## CAUSES OF ACTION

### COUNT I
### Administrative Procedure Act
### (Vacatur of the Federal Approvals is Arbitrary and Capricious for Failure to Explain Change in Position)
### 5 U.S.C. § 706(2)(A)

58.     US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

59.     Under the APA, a "reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

60.     When a federal agency changes its policy or reverses prior decisions, it must provide a reasoned explanation for the change, or the action will be deemed arbitrary and capricious. This is particularly true when a third party relied on a prior agency policy or decision or where a new policy rests upon factual findings that contradict the prior policy.

61.     When an agency fails to provide any reason to support its decision, its decision is inherently arbitrary and capricious. The agency must provide facts upon which its decision was based and explain the justification for its decision beyond conclusory statements.

62.     Federal Defendants' decision to vacate represents a drastic departure from their prior full-throated support and defense of the Project, and Federal Defendants have failed to acknowledge or offer a reasoned explanation for their about-face. The potential environmental and socioeconomic impacts of the Project have been extensively studied and there is no new evidence that justifies Federal Defendants' decision. Further, Federal Defendants' decision ignores the

extensive body of caselaw in which federal courts have consistently rejected claims challenging federal approvals of offshore wind projects.

63.    Moreover, Federal Defendants' decision to vacate ignores US Wind's reasonable reliance on the Federal Defendants' previous position in support of the Project as well as the substantial harm caused by vacatur of the Federal Approvals.

64.    Because the Federal Defendants have failed to acknowledge, let alone provide a reasoned explanation for, their abrupt change in policy, their decision to vacate the Federal Approvals is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

**COUNT II**
**Administrative Procedure Act**
**(Vacatur of the Federal Approvals is Arbitrary and Capricious Because it was the Result of Undue Political Influence)**
**5 U.S.C. § 706(2)(A)**

65.    US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

66.    Under the APA, agency action must be set aside if found to be motivated in whole or in part by political pressures.

67.    When an agency decision is motivated by political pressure, the decision is inherently arbitrary and capricious as the decision violates the well-established rule that an agency reach its decision strictly on the merits and in the manner prescribed by the statute, without reference to irrelevant, extraneous, or extralegal considerations.

68.    The Federal Defendants' decision to vacate the Federal Approvals was motivated by undue influence. In particular, political pressure was applied to the Federal Defendants' decisionmakers, and the pressure caused those decisionmakers to rely on improper factors.

69.     Evidence of political pressure applied to the Federal Defendants' decision makers includes public and, on information and belief, nonpublic communications by elected officials, including the President of the United States, the President's political appointees, members of Congress, and opponents of offshore wind including Counterclaim Defendants, resulting in directives to the Federal Defendants to terminate offshore wind and other renewable energy projects.

70.     The Federal Defendants have pursued a coordinated and targeted campaign to shut down offshore wind development, without any evidence to justify such drastic measures, through the issuance of Executive Orders, Secretarial Orders, internal memoranda, stop work orders, withdrawal of valid permits, and other means.

71.     The Federal Defendant's decision, shortly after issuing the Federal Approvals, to suddenly reverse course and reach an unsupported determination to vacate, rescind or undermine the Federal Approvals demonstrates that that political pressure influenced the final decision.

72.     Because the Federal Defendants' decision was motivated, at least in part, by political pressure, their vacatur of the Federal Approvals is arbitrary and capricious.

**COUNT III**
**Administrative Procedure Act**
**(Vacatur of the Federal Approvals is Arbitrary and Capricious and Without Observance of Procedure Required by Law)**
**5 U.S.C. §§ 706(2)(A), (D)**

73.     US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

74.     In addition to reversing agency action that is arbitrary and capricious, under the APA, a reviewing court must set aside a challenged agency action if the action is found to be "not in accordance with law," 5 U.S.C. § 706(2)(A), or "without observance of procedure required by law," *id.* § 706(2)(D).

75.    An agency decision to vacate, remand, or otherwise undermine validly approved permits or approvals without notice or an opportunity to demonstrate compliance with such permits or approvals is inconsistent with APA Section 558(c), 5 U.S.C. § 558(c).

76.    Under APA Section 558(c), "the withdrawal, suspension, revocation, or annulment of a license is lawful only if," before the agency acts, "the licensee has been given … (1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."

77.    The APA broadly defines "licenses" to include "the whole or a part of an agency permit, certificate, approval … or other form of permission[.]" 5 U.S.C. § 551(8). As such, the Federal Approvals are "licenses" for purposes of the APA.

78.    Prior to their decision to vacate, remand, and otherwise undermine the Federal Approvals, the Federal Defendants failed to provide US Wind with any notice, let alone written notice, of the facts or conduct that warranted vacatur, remand, or other adverse action. Federal Defendants similarly failed to provide US Wind with an opportunity to demonstrate compliance with, and the validity of, the Federal Approvals.

79.    Instead, by unilaterally withdrawing, vacating, remanding or revoking US Wind's previously approved Project and wrongfully refusing to provide US Wind with notice and an opportunity to demonstrate compliance, the Federal Defendants' decision to vacate, remand, and otherwise undermine the Federal Approvals is arbitrary and capricious, not in accordance with law, and without observance of procedure required by law.

**COUNT IV**
**Outer Continental Shelf Lands Act**
**(Vacatur of the Federal Approvals Violates the Outer Continental Shelf Lands Act and Regulations Promulgated Thereunder)**
**5 U.S.C. §§ 706(2)(A), (D)**

80.    US Wind hereby incorporates by reference the foregoing allegations as if fully

rewritten herein.

81.    OCSLA declares that it is "the policy of the United States that . . . the outer Continental Shelf is a vital national resource reserve held by the Federal Government for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs." 43 U.S.C. § 1332(3). Wind energy is a vital national resource on the OCS, and the Federal Defendants' decision to vacate the Federal Approvals violates their obligation to act consistently with this Congressional directive.

82.    OCSLA states that the Secretary of the Interior "may grant a lease, easement, or right-of-way on the outer Continental Shelf for activities not otherwise authorized in this subchapter, the Deepwater Port Act of 1974 (33 U.S.C. et seq.), the Ocean Thermal Energy Conversion Act of 1980 (42 U.S.C. et seq.), or other applicable law, if those activities . . . produce or support production, transportation, storage, or transmission of energy from sources other than oil and gas[.]" 43 U.S.C. § 1337(p)(1)(C). This authority includes the siting of offshore wind energy facilities such as the Project. The Secretary of the Interior is also directed to "issue any necessary regulations to carry out this subsection." *Id.* § 1337(p)(8).

83.    The Federal Defendants' decision to vacate, remand, and otherwise undermine the Federal Approvals violates regulations promulgated in furtherance of the Department of the Interior's authority under OCSLA to lease and permit offshore wind energy facilities, including (but not limited to):

  a.    30 C.F.R. §§ 285.417,    585.415, 585.4222 relating to lease or grant suspensions/cancellation

84.    US Wind is not required to provide the Federal Defendants with 60 days' notice for

this claim because the Federal Defendants' decision to vacate the Federal Approvals "immediately affect[s] a legal interest" of US Wind as cross-plaintiff.  43 U.S.C. § 1349(a)(3).

## COUNT V
## U.S. Constitution
### (Vacatur of the Federal Approvals Violates the U.S. Constitution, Amendment V)

85.    US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

86.    US Wind has a property interest in the right to complete the Project, which was approved by the Federal Defendants in accordance with applicable law and regulations. For Federal Defendants to revoke the Projects' approval without providing US Wind an opportunity to be heard, violates US Wind's right to procedural due process under the Due Process Clause of the Fifth Amendment to the United States Constitution.

87.    Since Congress has enacted an administrative procedure to adjudicate and process permits under the APA, 5 U.S.C. §§ 551, *et seq*., MMPA, ESA, NEPA, OCSLA, FAST- 41, and NHPA, Federal Defendants are obligated to provide US Wind an opportunity to be heard at a meaningful time and in a meaningful manner before revoking the approval of the Project.

88.    There is no rational basis for arbitrarily depriving US Wind of the lawful use of its property and for denying US Wind the right to have any possible revocation of its Project adjudicated and processed based upon the same standards and procedures that were applied when the Project was previously approved by the Federal Defendants.

89.    Here, by unilaterally withdrawing, vacating, remanding, or revoking US Wind's previously approved Project and wrongfully and summarily rejecting and refusing to provide US Wind an opportunity to be heard and without any consideration of the BiOp, final EIS, and LOA, Federal Defedants' actions are arbitrary and capricious. Federal Defendants have failed to provide

US Wind sufficient procedural due process in violation of the Fifth Amendment of the United States Constitution.

## COUNT VI
### BOEM Approved the COP in Accordance with Applicable Law

90.     US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

91.     OCSLA requires BOEM to ensure that development activities on the OCS are "carried out in a manner that provides for" twelve enumerated factors. 42 U.S.C. § 1337(p)(4). Further, BOEM's regulations implementing OCSLA require BOEM to ensure that renewable energy development activities on the OCS are "carried out in a manner that provides for and reaches a rational balance among" the listed goals "to the extent [the listed goals] conflict or are otherwise in tension, none of which inherently outweighs or supplants any other[.]" 30 C.F.R. § 585.102(a).

92.     When it approved the COP, BOEM determined that the "Project will comply with the Bureau's regulations and that the proposed activities will be carried out in a manner that provides for safety, protection of the environment, prevention of waste, and the other factors listed in subsection 8(p)(4) of OCSLA." The record for BOEM's COP approval demonstrates that its determination was reasoned and factually well-supported, and this determination is entitled to substantial judicial deference.

93.     US Wind is therefore entitled to a declaration that BOEM's approval of the Project's COP complied with OCSLA and the APA.

## COUNT VII

### BOEM Adopted the ROD and Final EIS in Accordance with Applicable Law

94.     US Wind hereby incorporates by reference the foregoing allegations as if fully

rewritten herein.

95.    For major Federal actions like the Project, NEPA requires federal agencies to provide a detailed statement on, among other things, "reasonably foreseeable environmental effects of the proposed agency action … [and] a reasonable range of alternatives to the proposed action … that are technically and economically feasible, and meet the purpose and need of the proposal[.]"42 U.S.C. § 4332(C)(i), (iii).

96.    BOEM conducted its environmental review of the Project in full compliance with NEPA. Through its development of the Project's EIS, BOEM took the requisite "hard look" at the reasonably foreseeable environmental effects of the Project and properly evaluated a reasonable range of technically and economically feasible alternatives that met the purpose and need of the Project.

97.    US Wind is therefore entitled to a declaration that BOEM's ROD and Final EIS complied with NEPA and the APA.

**COUNT VIII**
**NMFS' Biological Opinion Complied with Applicable Law**

98.    US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

99.    The ESA requires that "[e]ach federal agency shall, in consultation with and with the assistance of the Secretary [of the Interior or Secretary of Commerce], insure that any action authorized, funded, or carried out by such agency … is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . ."  16 U.S.C. § 1536(a)(2). The ESA, and its implementing regulations, also require federal agencies to use "the best scientific and commercial data available," *id*., evaluate the current status and environmental baseline of the listed species or

critical habitat, and consider the effects of the action. 50 C.F.R. § 402.14.

100.    NMFS' issued its BiOp in full compliance with the ESA. In its BiOp, NMFS determined that the Project was not likely to jeopardize the continued existence of threatened or endangered marine mammals, including the North Atlantic right whale, and that the Project was not likely to destroy or adversely modify critical habitat.  Further, NMFS used the best available science, evaluated the environmental baselines of listed species and critical habitat, and properly considered the Project's potential impacts.

101.    US Wind is therefore entitled to a declaration that NMFS' BiOp complied with the ESA and the APA.

## COUNT IX
## NMFS Issued the LOA in Accordance with Applicable Law

102.    US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

103.    The MMPA requires NMFS to determine, as a condition of issuing an LOA, that the applicant's activity will result in "the incidental, but not intentional, taking … of small numbers of marine mammals of a species or population stock" and that the proposed activity "will have a negligible impact on such species or stock[.]" 16 U.S.C. § 1371(a)(5)(A)(i)(I).

104.    In its LOA for the Project, NMFS' determined that the Project would result in the taking of "small numbers of marine mammals" and that "the marine mammal take from all of US Wind's specified activities combined will have a negligible impact on all affected marine mammal species or stocks." The record for NMFS' LOA demonstrates that its determination was reasoned and factually well-supported, and this determination is entitled to substantial judicial deference.

105.    US Wind is therefore entitled to a declaration that NMFS' LOA complied with the MMPA and APA.

**COUNT X**
**BOEM's Conducted its NHPA Section 106 Process in Accordance with Applicable Law**

106.    US Wind hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

107.    The NHPA is a procedural statute that requires consultation, consideration of adverse effects, and mitigation measures. 54 U.S.C. § 300101; 36 C.F.R. § 800.1(a). The NHPA does not dictate a particular outcome, "[e]ven if cultural resources might be harmed." *WildEarth Guardians v. Provencio*, 923 F.3d 655, 676–79 (9th Cir. 2019).

108.    In accordance with the NHPA, BOEM identified historic properties and assessed any adverse effects to such properties, consulted with relevant stakeholders, and executed an MOA to address effects from the Project.

109.    US Wind is therefore entitled to a declaration that BOEM's NHPA Section 106 process complied with the NHPA and APA.

**PRAYER FOR RELEIF**

WHEREFORE, US Wind respectfully requests that this Court:

1.    Declare that the Federal Approvals were lawfully issued in compliance with APA, OCSLA, NEPA, ESA, MMPA, and NHPA .

2.    Issue all necessary and appropriate process to preserve the Defendant Intervenor's status and rights pending the conclusion of this judicial proceeding. 5 U.S.C. § 705.

3.    Preliminarily and permanently enjoin the Federal Defendants and any person or entity acting in concert with them from taking any action to vacate, remand, or in any way undermine any or all of the Federal Approvals.

4.    Grant all other relief as the Court may deem just and proper, including, but not limited to, attorney's fees and costs. 28 U.S.C. § 2412.

65

Respectfully submitted,

Dated September 3, 2025

By: _/s/ Toyja E. Kelley_____.
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)
Emily Huggins Jones (*pro hac vice*)
Gregory L. Waterworth (D. Md. Bar No. 20938)
Noah J. Mason (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
701 8th Street, N.W.
Suite 500
Washington, D.C. 20001
Telephone: (202) 220-6900
Facsimile: (202) 220-6945
toyja.kelley@troutman.com
emily.hugginsjones@troutman.com
greg.waterworth@troutman.com
noah.mason@troutman.com

Hilary Tompkins (*pro hac vice*)
Sean Marotta (*pro hac vice*)
**HOGAN LOVELLS US LLP**
555 13th Street N.W.
Washington, D.C. 20004
Telephone: (202) 637-5617
hilary.tompkins@hoganlovells.com
sean.marotta@hoganlovells.com

David Newmann (*pro hac vice*)
**HOGAN LOVELLS US LLP**
1735 Market St., 23d Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
david.newmann@hoganlovells.com

***Attorneys for Defendant-Intervenor US Wind, Inc***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2025, a true and correct copy of the foregoing document was filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, which will give notice of the filing to all counsel of record.

By: <u>    /s/ Toyja E. Kelley      </u>.
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)