### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
**(Baltimore Division)**

| | | |
|---|---|---|
| MAYOR AND CITY COUNCIL OF OCEAN CITY, MARYLAND, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No.: 1:24-cv-03111-SAG |
| | ) | |
| UNITED STATES DEPARTMENT OF INTERIOR, *et al.*, | ) ) | |
| | ) | |
| *Federal Defendants*, | ) | |
| and | ) | |
| | ) | |
| US WIND, INC. | ) | |
| | ) | |
| *Defendant-Intervenor*. | ) | |
| | ) | |

### FEDERAL DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF VOLUNTARY REMAND WITH VACATUR AND TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

STATUTORY BACKGROUND .................................................................................. 1

FACTUAL BACKGROUND ....................................................................................... 2

    Maryland Offshore Wind Project Review .......................................................... 2

    Review of Existing Leases .................................................................................. 3

    Plaintiffs' Case .................................................................................................... 4

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................... 6

    I.    Voluntary Remand is Proper Given BOEM's Ongoing Re-evaluation of the COP ............................................................................................................... 7

    II.    Remand Should Be with Vacatur ................................................................ 9

    III.    If the Court Vacates the COP, it Should Dismiss All Claims as Moot .................. 11

    IV.    If the Court Remands BOEM's COP Approval Without Vacatur, it Should Stay the Case ............................................................................................... 13

        A.    A stay would promote judicial economy and the orderly course of justice ................................................................................................ 14

        B.    Absent a stay, Federal Defendants would face significant hardship ........ 15

        C.    A stay would not prejudice Plaintiffs or US Wind .................................... 16

CONCLUSION ............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*AFGE v. Off. of Special Counsel,*
  1 F.4th 180 (4th Cir. 2021) .................................................................................................... 12

*Akiachak Native Cmty. v. U.S. Dep't of Interior,*
  827 F.3d 100 (D.C. Cir. 2016) ...............................................................................................11

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993) .......................................................................................... 6, 10

*Arizonans for Off. Eng. v. Arizona,*
  520 U.S. 43 (1997) .................................................................................................................. 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................................ 15

*Cal. Cmtys. Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) ................................................................................................... 5

*Citizens Against the Pellissippi Pkwy. Extension v. Mineta,*
  375 F.3d 412 (6th Cir. 2004) ............................................................................................... 6, 8

*City of Columbus v. Cochran,*
  523 F. Supp. 3d 731 (D. Md. 2021) ........................................................................................ 6

*Clinton v. Jones,*
  520 U.S. 681 (1997) ................................................................................................................ 13

*Coal. of Ariz./N.M. Cntys. For Stable Econ. Growth v. Salazar,*
  No. 07-CV-00876 JEC/WPL, 2009 WL 8691098 (D.N.M. May 4, 2009) ...............................11

*Ctr. for Biological Diversity v. EPA,*
  861 F.3d 174 (D.C. Cir. 2017) ................................................................................................. 9

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
  563 F.3d 466 (D.C. Cir. 2009) ................................................................................................. 1

*Cunningham v. Homeside Fin., LLC,*
  No. MJG-17-cv-2088, 2017 WL 5970719 (D. Md. Dec. 1, 2017) .......................................... 16

*CVLR Performance Horses, Inc. v. Wynne,*
  792 F.3d 469 (4th Cir. 2015) ..................................................................................................11

*Defenders of Wildlife v. U.S. Dep't of Interior,*
  931 F.3d 339 (4th Cir. 2019) ............................................................................................... 6, 9

*Ethyl Corp. v. Browner,*
  989 F.2d 522 (D.C. Cir. 1993) ................................................................................................. 8

*FCC v. Fox Television Stations,*
  556 U.S. 502 (2009) ................................................................................................................. 5

*Ford Motor Co. v. Nat'l Lab. Rels. Bd.*,
   305 U.S. 364 (1939) ................................................................................................. 6

*Friends of Animals v. Williams*,
   628 F. Supp. 3d 71 (D.D.C. 2022) ...................................................................... 8, 17

*Int'l Refugee Assistance Project v. Trump*,
   323 F. Supp. 3d 726 (D. Md. 2018) ................................................................... 13, 14

*Last Best Beef, LLC v. Dudas*,
   506 F.3d 333 (4th Cir. 2007) ............................................................................. 5, 7, 8

*Lighthouse Fellowship Church v. Northam*,
   20 F.4th 157 (4th Cir. 2021) ..................................................................................11

*Long Island Power Auth. v. FERC*,
   27 F.4th 705 (D.C. Cir. 2022) ................................................................................. 6

*Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*,
   No. PWG-18-961, 2019 WL 5964526 (D. Md. Oct. 18, 2019) ............................... 14

*Marcum v. Salazar*,
   694 F.3d 123 (D.C. Cir. 2012) ................................................................................ 9

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) .............................................................................................. 6, 9

*Maryland v. Universal Elections, Inc.*,
   729 F.3d 370 (4th Cir. 2013) ................................................................................. 13

*NAACP v. Trump*,
   298 F. Supp. 3d 209 (D.D.C. 2018) ..................................................................... 10

*Nat. Res. Def. Council v. Kempthorne*,
   No. 1:05-CV-01207 LJO, 2015 WL 3750305 (E.D. Cal. June 15, 2015) ......... 15, 16

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*,
   556 F.3d 177 (4th Cir. 2009) .................................................................................. 5

*Porter v. Clarke*,
   852 F.3d 358 (4th Cir. 2017) .................................................................................11

*S. Yuba River Citizens League v. NMFS*,
   No. 2:13-cv-00059-MCE, 2013 WL 4094777 (E.D. Cal. Aug. 13, 2013) .............. 15

*San Luis & Delta Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) .................................................................................. 9

*Sierra Club v. Nat'l Marine Fisheries Serv.*,
   711 F. Supp. 3d 522 (D. Md. 2024) ....................................................................... 7

*Sierra Club v. National Marine Fisheries Serv.*,
   No. DLB-20-3060, 2024 WL 3860211 (D. Md. Aug. 19, 2024) ............................. 6

*Sierra Club v. U.S. Army Corps of Eng'rs*,
909 F.3d 635 (4th Cir. 2018) ................................................................... 6

*SKF USA, Inc. v United States*,
254 F.3d 1022 (Fed. Cir. 2001) ........................................................ 5, 7, 8

*Star v. TI Oldfield Dev., LLC*,
962 F.3d 117 (4th Cir. 2020) ................................................................. 12

*Utah v. Env't Prot. Agency*,
No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025) ...................... 14

*Util. Solid Waste Activities Grp. v. Env't Prot. Agency*,
901 F.3d 414 (D.C. Cir. 2018) ................................................................. 5

*West v. Horner*,
810 F. Supp. 2d 228 (D.D.C. 2011) ........................................................11

*WildEarth Guardians v. U.S. Army Corps of Eng'rs*,
No. 15-cv-00159 WJ/KBM, 2016 WL 9777189 (D.N.M. June 17, 2016) .............................. 16

**Statutes**

5 U.S.C. § 706(2) .................................................................................. 6

16 U.S.C. § 1362(13) ........................................................................... 12

43 U.S.C. § 1331(a) ............................................................................... 1

43 U.S.C. § 1337 ............................................................................... 3, 4

43 U.S.C. § 1337(p) ............................................................................... 4

43 U.S.C. § 1337(p)(4) ....................................................................... 3, 4

**Regulations**

30 C.F.R. § 585.102(a) ........................................................................... 2

30 C.F.R. § 585.200(a)(2) ...................................................................... 2

30 C.F.R. § 585.203 ............................................................................... 1

30 C.F.R. § 585.206(a) ........................................................................... 1

30 C.F.R. § 585.210 ............................................................................... 1

30 C.F.R. § 585.211 ............................................................................... 1

30 C.F.R. § 585.215 ............................................................................... 1

30 C.F.R. § 585.216 ............................................................................... 1

30 C.F.R. § 585.600 ............................................................................... 2

30 C.F.R. §§ 585.605–613 ...................................................................... 2

30 C.F.R. §§ 585.620–622 ...................................................................... 2

30 C.F.R. §§ 585.626–628 ........................................................................................... 2

**Other Authorities**

89 Fed. Reg. 73,121 (Sept. 9, 2024) .......................................................................... 3

## INTRODUCTION

The Bureau of Ocean Energy Management ("BOEM") requests that the Court remand, with vacatur, its approval of the Construction and Operations Plan ("COP") for the Maryland Offshore Wind Project. BOEM's desire to reconsider its prior approval is reason alone to grant a remand. And because BOEM has identified an error in the weighing of certain statutory factors that led to the prior approval, vacatur of that prior approval is also appropriate. Vacatur of the COP approval will moot Plaintiffs' claims against both BOEM and the National Marine Fisheries Service ("NMFS"), so Federal Defendants also ask the Court to dismiss all claims if it vacates the COP approval. But if the Court declines to vacate BOEM's COP approval, remand without vacatur remains appropriate. And in that instance, Federal Defendants ask the Court to stay the litigation pending conclusion of the remand proceedings.

Federal Defendants' counsel conferred with Plaintiffs' counsel and Intervening Defendant US Wind's counsel on this motion. Plaintiffs agree that the Court should remand with vacatur and dismiss their claims without prejudice; US Wind opposes the motion.

## STATUTORY BACKGROUND

The Outer Continental Shelf ("OCS") consists of the submerged lands beneath the ocean, generally from 3 to 200 miles seaward of the coastline. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009); 43 U.S.C. § 1331(a). Under the Outer Continental Shelf Lands Act ("OCSLA"), the United States holds these lands as a "vital national resource reserve" that "should be made available for expeditious and orderly development, subject to environmental safeguards." *Id.* § 1332(3).

To that end, the Department of the Interior, in consultation with other federal agencies, may grant a lease on the OCS for the purpose of renewable wind energy production. *Id.* § 1337(p)(1)(C); 30 C.F.R. §§ 585.203, 585.206(a), 585.210, 585.211, 585.215, 585.216. Under

BOEM's renewable energy regulations and the standard OCS lease terms, a lease issued under OCSLA does not itself authorize development. *See* 30 C.F.R. § 585.200(a)(2). A lessee must first assess the site, and then it must obtain BOEM's approval of a site assessment plan and COP. *See* 30 C.F.R. §§ 585.600, 585.605–585.613, 585.620–585.622, 585.626–585.628.

When approving a project under OCSLA, BOEM must ensure that "any activity" it authorizes is "carried out in a manner that provides for" twelve enumerated requirements, including: safety; protection of the environment; conservation of natural resources; protection of national security interest; "prevention of interference with reasonable uses (as determined by the Secretary)" of the "exclusive economic zone, the high seas, and the territorial seas"; and consideration of other uses of the sea and seabed, including the use of the area for fishing and marine navigation. 43 U.S.C. § 1337(p)(4)(A)-(L); 30 C.F.R. § 585.102(a).

## FACTUAL BACKGROUND

Plaintiffs challenge BOEM's approval of US Wind's COP under OCSLA, the National Environmental Policy Act ("NEPA"), and the National Historic Preservation Act ("NHPA"). *See* Am. Compl. 6, Dkt. No. 32. Plaintiffs also challenge an associated authorization issued by NMFS under the Marine Mammal Protection Act ("MMPA") and Biological Opinion ("BiOp") rendered under the Endangered Species Act ("ESA"). *See id.* And finally, Plaintiffs raised claims under the Administrative Procedure Act ("APA"), the Migratory Bird Treaty Act ("MBTA"), and the Coastal Zone Management Act ("CZMA"), but the Court dismissed those three claims on July 2, 2025. *See* Order, Dkt. No. 69.

### Maryland Offshore Wind Project Review

The Project area described in the COP would encompass about 80,000 acres off the coast of Maryland on the OCS. As described in the COP, the Project would consist of up to 114 wind

turbine generators, four offshore substations, four offshore export cables, and a 100-meter-tall meteorological tower in a gridded array pattern across the Project area.

The lease sale was held in 2014, and Defendant-Intervenor US Wind won both leases in offshore Maryland. After several intervening steps, on September 4, 2024, BOEM and NMFS issued a joint Record of Decision ("ROD") for the Project. *See* 89 Fed. Reg. 73,121 (Sept. 9, 2024). The ROD documented BOEM's decision to approve the COP for the Project with modifications, as well as NMFS's issuance of a Marine Mammal Protection Act Incidental Take Regulation and Letter of Authorization to US Wind. ROD at 1. BOEM determined that the Project would comply with its regulations and the factors listed in 43 U.S.C. § 1337(p)(4) of OCSLA. ROD Appendix B at 1. In December 2024, BOEM issued a letter to US Wind approving the COP subject to Conditions of Approval for the Project.

In approving the COP, the Department relied on M-Opinion 37067 ("Anderson Opinion"), a 2021 legal opinion from Robert T. Anderson, the then-Solicitor of the Department of the Interior, interpreting 43 U.S.C. § 1337(p)(4).[1] *See* ROD at 5 (quoting Anderson Opinion). The Anderson Opinion withdrew M-Opinion 37059 ("Jorjani Opinion"), originally issued in December 2020 by then-Solicitor Daniel H. Jorjani, which addressed the weighing of impacts under 43 U.S.C. § 1337 on other uses of the OCS.

### Review of Existing Leases

On his first day in office, President Trump issued the Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and*

---

[1] "M-Opinions . . . constitute legal interpretations that are binding on all Department officials, until such time as they are repealed or modified by either the Secretary [of the Interior], the Deputy Secretary [of the Interior], or the Solicitor." Memorandum from Gregory Zerzan to Assistant Secretaries, Dep't of Interior, *M-Opinion Review* (Feb. 28, 2025), available at https://www.doi.gov/sites/default/files/documents/2025-03/m-opinion-suspension-review0.pdf.

*Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* ("Presidential Wind Memo"). Suess Decl. ¶ 8. Section 1 of the Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President." *Id.*

In May 2025, Gregory Zerzan, the Acting Solicitor of the Department of the Interior, issued M-Opinion 37086 ("Zerzan Opinion"). Suess Decl. ¶ 11. That opinion withdrew the Anderson Opinion and reinstated the Jorjani Opinion. *Id.* The Zerzan Opinion calls for a re-evaluation of agency actions that relied on the Anderson Opinion's interpretation of 43 U.S.C. § 1337(p)(4). *Id.* As part of its re-evaluation for this Project, BOEM has concluded that its prior weighing of the factors under § 1337(p)(4) was deficient and intends to reconsider that analysis and make a new decision on the COP. *Id.*

In July 2025, the Secretary of the Interior issued Secretary's Order 3437. Suess Decl. ¶ 10. Section 5(c) of that order directed the Department of the Interior's Solicitor's Office to consider whether remand was appropriate in any cases challenging Department approvals associated with wind projects. *Id.*

### Plaintiffs' Case

Plaintiffs filed their original complaint in October 2024, alleging violations of the APA, NEPA, ESA, MMPA, MBTA, CZMA, and NHPA. Compl., Dkt. No. 1 ¶¶ 55–194. In January 2025, Plaintiffs filed an Amended Complaint, which added one new claim under OCSLA and ten new plaintiffs. *See generally* Am. Compl. Plaintiffs' OCLSA claim alleges violations of 43 U.S.C. § 1337(p). *Id.* ¶¶ 68–115. Plaintiffs alleged that BOEM failed to ensure that the Project will be carried out safely, *id.* ¶¶ 73–78, and that the Project will interfere with commercial and recreational

fishing and other reasonable uses of the OCS, *id.* ¶¶ 102–114. Plaintiffs seek a court order remanding and vacating the decision to approve the COP. *Id.*, Prayer for Relief ¶¶ 1–2.

Federal Defendants filed a partial motion to dismiss on January 17, 2025, Dkt. No. 37, and US Wind moved to dismiss the entire Amended Complaint twelve days later. Dkt. No. 39. On July 2, 2024, the Court granted Federal Defendants' motion and granted in part US Wind's motion, and dismissed Plaintiffs' APA, MBTA, and CZMA claims. Order, Dkt. No. 69.

On September 3, 2025, US Wind filed an Amended Answer to Plaintiffs' Amended Complaint. Dkt. No. 77. That Amended Answer includes cross claims against Federal Defendants, *see id.* at 47–65, to which Federal Defendants plan to respond within the time allowed under the Federal Rules. *See* Fed. R. Civ. P. 12(a)(2).

## LEGAL STANDARD

Agencies have inherent authority to reconsider past decisions and to revise or replace them. *See FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009); *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) ("[F]ederal agencies … have broad authority to correct their prior errors."). An agency may therefore "request a remand, [even] without confessing error, to reconsider its previous position." *SKF USA, Inc. v United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001); *see also Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 215 (4th Cir. 2009) (citing *SKF USA*, 254 F.3d at 1028 with approval). Courts "generally grant an agency's motion to remand so long as the agency intends to take further action with respect to the original agency decision on review." *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (quotation omitted). Voluntary remands are generally only refused "when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA*, 254 F.3d at 1029). "In fact, it would be 'an abuse of discretion to prevent an agency from acting to cure … legal defects.'" *Last Best Beef*, 506 F.3d at

340 (quoting *Citizens Against the Pellissippi Pkwy. Extension v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004)).

If a court grants a voluntary remand, it must then decide whether the agency's action should be vacated as part of that remand. Vacatur is a remedy under the APA, "which provides that a reviewing court 'shall … set aside' unlawful agency action." *Sierra Club v. National Marine Fisheries Serv.*, No. DLB-20-3060, 2024 WL 3860211, at *36 (D. Md. Aug. 19, 2024) (quoting *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022); 5 U.S.C. § 706(2)). Some courts have granted remand without vacatur "in instances where agency action is deemed arbitrary and capricious rather than contrary to law," *City of Columbus v. Cochran*, 523 F. Supp. 3d 731, 772 (D. Md. 2021) (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)), but the Fourth Circuit has never "formally embraced the *Allied-Signal* remand-without-vacatur approach," *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018). In the Fourth Circuit, courts "will vacate agency action if it is not 'based on a consideration of the relevant factors' or where 'there has been a clear error of judgment.'" *Defenders of Wildlife v. U.S. Dep't of Interior*, 931 F.3d 339, 345 (4th Cir. 2019) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). The assessment of the appropriateness of vacatur is an equitable one. *See Ford Motor Co. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 364, 373 (1939).

## ARGUMENT

BOEM has concluded that its prior assessment of the § 1337(p)(4) factors for the COP was deficient and intends to reconsider the COP and make a new decision. The Court should therefore remand the COP approval to BOEM. The remand should be with vacatur because BOEM has concluded that its prior conclusion was in error, and because the case and project are still in the early phases, meaning no party will be prejudiced. Because Plaintiffs' claims will be mooted with vacatur of the COP approval, the Court should also dismiss this case. If the Court declines to vacate,

the Court should still remand BOEM's decision without vacatur and stay the case pending BOEM's re-evaluation.

## I.    Voluntary Remand is Proper Given BOEM's Ongoing Re-evaluation of the COP.

The Court should remand BOEM's decision approving the COP to the agency. When federal agencies identify substantial concerns with a prior agency action, "courts generally should not stand in the way of the agencies' remediation of their own mistakes." *Last Best Beef*, 506 F.3d at 340. When determining whether to remand, "the fundamental questions are why the agency is moving for remand, whether remand would resolve the dispute more efficiently than litigation, and how remand would impact the plaintiffs and their interests." *Sierra Club v. Nat'l Marine Fisheries Serv.*, 711 F. Supp. 3d 522, 535 (D. Md. 2024). Remand is proper if an agency has identified a "substantial and legitimate" concern about the challenged decision. *See SKF USA*, 254 F.3d at 1029. For at least three reasons, the standard for voluntary remand is easily met here.

*First*, Interior's reasons for remand are substantial and legitimate. The President directed Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." Presidential Wind Memo § 1. The Acting Solicitor of the Interior also directed agency staff to re-evaluate agency decisions— such as the present COP approval—that relied on the Anderson Opinion and its interpretation of OCSLA subsection 8(p)(4)(I). *See* Zerzan Opinion. Implementing those directives, BOEM has concluded that it misapplied the § 1337(p)(4) factors in approving the COP. Suess Decl. ¶ 12.

For example, BOEM has identified an error in its prior conclusion that the COP satisfied § 1337(p)(4)(I) even though BOEM underestimated impacts to operations by search and rescue helicopters attempting to navigate throughout the project area. Suess Decl. ¶ 15. And BOEM has initially determined that impacts to commercial fisheries "may not be sufficiently mitigated and, therefore, the project, as approved, is not preventing interference with other reasonable uses of the

OCS" as required. *Id.* Based on these conclusions, Interior therefore will be conducting a new analysis of the subsection § 1337(p)(4) factors and intends to issue a new COP decision. *Id.* ¶ 16. Declining to grant remand in this circumstance "would be an abuse of discretion." *Last Best Beef*, 506 F.3d at 340 (cleaned up).

*Second*, voluntary remand would conserve party and court resources. Following remand, BOEM will issue a new decision with new analysis that may significantly impact, or outright moot, Plaintiffs' claims. Viewed through the lens of the APA, BOEM will be making a new agency action, supplanting the BOEM agency action that Plaintiffs challenge. Continuing to litigate the merits of Plaintiffs' current claims regarding the COP would waste the Court's and parties' resources. *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). Under these circumstances, granting a remand while BOEM conducts its reanalysis and issues a new COP decision is warranted. *Cf. Pellissippi Parkway Extension*, 375 F.3d at 418 (reversing district court's denial of a motion for voluntary remand to conduct additional NEPA analysis).

*Third*, Plaintiffs and Defendant-Intervenor would not be prejudiced by the remand. Federal Defendants have not yet answered the Amended Complaint, and no case management schedule has been set. There is therefore no prejudice from delay of a decision on the merits, as no decision is imminent. In any case, "delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand." *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022). Indeed, Plaintiffs effectively concede that their interests are not prejudiced, as they support the Court remanding the decision with vacatur. There would also be no prejudice to US Wind as offshore project construction is not imminent. The project is missing a key local approval from Essex County, Delaware, and the Outer Continental Shelf Air Permit is now being appealed. Suess Decl. ¶ 20. And because there would be no construction delay, remand and re-evaluation, standing alone, does not prejudice US Wind.

US Wind may be concerned that BOEM will make a different decision than its prior COP approval, but those concerns are speculative and unripe. "Ongoing agency review renders an agency order non-final and judicial review premature." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012). If US Wind is dissatisfied with the results of BOEM's reanalysis—and assuming other jurisprudential requirements are met—the company would be free to challenge that outcome. And if US Wind has concerns with BOEM's prior approval being removed during the remand, those concerns relate to the question of vacatur, not remand generally.

Finally, the Court should not impose an artificial deadline for the remand. "Deadlines become a substantive constraint on what an agency can reasonably do." *San Luis & Delta Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014). And it is not clear that anyone is "ultimately well-served" when "tight deadlines" are imposed on agencies' future analyses. *Id.*; *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 189 n.12 (D.C. Cir. 2017) (denying request that agency complete remand work by a specific deadline and file six-month progress reports). Interior intends to thoroughly re-evaluate the COP approval and any other issues that it identifies. *See* Suess Decl. ¶ 16–17. This court should decline to set deadlines on remand work because this may affect the agencies' ability to conduct a proper, thorough analysis and impede the agencies work. BOEM's request for voluntary remand should be granted as requested.

## II.    Remand Should Be with Vacatur.

Consistent with its equitable authority, the Court should remand the COP to BOEM with vacatur. Because BOEM has concluded that the decision did not properly weigh the § 1337(p)(4) factors, vacatur is the appropriate remedy. *See Defenders of Wildlife*, 931 F.3d at 345 (courts "will vacate agency action if it is not 'based on a consideration of the relevant factors' or where 'there has been a clear error of judgment'") (quoting *Marsh*, 490 U.S. at 378). Even if the Court considers whether to vacate under the *Allied-Signal* approach, vacatur is still appropriate. Under *Allied-*

*Signal*, "the decision whether to vacate depends on (1) the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and (2) the disruptive consequences of an interim change that may itself be changed." *See* 988 F.2d at 150–51 (cleaned up). Under both *Allied-Signal* factors, vacatur is warranted.

*First*, BOEM has identified a legal error under OCSLA that it seeks to correct. BOEM has concluded that its prior analysis approving the COP failed to properly apply the § 1337(p)(4) factors and account for all the Project's potential impacts. Suess Decl. ¶ 13. That includes an underestimation of impacts to search and rescue operations within the project area and impacts to commercial fisheries that may not be sufficiently mitigated. *Id.* ¶¶ 14–15. And in approving the COP, BOEM did not adequately ensure that all activities in the COP will be carried out in a manner that provides for reasonable uses of the OCS, such as commercial fishing. *Id.* ¶¶ 13, 15. These errors are serious because they call into question whether the COP should have been approved in its current form. On remand, Interior will conduct a new analysis under § 1337(p)(4), as well as any required technical and environmental reviews, including, at a minimum, an assessment of the sufficiency of its existing environmental reviews under NEPA, the NHPA, and the ESA. Suess Decl. ¶¶ 16–17. BOEM will then make a new COP decision. *Id.* The result of those re-evaluations could modify or even moot Plaintiffs' claims.

*Second*, vacatur would be minimally disruptive. *See NAACP v. Trump*, 298 F. Supp. 3d 209, 244 (D.D.C. 2018). Vacatur would not be disruptive because offshore construction is still months or years away, so vacating the COP will not interrupt any active or imminent construction. Suess Decl. ¶ 20. Rather, vacatur would clear the path for the appropriate analysis and decision on remand. After the OCSLA analysis is complete, BOEM may approve the COP, disapprove, or approve with conditions. *See id.* ¶ 16. Federal Defendants do not prejudge the outcome, but simply seek to properly address these questions on remand before making any decision on the COP.

### III.    If the Court Vacates the COP, it Should Dismiss All Claims as Moot.

If the Court remands and vacates BOEM's COP approval, it should dismiss all claims against both BOEM and NMFS as moot because vacatur of the COP approval would make it "impossible for the court to grant effective relief." *See CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474 (4th Cir. 2015). "A pending lawsuit is rendered moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021) (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)).

For claims against BOEM, there would be "no further business before the Court in this matter" after vacatur of the COP approval, so "the case [should] be dismissed." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Salazar*, No. 07-CV-00876 JEC/WPL, 2009 WL 8691098, at *5 (D.N.M. May 4, 2009). That is because the final agency action that Plaintiffs challenge is the COP approval. Am. Compl. Prayer for Relief ¶ 1. And vacatur of that final agency action is one form of relief that Plaintiffs seek. *Id.* Where the underlying agency decision no longer exists—as would be the case here if the COP approval is vacated—courts have found the litigation moot. *West v. Horner*, 810 F. Supp. 2d 228, 234 (D.D.C. 2011) (claims moot where agency rescinded approval); *see also Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("Because [the relevant Department of Interior] regulation no longer exists, we can do nothing to affect [plaintiffs'] rights relative to it, thus making this case classically moot for lack of a live controversy.").

For claims against NMFS, the Court should also dismiss those claims as moot if it vacates the COP approval because Plaintiffs' challenge to NMFS's ESA and MMPA decisions would no longer present live issues for which the Court could grant relief. For one, Plaintiffs' ESA claim challenges NMFS's June 18, 2024, BiOp, which analyzes "the effects of [BOEM's] proposed

approval, with conditions, of the [COP] authorizing the construction, operation, maintenance, and decommissioning of the Maryland Wind Offshore Wind Project (Lease OCS-A 0490) under the Outer Continental Shelf Lands Act (OCSLA)." *See* BiOp at 6.[2] If the Court vacates the COP approval, the proposed agency action on which the BiOp is based would cease to exist, along with any alleged redressable injury. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (cleaned up); *see also AFGE v. Off. of Special Counsel*, 1 F.4th 180, 187 (4th Cir. 2021) ("[A] case is moot if, at any point prior to the case's disposition, one of the elements essential to standing, like injury-in-fact, no longer obtains."). In a similar vein, Plaintiffs' MMPA claim challenges NMFS's November 26, 2024, Letter of Authorization, which authorizes certain amounts of "take" of marine mammals incidental to US Wind's construction of the Project. Letter of Authorization at 1, 40–42.[3] As BOEM's COP approval authorized construction of the Project, vacatur of the COP approval would eliminate any future incidental take authorized by the Letter of Authorization because construction as currently authorized under BOEM's COP approval would no longer occur. Here too, vacatur of the COP approval would eliminate any live, redressable injury from the Letter of Authorization. *See Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 130 (4th Cir. 2020) ("A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (cleaned up).

---

[2] BiOp available at https://www.boem.gov/sites/default/files/documents/renewable-energy/Maryland%20Wind%20NMFS%20Biological%20Opinion.pdf (last visited on September 12, 2025).

[3] Letter of Authorization available at https://www.fisheries.noaa.gov/s3/2024-12/MDWind-2024LOA-LOA-OPR1.pdf (last visited on September 12, 2025). Under the MMPA, the term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

In sum, if the Court grants BOEM's request to vacate the COP approval, a live controversy would no longer exist in this case and therefore the Court should dismiss all claims. Moreover, if the Court remands with vacatur, Plaintiffs do not oppose dismissal of their remaining claims without prejudice. After remand, Plaintiffs may file new claims—assuming other jurisprudential requirements are met—if they are again dissatisfied with BOEM's or NMFS's decisions. Thus, if the Court vacates the COP approval, it should dismiss the case.

## IV.    If the Court Remands BOEM's COP Approval Without Vacatur, it Should Stay the Case.

If the Court remands BOEM's COP approval without vacatur, in the interest of judicial economy, the Court should stay all claims against BOEM and NMFS pending completion of the remand of BOEM's COP approval. A stay would avoid wasting judicial and party resources, as BOEM's reconsideration of its COP approval may result in it withdrawing or modifying the approval, which would moot Plaintiffs' OCSLA claim as well as directly impact—if not outright moot—Plaintiffs' NEPA, NHPA, ESA, and MMPA claims.

Courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quotation marks omitted). In deciding whether to grant a stay, courts in the Fourth Circuit weigh three factors: (1) "the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay"; (2) "the hardship to the moving party if the case is not stayed"; and (3) "the potential damage or prejudice to the non-moving party if a stay is granted." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018) ("*IRAP*") (citations omitted).

13

Balancing these three factors supports a stay pending completion of BOEM's re-evaluation of its COP approval on remand.

### A.    A stay would promote judicial economy and the orderly course of justice.

A stay of litigation pending completion of BOEM's remand would further the interests of judicial economy. In short, it would make little sense to litigate the merits of these claims when BOEM's reconsideration of its COP approval may result in an outcome that moots, or necessitates changes in, both BOEM's and NMFS's challenged decisions.

In a situation like this, the interests of judicial economy favor a stay of litigation because the outcome of BOEM's reconsideration on remand may moot or narrow Plaintiffs' claims. *See Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. PWG-18-961, 2019 WL 5964526, at *3 (D. Md. Oct. 18, 2019) (declining to proceed with litigation of a BiOp challenge when the agency was revisiting its decision because continued litigation "would not conserve resources and could require a piecemeal resolution, as the Court later would have to address any challenges Plaintiffs brought to the revised or reaffirmed opinion and could conduct unnecessary analysis of issues rendered moot by the agency's reconsideration."); *IRAP*, 323 F. Supp. 3d at 732 (finding "judicial economy will be served by a stay of this case because the resolution of the issues [in appeal proceedings] will likely have a direct impact on the future course of the case").

Indeed, as relevant here, the D.C. Circuit has found that a stay is appropriate "when there are legitimate developments that could obviate the need for judicial review, such as when a new administration chooses to reevaluate its litigating position or when an agency plans to reconsider a challenged rule." *Utah v. Env't Prot. Agency*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (per curiam); *see id.* ("It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate. Allowing resolution of a dispute without the court's intervention conserves judicial resources and comports with our theoretical role

14

as the governmental branch of last resort.") (cleaned up); *see also S. Yuba River Citizens League v. NMFS*, No. 2:13-cv-00059-MCE, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013) (granting a stay because, "the outcome of the [agency's] proceedings will impact the final resolution of this case" and, "without a stay, the parties will be required to litigate, and the [c]ourt to adjudicate, the same fundamental issues that are already being reconsidered[.]") (cleaned up); *Nat. Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207 LJO, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) ("The efficiencies of Federal Defendants' proposed [stay] are obvious…. Depending on the outcome of the [agency's action on remand], the Court's intervention may not be needed at all. Even if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some of the numerous issues raised in this case[.]").

### B.    Absent a stay, Federal Defendants would face significant hardship.

A stay of litigation pending the completion of the remand of BOEM's COP approval would avoid significant prejudice to Federal Defendants. Absent a stay, Federal Defendants would be forced to expend limited agency resources on litigating the merits of agency decisions that address the anticipated impacts of construction and operations that are being reconsidered and thus may not ever occur as now envisioned. *See, e.g.*, *S. Yuba*, 2013 WL 4094777, at *9 ("Forcing [the government] Defendants to proceed in the instant litigation, when it is [] clear that the outcome of the administrative proceedings will impact the final resolution of this case, would be prejudicial.") (cleaned up); *Nat. Res. Def. Council*, 2015 WL 3750305, at *8 (granting a stay, in part, because "federal agencies would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts"); *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government").

### C.    A stay would not prejudice Plaintiffs or US Wind.

Federal Defendants' requested stay pending the completion of a remand to BOEM is unlikely to cause prejudice to the non-moving parties (Plaintiffs and US Wind). To begin with, the outcome of the remand may obviate or narrow the need for litigation, and Plaintiffs and US Wind are "unlikely to be prejudiced by a stay that could reduce the burden of litigation on [all] parties." *Cunningham v. Homeside Fin., LLC*, No. MJG-17-cv-2088, 2017 WL 5970719, at *2 (D. Md. Dec. 1, 2017). Absent a stay, US Wind would be litigating challenges to an approval of a construction plan that may later be modified. Further, neither Plaintiffs nor US Wind will suffer any meaningful prejudice from a stay of litigation where US Wind has publicly announced that it does not anticipate beginning onshore construction until 2026 and any offshore construction—which is the construction at issue in the challenged government approvals—until 2028. *See* Jack Hogan, *US Wind hoping to begin construction of Ocean City project in* 2026, The Daily Record (Dec. 4, 2024).[4] And by remanding BOEM's COP approval, the outcome of which may impact the challenged agency decisions here, Plaintiffs are effectively provided with part of their requested relief, undercutting any claim of undue prejudice on their part. *See* Am. Compl., Prayer for Relief ¶ 2 (seeking a "[r]emand of the matter to BOEM and NMFS").

But even if a stay may result in some prejudice to Plaintiffs or US Wind, the countervailing interests of the Court and Federal Defendants, as discussed above, outweigh any such concerns. *See, e.g.*, *WildEarth Guardians v. U.S. Army Corps of Eng'rs*, No. 15-cv-00159 WJ/KBM, 2016 WL 9777189, at *5 (D.N.M. June 17, 2016) (granting stay where "denying the request for a stay would prejudice [defendant agencies] more seriously than it would harm [p]laintiff"); *Nat. Res. Def. Council*, 2015 WL 3750305, at *14 (finding plaintiffs' claims of prejudice "do not overcome

---

[4] Article available at https://thedailyrecord.com/2024/12/04/us-wind-hoping-to-begin-construction-of-ocean-city-project-in-2026/ (last visited on September 12, 2025).

the potential efficiencies to be gained from the imposition of a brief stay"); *see also Friends of Animals*, 628 F. Supp. 3d at 78 ("Given the resource efficiencies inherent in the possibility of [the agency] providing [the plaintiff] … the relief it seeks without the need for further litigation, this delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand.").

If the Court does not vacate the COP approval, a stay of litigation pending completion of Federal Defendants' requested remand would serve the interests of judicial economy, avoid a strain on limited government resources, and would not result in any undue prejudice.

## CONCLUSION

For these reasons, the Court should grant Federal Defendants' motion for voluntary re-mand, with vacatur, of BOEM's COP approval and subsequently dismiss all proceedings in this case. If the Court remands BOEM's COP approval without vacatur, it should stay all proceedings pending BOEM's review of the COP approval and a new decision on remand.

Dated: September 12, 2025                     Respectfully submitted,


                                               ADAM R.F. GUSTAFSON
                                               Acting Assistant Attorney General


                                               */s/ Samuel Vice*
                                               SAMUEL VICE, Trial Attorney
                                               CA Bar No. 324687
                                               DEVON TICE, Trial Attorney
                                               CA Bar No. 357918
                                               Natural Resources Section
                                               P.O. Box 7611
                                               Washington, DC 20044-7611
                                               Tel: 202-514-4352 (Tice)
                                               Email: devon.tice@usdoj.gov
                                               Tel: 202-305-0434 (Vice)
                                               Email: samuel.vice@usdoj.gov

BONNIE BALLARD, Trial Attorney
Maryland Bar No. 2211280027
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-1513
Fax: (202) 305-0275
Email: bonnie.m.ballard@usdoj.gov

*Attorneys for Federal Defendants*