# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF OCEAN CITY, et al., | |
| Plaintiffs/Counter-Defendants, | |
| v. | Case No. 1:24-cv-03111-SAG |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants/Cross-Defendants, | |
| and | |
| US WIND, INC., | |
| Defendant-Intervenor/Counter-Plaintiff/Cross-Plaintiff. | |

## PLAINTIFFS/COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT-INTERVENOR'S COUNTERCLAIM

**Table of Contents**

Table of Authorities.......................................................................................................iii

Table of Abbreviations ................................................................................................vii

Issues Presented for Review .......................................................................................... 2

Factual and Procedural Background ............................................................................. 2

Argument ........................................................................................................................ 6

    1.    This Court lacks jurisdiction over Counts VII through X of the Counterclaim because those claims fall outside the zone of interests of the invoked statutes......................................... 6

        A.    USW's financial interests are not within National Environmental Policy Act's zone of interests (Count VII). ........................................................................................................ 8

        B.    USW's economic interests fall outside the National Historic Preservation Act's zone of interests (Count X)............................................................................................................ 9

        C.    USW's construction and financial concerns fall outside the zone of interests of the Endangered Species Act and Marine Mammal Protection Act (Counts VIII and IX). ......... 10

    2.    The Counterclaim fails to state a legally cognizable cause of action against the non-federal moving parties.......................................................................................................11

        A.    The APA does not provide a cause of action against Plaintiffs (Counts I, II, III)......... 12

        B.    The Counterclaim fails to state a cause of action under the OCSLA Citizens' Suit Provision (Count IV)................................................................................................. 16

        C.    The Counterclaim fails to state a cause of action against Plaintiffs under the Fifth Amendment (Count V)............................................................................................... 17

        D.    The Counterclaim fails to state a cause of action to validate the Government's permits and approvals (Counts VI, VII, VIII, IX, and X). ................................................................. 19

Conclusion ................................................................................................................... 20

**Table of Authorities**

**Cases**

*3883 Connecticut LLC v. D.C.*,
191 F. Supp. 2d 90 (D.D.C. 2002) ................................................................................ 17

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*,
498 U.S. 517 (1991)......................................................................................................... 6

*Amgen, Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004)......................................................................................... 7

*Appalachian Voices v. United States Dep't of Interior*,
25 F.4th 259 (4th Cir. 2022) ......................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................. 11, 15

*Asilonu v. Asilonu*,
550 F. Supp. 3d 282 (M.D.N.C. 2021)..........................................................................11

*Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
560 F. Supp. 3d 929 (D. Md. 2021). ............................................................................... 5

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972)....................................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................11, 12, 15

*Bennett v. Spear*,
520 U.S. 154 (1997)............................................................................................. 7, 13, 19

*Branch v. Fed. Home Loan Mortg.*,
No. 5:04-CV-859-BO, 2005 WL 8159344 (E.D.N.C. July 28, 2005)........................... 5

*Brock v. Roadway Express, Inc.*,
481 U.S. 252 (1987)....................................................................................................... 18

*Burns v. Washington Metro. Area Transit Auth.*,
488 F. Supp. 3d 210 (D. Md. 2020) ................................................................................ 5

*California v. Trump*,
613 F. Supp. 3d 231 (D.D.C. 2020). ............................................................................... 6

*Cape Hatteras Access Pres. All. v. Jewell*,
28 F. Supp. 3d 537 (E.D.N.C. 2014) .............................................................................. 9

*Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*,
113 F. Supp. 3d 807 (D. Md. 2015)............................................................................... 20

*City of New York v. United States Dep't of Def.*,
913 F.3d 423 (4th Cir. 2019).........................................................................................12

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004)..................................................................................10, 11

*Connolly v. Lanham*,
685 F. Supp. 3d 312 (D. Md. 2023) ...............................................................................12

*Conservation Council for Hawaii v. Nat'l Marine Fisheries Serv.*,
   97 F. Supp. 3d 1210 (D. Haw. 2015)................................................................ 19

*CSL Plasma Inc. v. U.S. Customs & Border Prot.*,
   33 F.4th 584 (D.C. Cir. 2022) .......................................................................... 7

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002)............................................................................ 15

*Dubois v. U.S. Dep't of Agric.*,
   102 F.3d 1273 (1st Cir. 1996) .......................................................................... 9

*E.B. v. U.S. Dep't of State*,
   583 F. Supp. 3d 58 (D.D.C. 2022). .................................................................. 18

*Fenner v. Bruce Manor, Inc.*,
   409 F. Supp. 1332 (D. Md. 1976) .................................................................... 17

*Flaherty v. Bryson*,
   850 F. Supp. 2d 38 (D.D.C. 2012) ................................................................... 9

*Freedom Servs., Inc. v. Freedom Servs., LLC*,
   No. CV MJM-23-1625, 2024 WL 3089663 (D. Md. June 21, 2024) ..................... 20

*Gardner v. City of Balt. Mayor & City Council*,
   969 F.2d 63 (4th Cir. 1992).............................................................................. 17

*Green Oceans v. United States Dep't of the Interior*,
   No. 1:24-CV-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025)....................10, 11

*Guindon v. Pritzker*,
   31 F. Supp. 3d 169 (D.D.C. 2014) ................................................................... 9

*Harman v. Unisys Corp.*,
   356 F. App'x 638 (4th Cir. 2009)..................................................................... 15

*Ibarra v. United States*,
   120 F.3d 472 (4th Cir. 1997)............................................................................ 5

*Jersey Heights Neighborhood Ass'n v. Glendening*,
   174 F.3d 180 (4th Cir. 1999)............................................................................ 19

*Kashdan v. George Mason Univ.*,
   70 F.4th 694 (4th Cir. 2023)............................................................................. 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014). ...................................................................................... 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..................................................................................... 6, 10

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)........................................................................................ 7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)........................................................................................ 7

*Mayor & City Council of Balt. v. Trump*,
   416 F. Supp. 3d 452 (D. Md. 2019) .................................................................. 7

*Nat. Res. Def. Council, Inc. v. U.S. EPA*,
   16 F.3d 1395 (4th Cir. 1993)............................................................................ 13

*Nat'l Trust for Hist. Pres. v. Blanck*,
    938 F. Supp. 908 (D.D.C. 1996) .................................................................................. 19

*Ocean Advocs. v. U.S. Army Corps of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005) ....................................................................................... 19

*Oregon Nat. Res. Council v. Allen*,
    476 F.3d 1031 (9th Cir. 2007) ..................................................................................... 19

*Pac. Nw. Generating Co-op. v. Brown*,
    38 F.3d 1058 (9th Cir. 1994) ....................................................................................... 10

*Painter's Mill Grille, LLC v. Brown*,
    716 F.3d 342 (4th Cir. 2013) ....................................................................................... 11

*Pratt Land & Dev., LLC v. City of Chattanooga*,
    581 F. Supp. 3d 962 (E.D. Tenn. 2022) ...................................................................... 17

*Pye v. United States*,
    269 F.3d 459 (4th Cir. 2001) ....................................................................................... 10

*Retfalvi v. United States*,
    930 F.3d 600 (4th Cir. 2019) ......................................................................................... 5

*Rouse v. Moore*,
    724 F. Supp. 3d 410 (D. Md. 2024) ............................................................................... 5

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ......................................................................................... 5

*Sharma v. OneWest Bank, FSB*,
    No. CIV.A. DKC 11-0834, 2011 WL 5167762 (D. Md. Oct. 28, 2011) ..................... 20

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...................................................................................................... 6

*Solis v. Prince George's Cnty.*,
    153 F. Supp. 2d 793 (D. Md. 2001) ............................................................................ 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................................... 6

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    301 F. Supp. 3d 50 (D.D.C. 2018) ................................................................................ 9

*Sylvia Development Corp. v. Calvert Cnty., Md.*,
    48 F.3d 810 (4th Cir. 1995) ......................................................................................... 18

*Syngenta Crop Protection, Inc. v. EPA*,
    444 F. Supp. 2d 434 (M.D.N.C. 2006) ........................................................................ 18

*TAP Pharms. v. U.S. Dep't of Health & Hum. Servs.*,
    163 F.3d 199 (4th Cir. 1998) ......................................................................................... 6

*Taubman Realty Grp. Ltd. P'ship v. Mineta*,
    320 F.3d 475 (4th Cir. 2003) ......................................................................................... 8

*Tennessee Valley Auth. v. Hill*,
    437 U.S. 153 (1978) .................................................................................................... 11

*Town of Stratford, Connecticut v. FAA*,
    285 F.3d 84 (D.C. Cir. 2002) ......................................................................................... 8

v

*Trantham v. Tate,*
   112 F.4th 223 (4th Cir. 2024) ................................................................ 4
*Versata Dev. Corp. v. Rea,*
   959 F. Supp. 2d 912 (E.D. Va. 2013) ................................................... 13
*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
   714 F.3d 186 (4th Cir. 2013) ............................................................... 13
*W. Radio Servs. Co. v. Espy,*
   79 F.3d 896 (9th Cir. 1996) ................................................................... 9
*W. State Univ. of S. California v. Am. Bar Ass'n,*
   301 F. Supp. 2d 1129 (C.D. Cal. 2004) ............................................... 13
*Washington Legal Clinic for the Homeless v. Barry,*
   107 F.3d 32 (D.C. Cir. 1997) ............................................................... 18
*Washington Toxics Coal. v. U.S. Dep't of Interior, Fish & Wildlife Serv.,*
   457 F. Supp. 2d 1158 (W.D. Wash. 2006) ............................................. 9
*White v. City of Greensboro,*
   532 F. Supp. 3d 277 (M.D.N.C. 2021) ................................................. 17

**Statutes**

16 U.S.C. § 1371 ......................................................................................2, 11
16 U.S.C. § 1451 ............................................................................................. 2
16 U.S.C. § 1540(g)(1)(A), (B) ...................................................................... 2
16 U.S.C. § 703 ............................................................................................... 2
42 U.S.C. § 4321 ............................................................................................. 9
42 U.S.C. § 4321-4370h ................................................................................. 2
43 U.S.C. § 1334(a)(1) .................................................................................. 18
43 U.S.C. § 1334(a)(2) .................................................................................. 18
5 U.S.C. § 533 ............................................................................................... 18
5 U.S.C. § 551(13) ........................................................................................ 13
5 U.S.C. § 701(b)(1) ..................................................................................... 13
5 U.S.C. § 701-706 ......................................................................................... 2
5 U.S.C. § 702 ...................................................................................... 7, 12, 13
5 U.S.C. § 704 ....................................................................................... 12, 13
54 U.S.C. § 300101–307108 .......................................................................... 2
54 U.S.C. § 306108 ....................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 5
Fed. R. Civ. P. 12(b)(6) .................................................................................. 5
Fed. R. Civ. P. 8 ........................................................................................... 15

**Regulations**

30 C.F.R. § 556.1102 .................................................................................... 18
40 C.F.R. § 1500.1(a) ..................................................................................... 9

**Table of Abbreviations**

| Abbreviation | Definition |
| --- | --- |
| APA | Administrative Procedure Act |
| BOEM | Bureau of Ocean Energy Management |
| CZMA | Coastal Zone Management Act |
| ESA | Endangered Species Act |
| MBTA | Migratory Bird Treaty Act |
| MMPA | Marine Mammal Protection Act |
| NEPA | National Environmental Policy Act |
| NHPA | National Historic Preservation Act |
| OCS | Outer Continental Shelf |
| OCSLA | Outer Continental Shelf Lands Act |
| USW | US Wind, Inc. |

With its Amended Answer, Defendant-Intervenor, US Wind, Inc. (USW), has asserted a Cross-claim against the Federal Defendants,[1] and a Counterclaim against Plaintiffs, Mayor and City Council of Ocean City, et al. (collectively, Ocean City or Plaintiffs).[2] USW's Counterclaim against Plaintiffs should be dismissed because:

- The Counterclaim is based on future (prospective) events—i.e., a possible future Government decision to revoke one or more of its permits or approvals for the Project, following a possible remand by the Court, during a possible stay, or otherwise—and is therefore premature and not ripe for review.

- The Counterclaim alleges no conduct or action by any Plaintiff, or other facts, that would support a cognizable cause of action under the Administrative Procedure Act (APA) or any federal statute in this case, and therefore fails to advance any cognizable claims against Plaintiffs under Federal Rules of Civil Procedure 8 and 12(b)(6).

- USW does not have standing to assert any claim against Plaintiffs under the environmental and historic preservation statutes on which it relies.

- USW concedes that it named Plaintiffs in its Counterclaim only to foreclose Plaintiffs' ability to continue challenging the approvals, and this is a wholly improper basis for advancing claims against Plaintiffs.[3]

---

[1] Department of the Interior, Secretary of the Interior Doug Burgum, Bureau of Ocean Energy Management (BOEM), BOEM Acting Director Matthew Giacona, National Marine Fisheries Service (NMFS), and NMFS Acting Assistant Administrator Eugenio Pieneiro Soler.

[2] US Wind's Amend. Answer and Counterclaim, ECF No. 77 (Sept. 3, 2025).

[3] *See* US Wind's Crossclaim and Counterclaim at p. 65, ECF No. 77 (Sept. 3, 2025) ("US Wind respectfully requests that this Court . . . [p]reliminarily and permanently enjoin the Federal Defendants and any person or entity acting in concert with them from taking any action to vacate, remand, or in any way undermine any or all of the Federal Approvals.").

**Issues Presented for Review**

1.    Does USW have standing to assert an APA claim against any of the Plaintiffs for any alleged decision by Federal Defendants vis-à-vis vacating, reconsidering, or withdrawing any federal approvals for the Maryland Offshore Wind Project?

2.    Is USW's APA claim challenging possible future Government actions ripe for review?

3.    Does USW's Counterclaim against Plaintiffs state a claim on which relief can be granted?

**Factual and Procedural Background**

On October 25, 2024, Plaintiffs filed their Complaint[4] challenging the Government's approval of the Maryland Offshore Wind Project under the Administrative Procedure Act (APA),[5] National Environmental Policy Act (NEPA),[6] Endangered Species Act (ESA),[7] Marine Mammal Protection Act (MMPA),[8] Migratory Bird Treaty Act (MBTA),[9] Coastal Zone Management Act (CZMA),[10] and National Historic Preservation Act (NHPA).[11] On January 6, 2025, after the termination of the 60-day notice period, Plaintiffs amended their Complaint to add a cause of action under the Outer Continental Shelf Lands Act (OCSLA)[12] and to add ten more Plaintiffs.[13]

---

[4] Compl., ECF No. 1 (Oct. 25, 2024).
[5] 5 U.S.C. § 701–706.
[6] 42 U.S.C. § 4321–4370h.
[7] 16 U.S.C. § 1531–1544.
[8] 16 U.S.C. § 1371.
[9] 16 U.S.C. § 703.
[10] 16 U.S.C. § 1451.
[11] 54 U.S.C. § 300101–307108.
[12] 43 U.S.C. § 1337(p)(4).
[13] Amend. Compl., ECF No. 32 (Jan. 6, 2025).

On January 17, 2025, the Government moved to dismiss two of Plaintiffs' causes of action under Rule 12(b)(6),[14] and later USW, which was permitted to intervene in the case as an additional Defendant, moved to dismiss the entire lawsuit under Rules 12(b)(1) and 12(b)(6).[15] On July 7, 2025, the Court granted dismissal of the MBTA, CZMA, and standalone APA claims (granting Federal Defendants' Partial Motion to Dismiss and granting only in part USW's Motion), but otherwise denied dismissal as to the other causes of action.[16]

On August 25, 2025, the Federal Defendants and Plaintiffs jointly moved to establish a briefing schedule for the Federal Defendants' Motion for Voluntary Remand and to defer filing an answer to the Amended Complaint,[17] which USW opposed.[18] On September 3, 2025, USW filed an Amended Answer,[19] adding a ten-count Cross-claim and Counterclaim directed principally against the Federal Defendants but sweeping in all Plaintiffs. USW does not factually tie any specific Plaintiff to any cause of action advanced in the Counterclaim or to any challenged conduct, but instead, proffers that the Counterclaim is being asserted against Plaintiffs for the purported purpose of "[p]reliminarily and permanently enjoin[ing]" them "from taking any action to vacate, remand, or in any way undermine any or all of the Federal Approvals."[20]

Incredibly, USW has sued Plaintiffs via the Counterclaim for advancing cognizable claims that challenge the Project approval under federal statutes (claims that have survived pre-

---

[14] Gov't Mot. to Dismiss, ECF No. 37 (Jan. 17, 2025).
[15] US Wind's Mot. to Dismiss, ECF No. 39 (Jan. 29, 2025).
[16] Order Granting in Part and Denying in Part the Motions to Dismiss, ECF No. 69 (July 2, 2025).
[17] Joint Opposed Motion, ECF No. 74 (Aug. 25, 2025).
[18] US Wind's Opposition to Joint Motion, ECF No. 78 (Sept. 4, 2025).
[19] US Wind's Amend. Answer and Counterclaim, ECF No. 77 (Sept. 3, 2025).
[20] US Wind's Counterclaim, at p. 65, ECF No. 77 (Sept. 3, 2025).

answer motions to dismiss); petitioning government officials regarding Project approvals; purportedly "act[ing] in concert with" the Government (whatever that means) in regard to purely governmental and prospective decisionmaking as to the Project approvals (for decisionmaking that has yet to occur); and "create[ing] uncertainty" as to the Project which has purportedly "impaired" USW's "financial investment."[21] In short, USW's Counterclaim rests on the fact that Plaintiffs exercised their fundamental judicial, statutory, procedural, and constitutional rights to challenge the Project, and that this lawful conduct allegedly affected USW's financial position. USW further "condition[s]" its Counterclaim against Plaintiffs on what amount to USW's legal *defenses*, as advanced in the primary action but not yet decided, that Plaintiffs "lack standing," "fall outside applicable statutory zones of interest," or are otherwise "barred" from asserting their claims.[22] If the Court determines that Plaintiffs cannot pursue their claims, USW "does not intend" to pursue the Counterclaim.[23]

On September 12, 2025, the Federal Defendants moved for voluntary remand and vacatur of the Project's approvals.[24]

**Standard of Review**

1.      **Rule 12(b)(1)**

Under Rule 12(b)(1), a case must be dismissed if the court lacks subject matter jurisdiction.[25] Standing is a jurisdictional issue.[26] When challenged, the party invoking the

---

[21] US Wind's Counterclaim, ¶¶4-5, 10, ECF Doc. No. 77 (Sept. 3, 2025).
[22] US Wind's Counterclaim ¶ 6, ECF No. 77 (Sept. 3, 2025).
[23] US Wind's Counterclaim ¶ 6, ECF No. 77 (Sept. 3, 2025).
[24] Motion to Remand and Vacate, ECF No. 81 (Sept. 12, 2025).
[25] Fed. R. Civ. P. 12(b)(1).
[26] *Trantham v. Tate*, 112 F.4th 223, 231 (4th Cir. 2024) ("Because standing is jurisdictional, we start there.").

court's subject-matter jurisdiction bears the burden of establishing it.[27] The party invoking

jurisdiction—USW—has to prove constitutional standing[28] and a live "case or controversy"

subject to the federal courts' judicial power under Article III of the Constitution.[29]

## 2. Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move for dismissal if a plaintiff "fail[s] to state a

claim upon which relief can be granted."[30] And although the moving party bears the burden of

proof that the pleader has failed to state a claim,[31] and the court in reviewing a Rule 12(b)(6)

motion "accepts 'the well-pled allegations of the complaint as true,' and construes all facts and

reasonable inferences most favorably to the plaintiff,"[32] the court is not required to assume the

legal conclusions in a complaint are true.[33] The purpose of the rule is to allow the court to

eliminate claims that are fatally flawed in their legal premises and destined to fail and thus spare

litigants the burdens of unnecessary litigation.[34]

---

[27] *Burns v. Washington Metro. Area Transit Auth.*, 488 F. Supp. 3d 210, 213 (D. Md. 2020)
("[T]he plaintiff bears the burden of proving that the court has subject-matter jurisdiction.").
[28] *Rouse v. Moore*, 724 F. Supp. 3d 410, 428 (D. Md. 2024) ("'Plaintiffs bear the burden of
establishing standing.'" (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at
Broadlands, LLC*, 713 F.3d 175, 181 (4th Cir. 2013))).
[29] *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 560 F. Supp. 3d 929, 944–45 (D.
Md. 2021).
[30] Fed. R. Civ. P. 12(b)(6).
[31] *Kristufek v. Saxonburg Ceramics, Inc.*, 901 F. Supp. 1018, 1022 (W.D.N.C. 1994).
[32] *Ass'n for Educ. Fairness*, 560 F. Supp. 3d at 944 (quoting *Ibarra v. United States*, 120 F.3d
472, 474 (4th Cir. 1997)).
[33] *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) ("[A] court is not required to accept
legal conclusions drawn from facts.").
[34] *See Branch v. Fed. Home Loan Mortg.*, No. 5:04-CV-859-BO, 2005 WL 8159344, at *2
(E.D.N.C. July 28, 2005).

**Argument**

1.   **This Court lacks jurisdiction over Counts VII through X of the Counterclaim because those claims fall outside the zone of interests of the invoked statutes.**

To satisfy constitutional standing under Article III, a plaintiff must plead facts sufficient to show injury-in-fact.[35] "To establish injury in fact, a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[36] Standing further "requires that the party seeking review be [themselves] among the injured,"[37] including when alleging procedural injuries from a governmental agency's decisionmaking.[38]

In an APA case like this Counterclaim, the plaintiff (Counterclaimant) must additionally show that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute"[39] (e.g., ESA, MMPA, NEPA, and NHPA) allegedly violated. A plaintiff must make this showing based on "the adverse effect upon him" and on the particular "statutory provision whose violation forms the legal basis for his complaint."[40]

Section 702 of the APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."[41] As the Supreme Court states, "[t]his provision contains

---

[35] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).
[36] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).
[37] *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).
[38] *California v. Trump*, 613 F. Supp. 3d 231, 242–43 (D.D.C. 2020).
[39] *TAP Pharms. v. U.S. Dep't of Health & Hum. Servs.*, 163 F.3d 199, 202 (4th Cir. 1998) (internal citations and quotations omitted).
[40] *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523–24 (1991).
[41] 5 U.S.C. § 702.

6

two separate requirements. First, the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion[.]"[42] Second, the party must show that it has "'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'"[43] The plaintiff must show its alleged injury falls within the "zone of interests" protected or regulated by the statute it invokes.[44]

Under the zone of interests test, the "statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."[45] For courts, "'the salient consideration . . . is whether the challenger's interests are such that they in practice can be expected to police the interests that the statute protects.'"[46] The zone of interests test under the APA "forecloses suit" when "a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue."[47]

By its own pleading, USW describes its alleged harms in purely economic terms, asserting that "the actions of Counterclaim Defendants have created uncertainty regarding the status of the Project's approvals, have impaired US Wind's significant financial investment in the Project, and further impairs US Wind's financial investment every day such uncertainty

---

[42] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).
[43] *Id.* at 883 (quoting 5 U.S.C. § 702).
[44] *Bennett v. Spear*, 520 U.S. 154, 162 (1997).
[45] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (internal citation and quotations omitted).
[46] *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 589 (D.C. Cir. 2022) (quoting *Amgen, Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004)).
[47] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)); *see also Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 497 (D. Md. 2019).

continues."[48] These alleged harms—lost revenues, impaired investments, possible construction delays—are not environmental or preservationist interests.

USW's financial and business interests—the purported "injury in fact" USW relies on for its standing to bring this Counterclaim—fall far outside the zone of interests of the Seventh Cause of Action (NEPA), Eighth Cause of Action (ESA), Ninth Cause of Action (MMPA), and Tenth Cause of Action (NHPA). NEPA, ESA, MMPA, and NHPA are environmental and preservation statutes, designed to protect environmental values, cultural and historic properties, and endangered species and marine mammals. Each of those statutes' zone of interests encompasses aesthetic, recreational, scientific, or conservation concerns—they do not extend to safeguarding the financial expectations of developers.

Because USW's alleged harms fall outside the zone of interests of the statutes it invokes, its Counterclaim should be dismissed for lack of standing— and therefore lack of jurisdiction under Rule 12(b)(1).

A.    **USW's financial interests are not within National Environmental Policy Act's zone of interests (Count VII).**

NEPA "cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant."[49] NEPA was enacted to ensure federal agencies account for the environmental costs of development, not to guarantee that developers can profitably complete their projects. USW's economic injuries do not fall within NEPA's zone of interests.[50]

---

[48] US Wind Counterclaim ¶ 5, ECF No. 77 (Sept. 3, 2025).
[49] *Town of Stratford, Connecticut v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002).
[50] *See Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003).

NEPA is our "basic national charter for protection of the environment[,]"[51] and its purpose is "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man[.]"[52] While NEPA's zone of interests is broad, it reaches only environmental interests—those rooted in aesthetic, recreational, scientific, and conservation values. Courts have underscored that "'NEPA's purpose is to protect the environment, not the economic interest of those adversely affected by agency decisions.'"[53] Courts routinely recognize standing under NEPA for individuals or groups alleging harm to natural or cultural resources they use or value.[54]

USW, however, alleges only that the Government's Motion for Remand and Vacatur creates uncertainty about the Project's approvals, which has impaired "significant financial investments" and that vacatur prevents USW from "exercis[ing] its rights under its Outer Continental Shelf lease to construct and operate the Maryland Offshore Wind Project."[55] These are economic harms, not environmental injuries—and they are not within NEPA's zone of interests.

### B.    USW's economic interests fall outside the National Historic Preservation Act's zone of interests (Count X).

The NHPA requires federal agencies to "take into account the effect of [their] undertakings" on historic properties,[56] and its zone of interests protects cultural, aesthetic, and

---

[51] 40 C.F.R. § 1500.1(a).

[52] 42 U.S.C. § 4321.

[53] *Cape Hatteras Access Pres. All. v. Jewell*, 28 F. Supp. 3d 537, 544 (E.D.N.C. 2014) (quoting *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 902–03 (9th Cir. 1996)).

[54] *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1282–83 (1st Cir. 1996); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 61 (D.D.C. 2018); *Guindon v. Pritzker*, 31 F. Supp. 3d 169, 187 (D.D.C. 2014); *Flaherty v. Bryson*, 850 F. Supp. 2d 38, 48 (D.D.C. 2012).

[55] US Wind Counterclaim at ¶ 1, ECF No. 77 (Sept. 3, 2025).

[56] 54 U.S.C. § 306108.

property interests in such resources.[57] The NHPA supports standing for historic property owners, preservation organizations, and individuals with ties to affected historic sites.[58] USW alleges no injury-in-fact relating to any historic property—and NHPA therefore does not support USW's standing to assert its tenth cause of action.

### C. USW's construction and financial concerns fall outside the zone of interests of the Endangered Species Act and Marine Mammal Protection Act (Counts VIII and IX).

The ESA and MMPA are protective environmental statutes that extend standing broadly to those with conservation, recreational, cultural, or scientific ties to wildlife.[59] Courts have even recognized claims from businesses whose work depends directly on protected species, such as whale-watching operators.[60] But the breadth of these statutes does not stretch to cover developers whose only stake lies in keeping their projects on schedule and preserving their financial investment. A company seeking to accelerate construction of a project that may harm species is not within the class of plaintiffs Congress had in mind when it enacted the ESA and MMPA.

While some economic claims can fall within the ESA's zone of interests, those claims must be rooted in the preservation of the protected species.[61] USW's interests are not even arguably in the preservation of any listed species. The MMPA's zone of interests likewise

---

[57] *See Pye v. United States*, 269 F.3d 459, 470 (4th Cir. 2001).

[58] *Id.*

[59] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–563 (1992); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1203 (9th Cir. 2004).

[60] *Green Oceans v. United States Dep't of the Interior*, No. 1:24-CV-141-RCL, 2025 WL 973540, at *11 (D.D.C. Apr. 1, 2025) ("[E]conomic injuries alleged" by "owners of whale watching companies, fall within the zone of interests of the MMPA.").

[61] *See Pac. Nw. Generating Co-op. v. Brown*, 38 F.3d 1058, 1065 (9th Cir. 1994).

"extends to any party with 'conservationist, aesthetic, recreational, or economic interests' in marine mammal protection[.]"[62]

Again, USW's own allegations confirm that its injuries are financial: uncertainty about approvals has impaired its "significant financial investment" and hindered its ability to proceed with construction.[63] These financial injuries—wholly unrelated to the preservation of any species—place USW in direct conflict with the express purposes of the ESA and MMPA, which are to slow or halt harmful activity to protect endangered species and marine mammals.[64]

**2.     The Counterclaim fails to state a legally cognizable cause of action against the non-federal moving parties.**

To survive a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[65] "A claim has facial plausibility when the [counterclaim-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-]defendant is liable for the misconduct alleged."[66] Rule 8 demands more than bald accusations or mere speculation.[67] And

---

[62] *Green Oceans v. United States Dep't of the Interior*, No. 1:24-CV-141-RCL, 2025 WL 973540, at *10 (D.D.C. Apr. 1, 2025) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1203 (9th Cir. 2004)).

[63] US Wind Counterclaim at ¶ 5, ECF No. 77 (Sept. 3, 2025).

[64] *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978) (the purpose of the ESA is to "halt and reverse the trend toward species extinction, whatever the cost."); 16 U.S.C. § 1371 (MMPA similarly mandates conservation of marine mammal populations and, with limited exceptions, prohibits the "take" of marine mammals, including harassment or killing).

[65] *Asilonu v. Asilonu*, 550 F. Supp. 3d 282, 297 (M.D.N.C. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[66] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[67] *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

"if a complaint provides no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' it is insufficient" to state a claim.[68]

Here, USW alleges no misconduct by any Plaintiff. Nor do the statutes USW purports to rely on (APA, ESA, MMPA, NEPA, NHPA, OCSLA) provide a cause of action against these non-federal parties, arising from bringing this suit, challenging the Project's approvals, or lawfully petitioning elected and/or other government officials.

All of USW's claims (Counts I-X) challenge purported actions (or threatened actions) by the Federal Defendants and seek remedies relating to federal permits and approvals for the Maryland Offshore Wind Project. USW seeks to drag Plaintiffs in as defendants to those claims based merely on Plaintiffs' lawful judicial and regulatory opposition to the Project and that they have "on information and belief" communicated or acted "in concert" with the government. The Counterclaim does not identify any improper or actionable conduct whatsoever by Plaintiffs.

### A.    The APA does not provide a cause of action against Plaintiffs (Counts I, II, III).

USW's first three counts seek to allege violations of the APA. But the APA provides no cause of action against non-federal parties. Rather, the APA is a waiver of the United States' sovereign immunity to allow a suit by "'a person suffering legal wrong because of agency action.'"[69] The APA limits claims to "final agency action,"[70] and defines "agency action" to include "'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'"[71] Under the APA, an "agency" is "each authority of the

---

[68] *Connolly v. Lanham*, 685 F. Supp. 3d 312, 321–22 (D. Md. 2023) (quoting *Twombly*, 550 U.S. at 555).
[69] *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) (quoting 5 U.S.C. § 702).
[70] 5 U.S.C. § 704.
[71] *City of New York*, 913 F.3d at 431 (quoting 5 U.S.C. § 551(13)).

Government of the United States[.]"[72] Because Plaintiffs are not federal agencies and cannot take final agency actions subject to judicial review, the APA provides no cause of action against them.[73]

Nor does the Counterclaim identify any final agency action—the requirement to trigger an APA cause of action. "The term 'action' as used in the APA is a term of art that does not include all conduct" by the government.[74] Agency actions are subject to judicial review under the APA only if they are "final" agency actions.[75] The Supreme Court has established two conditions that an agency action must satisfy to be considered final. "First, the action must mark the consummation of the agency's decisionmaking process"—"it must not be of a merely tentative or interlocutory nature."[76] Regarding this first requirement, courts have advised that "[c]onsummation of a process does not occur where the process allows for additional events that can alter preliminary decisions."[77] "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."[78] In determining whether an agency action satisfies this condition, the court should consider "whether the action had a direct impact on the day-to-day business of" the plaintiff.[79] For a decision to constitute a final agency action, it "must have a direct and immediate effect on the party's legal rights."[80]

---

[72] 5 U.S.C. § 701(b)(1), 702.
[73] *See W. State Univ. of S. California v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1133 (C.D. Cal. 2004) ("By its own language, the APA does not extend to an entity that is not a federal agency, such as the ABA.").
[74] *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013).
[75] 5 U.S.C. § 704.
[76] *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (internal citations and quotation marks omitted).
[77] *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 924 (E.D. Va. 2013).
[78] *Bennett*, 520 U.S. at 178 (internal citations and quotations omitted).
[79] *Nat. Res. Def. Council, Inc. v. U.S. EPA*, 16 F.3d 1395, 1407 (4th Cir. 1993).
[80] *Versata Dev. Corp.*, 959 F. Supp. 2d at 925.

13

Count I of the Counterclaim, titled "Vacatur of the Federal Approvals is Arbitrary and Capricious for Failure to Explain Change in Position," is directed entirely at actions taken by the federal government.[81] Count I does not even *mention* Plaintiffs. Because Count I of the Counterclaim has no facts plausibly alleging any liability on the part of Plaintiffs, it should be dismissed.

Likewise, Count III's allegations are directed only at the Federal Defendants' actions in seeking a voluntary remand and vacatur of approvals for the US Wind Project.[82] Again, none of these allegations have anything to do with Plaintiffs. Count III should also be dismissed.

Count II alleges that the federal Defendants' decision to remand and vacate the Project approvals was "motivated by political pressure," and that the agency's remand and vacatur of the Project Approvals is arbitrary and capricious.[83] The sole mention of Plaintiffs in Count II is USW's vague and conclusory allegation that "on information and belief, nonpublic communications by elected officials, including the President of the United States, the President's political appointees, members of Congress, and opponents of offshore wind including [Plaintiffs] result[ed] in directives to the Federal Defendants to terminate offshore wind and other renewable energy projects."[84]

These allegations against Plaintiffs are too vague and nebulous to support a claim and fail to meet the pleading requirements of Federal Rule of Civil Procedure 8, which requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and mandates that allegations be "simple, concise, and direct."[85] The Supreme Court in

---

[81] US Wind Counterclaim at p. 56, ECF No. 77 (Sept. 3, 2025).
[82] US Wind Counterclaim at p. 58-59, ECF No. 77 (Sept. 3, 2025).
[83] US Wind Counterclaim ¶ 67, ECF No. 77 (Sept. 3, 2025).
[84] US Wind Counterclaim ¶ 69, ECF No. 77 (Sept. 3, 2025).
[85] Fed. R. Civ. P. 8.

*Ashcroft v. Iqbal*[86] and *Bell Atlantic Corp. v. Twombly*[87] held that a complaint must contain sufficient factual matter to state a claim that is plausible on its face. Allegations that merely recite the elements of a cause of action or rely on conclusory statements do not satisfy this standard. Courts have repeatedly dismissed claims that rely on vague or speculative assertions. For example, in *Dickson v. Microsoft Corp.*,[88] the Fourth Circuit affirmed dismissal of claims in an antitrust complaint because the allegations were vague and conclusory.

That USW prefaces its allegations against Plaintiffs with "upon information and belief" does not save these threadbare allegations from dismissal. In *Kashdan v. George Mason University*,[89] the Fourth Circuit held that simply using "upon information and belief" did not meet the plausibility standard under Rule 12(b)(6), stating that while "a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory."[90] And in *Harman v. Unisys Corp.*,[91] the Fourth Circuit held that using the phrase "upon information and belief" was insufficient to defeat a 12(b)(6) motion because those allegations were conclusory.

Additionally, in the absence of such supporting facts, allegations based on "information and belief" are conclusory and insufficient to withstand a motion to dismiss under Rule 12(b)(6). The allegations against Plaintiffs in Count II include no specific factual information or show that the relevant facts are exclusively within USW's control. Without this support, the claims cannot meet the pleading requirements.

[86] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[87] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[88] *Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002).
[89] *Kashdan v. George Mason Univ.*, 70 F.4th 694 (4th Cir. 2023).
[90] *Id.* at 701-702.
[91] *Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009).

The allegations against Plaintiffs, as described, are insufficient under Rule 8 and Rule 12(b)(6) because they rely on conclusory statements and lack the factual specificity required to state a plausible claim and should be dismissed.

**B.    The Counterclaim fails to state a cause of action under the OCSLA Citizens' Suit Provision (Count IV).**

Count IV should be dismissed for failure to state a claim because USW alleges no violation of OCSLA by any Plaintiff and seeks no relief that could be obtained from them under OCSLA. Count IV asserts that the Federal Defendants' decision to vacate the Project's approvals was inconsistent with OCSLA's policy and leasing provisions.[92] But nothing in Count IV identifies any act or omission by Plaintiffs that could constitute a violation of OCSLA or its regulations.

Nor does the Counterclaim allege that Plaintiffs hold or administer any lease, permit, or authority under OCSLA. The only regulations cited, 30 C.F.R. §§ 585.415, 285.417, and 585.422, concern the Secretary's power to suspend or cancel leases.[93] Those regulations impose no obligations on Plaintiffs—or any private citizen, business entity, or local government—and USW's Counterclaim makes no allegation that Plaintiffs violated them.

Because Count IV makes no allegation that Plaintiffs violated OCSLA and requests no relief that could be obtained against them under OCSLA, it fails to state a claim upon which relief can be granted and must be dismissed as to Plaintiffs.

---

[92] US Wind Counterclaim at ¶ 81-83, ECF No. 77 (Sept. 3, 2025).
[93] US Wind Counterclaim at ¶ 83, ECF No. 77 (Sept. 3, 2025).

**C.     The Counterclaim fails to state a cause of action against Plaintiffs under the Fifth Amendment (Count V).**

Count V should be dismissed because it alleges no constitutional violation by Plaintiffs cognizable under the Fifth Amendment. The Due Process Clause of the Fifth Amendment by its terms applies only to actions by the federal government: "No person . . . shall be deprived of life, liberty, or property, without due process of law. . . ."[94] The Due Process Clause constrains actions taken by the federal government against individual citizens, not actions by individual citizens.[95] Because Plaintiffs are neither federal actors nor agents of the federal government, USW cannot state a due process claim against them.

To establish a protected property interest under the Due Process Clause, a party must demonstrate a legitimate claim of entitlement or a justifiable expectation in the approval of a building or development plan.[96] Federal permits and approvals for activities on the Outer Continental Shelf (OCS) are at most a conditional and revocable benefit or approval subject to ongoing federal oversight.[97] There is no vested property right to construct on the OCS because the Government, through the Bureau of Ocean Energy Management (BOEM), retains discretion to decide whether to approve permits, and ultimately whether to revise those permits, revoke

---

[94] U.S. Const. amend. V.

[95] *See White v. City of Greensboro*, 532 F. Supp. 3d 277, 322 (M.D.N.C. 2021) ("Due process claims under the Fifth Amendment apply to federal actors, whereas due process claims under the Fourteenth Amendment apply to state actors."); *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 808 (D. Md. 2001) (granting summary judgment because the Fifth Amendment does not apply absent federal involvement); *Fenner v. Bruce Manor, Inc.*, 409 F. Supp. 1332, 1343 (D. Md. 1976) (Fifth Amendment does not apply to private parties).

[96] *See Pratt Land & Dev., LLC v. City of Chattanooga*, 581 F. Supp. 3d 962, 993 (E.D. Tenn. 2022).

[97] *See Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992) (a cognizable property interest in a permit or approval exists "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured."); *see generally 3883 Connecticut LLC v. D.C.*, 191 F. Supp. 2d 90, 93–94 (D.D.C. 2002).

17

those permits, or remand those permits.[98] The governing statutes—OCSLA, NEPA, ESA, MMPA, and NHPA—provide procedures for agency review and public participation, but they do not confer a vested right in permits or approvals once issued. Indeed, OCSLA expressly authorizes BOEM to suspend or cancel operations in specified circumstances.[99] At bottom, the Counterclaim alleges only that USW's due process rights would be violated if agency approvals were vacated, not that it holds any constitutionally protected property interest. These allegations fail to state a cognizable due process claim.

Count V also fails because where the APA provides an adequate remedy, a separate constitutional cause of action is unavailable.[100] The APA already incorporates procedural due process requirements of notice, comment, and reasoned decisionmaking, and authorizes courts to set aside agency actions that fail to afford a party procedural protection.[101] A parallel

---

[98] *See generally Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987)); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[99] *See* 43 U.S.C. § 1334(a)(1) (authorizing lease suspension or prohibition of operation if there is a threat of serious, irreparable, or immediate harm to damage to life, property, mineral deposits, or the marine, coastal or human environment); 43 U.S.C. § 1334(a)(2) (authorizes lease cancellation if continued activity would likely cause serious harm or damage to life, property, national security, or the environment, and if the advantage of cancellation outweigh those of continuing the lease); 30 C.F.R. § 556.1102 (authorizes lease cancellation if the lessee fails to comply with OCSLA).

[100] *See generally Sylvia Development Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 829 n.7 (4th Cir. 1995) ("[T]o conclude that every agency decision reversed as 'arbitrary and capricious' under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine. As the courts have consistently recognized, the inquiry into 'arbitrariness' under the Due Process Clause is completely distinct from and far narrower than the inquiry into 'arbitrariness' under state or federal administrative law."); *Syngenta Crop Protection, Inc. v. EPA*, 444 F. Supp. 2d 434, 447–448 (M.D.N.C. 2006) (rejecting substantive due process claim that merely "restat[ed] [plaintiff's] claims of improper agency action utilizing constitutional due process terminology," and noting that "process capable of curing any deficiencies in the EPA's actions is available within the procedures afforded by FIFRA, the APA, and this Court").

[101] *See* 5 U.S.C. § 533; *see generally E.B. v. U.S. Dep't of State*, 583 F. Supp. 3d 58 (D.D.C. 2022).

constitutional claim would add nothing beyond the APA and would conflict with the statute's role as the primary vehicle for reviewing agency action.

**D.** **The Counterclaim fails to state a cause of action to validate the Government's permits and approvals (Counts VI, VII, VIII, IX, and X).**

Counts IV through X also fail to state a cause of action against Plaintiffs. Each count—in mirror-like fashion—seeks a judicial declaration that federal agencies acted lawfully in approving the Project's permits and authorizations under OCSLA, NEPA, ESA, MMPA, and NHPA. These counts do not identify any action by Plaintiffs, nor could they, that could give rise to any claim against Plaintiffs under these statutes.

Nor do these statutes provide a cause of action for private parties to seek judicial "validation" of federal agency action. NEPA and NHPA are purely procedural statutes that may be enforced, if at all, only through the Administrative Procedure Act.[102] The ESA and MMPA authorize citizens' suits in limited circumstances, while all other claims arise under the APA.[103] None of these statutes grant a private right to bring a claim for declaratory relief that agency action was lawful.

---

[102] *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999) ("Since neither FAHA nor NEPA itself provides a private right of action, all of these claims lie under the Administrative Procedure Act."); *Nat'l Trust for Hist. Pres. v. Blanck*, 938 F. Supp. 908, 915 (D.D.C. 1996) ("Congress did not create or intend to create an independent private right of action against the Federal Government under . . . the NHPA.").

[103] *See Conservation Council for Hawaii v. Nat'l Marine Fisheries Serv.*, 97 F. Supp. 3d 1210, 1218 (D. Haw. 2015) ("The APA is the vehicle through which challenges to agency action as violative of the MMPA, ESA, and NEPA are brought to court." (citing *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1036 (9th Cir. 2007); *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005))); *see Bennett v. Spear*, 520 U.S. 154, 173–174 (1997) (APA remains available for ESA claims that challenge the implementation of the ESA); *see* e.g., *Appalachian Voices v. United States Dep't of Interior*, 25 F.4th 259, 268 (4th Cir. 2022) (applying APA standard of review to ESA claims).

By merely restating USW's disagreement with the underlying lawsuit challenging the Project's federal approvals, these counts are superfluous and add nothing beyond the denials and affirmative defenses already set forth in USW's Answer to Plaintiffs' Amended Complaint.[104] For example, in *Chevron U.S.A., Inc. v. Apex Oil*,[105] the District of Maryland dismissed various counts for declaratory relief because those requests were addressed in the other counts of the complaint and the court held that "'[w]hen declaratory relief would be duplicative of claims already alleged, dismissal is warranted.'"[106] The counts also serve no independent function as causes of action: Counts VI through X identify no statutory or constitutional duty owed by Plaintiffs. And USW cites no authority holding that any federal statute authorizes a private claim to "validate" agency action. Therefore, Counts VI through X should be dismissed for failure to state a claim.

**Conclusion**

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court dismiss USW's Counterclaim, in its entirety, as against Plaintiffs.

---

[104] *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824–825 (D. Md. 2015) (dismissing a request for declaratory relief that was duplicative of other claims); *Freedom Servs., Inc. v. Freedom Servs., LLC*, No. CV MJM-23-1625, 2024 WL 3089663, at *9–10 (D. Md. June 21, 2024) ("Courts in this district have dismissed counterclaims that duplicate claims or defenses otherwise pleaded in the action.").

[105] *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807 (D. Md. 2015).

[106] *Id.* at 824 (quoting *Sharma v. OneWest Bank, FSB*, No. CIV.A. DKC 11-0834, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011)).

Respectfully submitted,

/s/ Bruce F. Bright
Bruce F. Bright (Bar No. 27236)
6200 Coastal Hwy., Suite 200
Ocean City, Maryland 21842
Tel: 410-723-1400
Fax: 410-723-1861
bbright@ajgalaw.com

/s/ Nancie G. Marzulla
Nancie G. Marzulla (pro hac vice)
Marzulla Law, LLC
1150 Connecticut Ave., NW
Suite 1050
Washington, D.C. 20036
(202) 822-6760
nancie@marzulla.com

/s/ Roger J. Marzulla
Roger J. Marzulla (pro hac vice)
Marzulla Law, LLC
1150 Connecticut Ave., NW
Suite 1050
Washington, D.C. 20036
(202) 822-6760
roger@marzulla.com

Dated: September 24, 2025

Counsel for Plaintiffs

21