IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **MAYOR AND CITY COUNCIL** **OF OCEAN CITY MARYLAND**, *et al.* Plaintiffs, v. **UNITED STATES DEPARTMENT** **OF THE INTERIOR,** *et al.* Defendants, and **US WIND, INC.** Defendant-Intervenor. | * * * * * * |

Civil Action No: 1:24-cv-03111-SAG

\* \* \* \* \* \* \* \* \* \* \* \* \*

**BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR US WIND, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS US WIND, INC.'S COUNTERCLAIM**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

III.    STANDARD OF REVIEW ................................................................................4

IV.     ARGUMENT ......................................................................................................5

        A.      Plaintiffs Were Properly Joined as Necessary Parties Under Rule 19 .....................5

        B.      US Wind Has Prudential Standing to Assert Counts VII through X. ......................9

        C.      US Wind Has Adequately Pleaded its APA Claims. ...............................................14

        D.      US Wind Has Adequately Pleaded a Protected Property Interest..........................18

V.      CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3883 Conn. LLC v. D.C.*,
  191 F. Supp. 2d 90 (D.D.C. 2002) ......................................................................20

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*,
  778 F. Supp. 3d 685 (D. Md. 2025), *appeal pending*, No. 25-1411 (4th Cir.) ......................15

*Am. Rivers, Inc. v. NOAA Fisheries*,
  No. CV-04-0061-RE, 2006 WL 1455629 (D. Or. May 23, 2006)..........................................12

*Amadei v. Nielsen*,
  348 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................15

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004) .......................................................................12

*Bank of Am. Corp. v. City of Mia., Fla.*,
  581 U.S. 189 (2017).....................................................................................9

*Barry v. Barchi*,
  443 U.S. 55 (1979).......................................................................................19

*Battle Mountain Band of Te-Moak Tribe of W. Shoshone Indians v. U.S. Bureau
  of Land Mgmt.*,
  302 F. Supp. 3d 1226 (D. Nev. 2018) ................................................................13

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972)....................................................................................18

*Bell v. Burson*,
  402 U.S. 535 (1971)....................................................................................19

*Bennett v. Spear*,
  520 U.S. 154 (1997).........................................................................10, 12, 15, 16

*Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*,
  979 F. Supp. 893 (D.D.C. 1997) .......................................................................10

*Cape Hatteras Access Pres. All. v. Jewell*,
  28 F. Supp. 3d 537 (E.D.N.C. 2014)...................................................................13

*Chamblee v. Espy*,
  100 F.3d 15 (4th Cir. 1996) ...........................................................................15

*Ciba-Geigy Corp. v. EPA*,
    801 F.2d 430 (D.C. Cir. 1986) ........................................................................................15

*City of N.Y. v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019) .............................................................................................7

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004) ....................................................................................13, 14

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987).........................................................................................................10

*Columbia Broad. Sys., Inc. v. United States*,
    316 U.S. 407 (1942).........................................................................................................15

*Dubois v. U.S. Dep't of Agric.*,
    102 F.3d 1273 (1st Cir. 1996) .........................................................................................13

*E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .............................................................................................5

*EEOC v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ...........................................................................................6

*Flaherty v. Bryson*,
    850 F. Supp. 2d 38 (D.D.C. 2012) ..................................................................................14

*Foss v. Nat'l Marine Fisheries Serv.*,
    161 F.3d 584 (9th Cir. 1998) ...........................................................................................19

*Fox Television Stations, Inc. v. FCC*,
    280 F.3d 1027 (D.C. Cir. 2002) ......................................................................................15

*Gardner v. City of Balt. Mayor & City Council*,
    969 F.2d 63 (4th Cir. 1992) .............................................................................................20

*GasPlus, L.L.C. v. U.S. Dep't of the Interior*,
    510 F. Supp. 2d 18 (D.D.C. 2007)..............................................................................10, 12

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ...........................................................................................11

*Greenspon v. Fed. Highway Admin.*,
    488 F. Supp. 1374 (D. Md. 1980) ...................................................................................12

*Guindon v. Pritzker*,
    31 F. Supp. 3d 169 (D.D.C. 2014) ..................................................................................13

*Harman v. Unisys Corp.*,
   356 F. App'x 638 (4th Cir. 2009) ....................................................................8

*Hazardous Waste Treatment Council v. Thomas*,
   885 F.2d 918 (D.C. Cir. 1989) ......................................................................10

*Hillside Prods., Inc. v. Duchane*,
   249 F. Supp. 2d 880 (E.D. Mich. 2003)........................................................20

*Ihnken v. Gardner*,
   927 F. Supp. 2d 227 (D. Md. 2013) ........................................................19, 20

*Kashdan v. George Mason Univ.*,
   70 F.4th 694 (4th Cir. 2023) ...........................................................................8

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*,
   684 F.3d 462 (4th Cir. 2012) .......................................................................5, 6

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ...........................................................................4

*KTK Mining of Va., LLC v. City of Selma, Ala.*,
   984 F. Supp. 2d 1209 (S.D. Ala. 2013).........................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..........................................................................................9

*Louisiana v. Biden*,
   622 F. Supp. 3d 267 (W.D. La. 2022)............................................................17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................14

*Malibu Media, LLC v. Doe*,
   No. PWG-13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ......................8

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*,
   2 F.3d 544 (4th Cir. 1993) ...............................................................................5

*Massachusetts v. Trump*,
   No. 25-11221-WGY, 2025 WL 1836592 (D. Mass. July 3, 2025)............16, 17

*Mayor & City Council of Balt. v. Trump*,
   416 F. Supp. 3d 452 (D. Md. 2019)................................................................12

*Mayor & City Council of Ocean City, Md. v. U.S. Dep't of the Interior*,
   No. SAG-24-3111, 2025 WL 1827963 (D. Md. July 2, 2025)........................10

*McKiver v. Murphy-Brown, LLC,*
    980 F.3d 937 (4th Cir. 2020) ........................................................................5

*MediNatura, Inc. v. Food & Drug Admin.,*
    496 F. Supp. 3d 416 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021) ...........................15

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
    417 F.3d 1272 (D.C. Cir. 2005) ....................................................................12

*New Orleans Home for Incurables, Inc. v. Greenstein,*
    911 F. Supp. 2d 386 (E.D. La. 2012) .............................................................20

*Oceans v. U.S. Dep't of the Interior,*
    No. 1:24-cv-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025) ....................13, 14

*P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston,*
    696 F. Supp. 788 (D.R.I. 1988) ....................................................................19

*Pac. Nw. Generating Co-op. v. Brown,*
    38 F.3d 1058 (9th Cir. 1994) ........................................................................14

*Pavelic & LeFlore v. Marvel Entertainment Group,*
    493 U.S. 120 (1989) ......................................................................................5

*Presley v. City of Charlottesville,*
    464 F.3d 480 (4th Cir. 2006) ..........................................................................4

*Pye v. United States,*
    269 F.3d 459 (4th Cir. 2001) ..................................................................10, 14

*Rhode Island v. Trump,*
    781 F. Supp. 3d 25 (D.R.I. 2025) ..................................................................17

*Richardson v. Town of Eastover,*
    922 F.2d 1152 (4th Cir. 1991) ..................................................................19, 20

*Sierra Club v. Hodel,*
    848 F.2d 1068 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) ........................7

*South Carolina v. United States,*
    912 F.3d 720 (4th Cir. 2019) ..........................................................................4

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
    301 F. Supp. 3d 50 (D.D.C. 2018) ................................................................13

*Tenn. Valley Auth. v. Hill,*
    437 U.S. 153 (1978) ....................................................................................14

*Town of Stratford, Conn. v. FAA,*
    285 F.3d 84 (D.C. Cir. 2002) ........................................................................13

*Trinity Broad. of Fla., Inc. v. FCC,*
    211 F.3d 618 (D.C. Cir. 2000) ......................................................................19

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) .......................................................................................15

*Venetian Casino Resort, L.L.C. v. EEOC,*
    530 F.3d 925 (D.C. Cir. 2008) ................................................................15, 17

*Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*,
    875 F.2d 453 (5th Cir. 1989) ...........................................................................7

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
    714 F.3d 186 (4th Cir. 2013) ...........................................................................7

*W. State Univ. of S. Cal. v. Am. Bar Ass'n,*
    301 F. Supp. 2d 1129 (C.D. Cal. 2004) ..........................................................7

*Washington Legal Clinic for the Homeless v. Barry*,
    107 F.3d 32 (D.C. Cir. 1997) ........................................................................20

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) .......................................................................................14

**Statutes**

5 U.S.C. § 551(13) ..................................................................................................14

5 U.S.C. § 701(b)(2) ...............................................................................................14

5 U.S.C. § 702 ....................................................................................................7, 18

43 U.S.C. § 1334(a)(1) ...........................................................................................19

43 U.S.C. § 1334(a)(2) ...........................................................................................19

**Other Authorities**

30 C.F.R. § 556.1102 ..............................................................................................19

50 C.F.R. § 217.344 ................................................................................................11

Fed. R. Civ. P. 12(b)(1) ............................................................................................4

Fed. R. Civ. P. 12(b)(6) ............................................................................................4

Fed. R. Civ. P. 19.................................................................................................1, 5, 6, 7

Fed. R. Civ. P. 19(a) ...................................................................................... *passim*

Fed. R. Civ. P. 19(a)(1) .................................................................................. *passim*

Fed. R. Civ. P. 20.................................................................................................................6

Fed. R. Civ. P. 20(a)(2)........................................................................................................6

## I.    INTRODUCTION

Less than one year after approving the Construction and Operations Plan ("COP") submitted by Defendant-Intervenor US Wind, Inc. ("US Wind") for the Maryland Offshore Wind Project (the "Project"), the Federal Defendants have made a final decision to revoke that approval and terminate the Project. The Federal Defendants' decision is illegal. It contravenes OCSLA through abrogation of US Wind's federal lease and also violates statutory protections against lease suspension, the Due Process Clause and the Administrative Procedure Act ("APA"). US Wind accordingly has asserted a Cross Claim against the Federal Defendants to block their illegal action. *See* ECF No. 77 at 47-65. Because Plaintiffs claim interests in the subject matter of the Cross Claim, US Wind joined them to the Cross Claim under Fed. R. Civ. P. 19(a)(1), by including with the Cross Claim a Counterclaim that names Plaintiffs as "Counterclaim Defendants." *See* ECF No. 77, Cross Claim at 48, ¶¶ 4, 5.

Plaintiffs contend that the Counterclaim should be dismissed because US Wind challenges actions taken by the Federal Defendants, not by Plaintiffs. But Rule 19 does not limit joinder to parties against whom a direct action would otherwise lie. Rather, it requires only that the joined party have "an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . .leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). Plaintiffs do not and cannot dispute that those requirements are satisfied here.

Plaintiffs' other principal contention, that US Wind falls outside the zone of interests of the statutes the Cross Claim seeks to enforce, is baseless. US Wind falls within the statutes' zone of interests because the statutes directly regulate its conduct, and because the environmental mitigation measures that US Wind already has undertaken and has committed to undertake pursuant to these statutes give it a concrete interest in achieving the applicable statutory purposes.

1

Plaintiffs' related arguments—that US Wind failed to plead final agency action or protected property interests—also fail. The Federal Defendants' final decision to revoke US Wind's COP approval is final agency action, and US Wind has a protected interest in its lease and COP approval.

## II.    BACKGROUND

About a decade ago, the Bureau of Ocean Energy Management ("BOEM") held an auction for two lease areas off the coast of Maryland. Cross Claim and Counterclaim, ECF No. 77, Cross Claim at 53, ¶ 46. US Wind won both leases and secured the exclusive right to propose an offshore wind farm within those leases through the submission of a COP to BOEM. *Id.* The leases were later merged to form one lease. *Id.*

In 2022, BOEM started the National Environmental Policy Act ("NEPA") review process for the Project. *Id.* at 53, ¶ 47. The next year, BOEM published its draft Environmental Impact Statement ("EIS") pursuant to NEPA. *Id.* In 2024, the National Marine Fisheries Service ("NMFS") issued a Biological Opinion ("BiOp") for the Project pursuant to the Endangered Species Act ("ESA"). *Id.* at 54, ¶ 48. Later that year, BOEM published the final EIS for the Project in compliance with NEPA and consistent with the APA. *Id.* at 54, ¶ 49. BOEM issued a Record of Decision ("ROD") "documenting its adoption of the final EIS pursuant to NEPA, its decision to approve the COP, and its findings as to other applicable statutory requirements." *Id.* at 54, ¶ 50. In December 2024, BOEM formally approved the Project's COP in accordance with the Outer Continental Shelf Lands Act ("OCSLA"). *Id.* at 54, ¶ 51. Under BOEM's COP approval, US Wind is required to follow dozens of pages "of detailed terms and conditions aimed at avoiding, minimizing, and mitigating project impacts." *Id.*

In fall 2024, NMFS promulgated an Incidental Take Regulation and Letter of Authorization in compliance with the MMPA and APA "setting out a wide range of conditions, mitigation measures, and monitoring and reporting requirements for US Wind's construction activities." *Id.*

at 55, ¶ 52. Finaly, in compliance with the National Historic Preservation Act's ("NHPA") Section 106 consultation process, BOEM identified historic properties, assessed any adverse effects to such properties, consulted with stakeholders, and executed a Memorandum of Agreement with State Historic Preservation Officers to address effects. *Id.* at 55, ¶ 53. BOEM's NHPA findings are in the final EIS. *Id.* The Project received a permitting timetable under FAST-41, which resulted in the Project "receiving all the necessary agency approvals to proceed with construction and operation." *Id.* at 55, ¶¶ 54–55.

In October 2024, Plaintiffs sued the Federal Defendants alleging that they violated OCSLA, NEPA, the MMPA, the ESA, the NHPA and the APA, among other statutes, in issuing the foregoing approvals (the "Federal Approvals"). In November 2025, US Wind moved to intervene to defend the Federal Approvals, ECF No. 14, and in December 2025 the Court granted the motion. ECF No. 24. In January 2025, Plaintiffs filed an Amended Complaint. ECF No. 32. In response to the Federal Defendants' Partial Motion to Dismiss and US Wind's Motion to Dismiss, ECF Nos. 37, 39, the Court dismissed Plaintiffs' standalone APA claim, Migratory Bird Treaty Act claim, and Coastal Zone Management Act claim. ECF No. 68. US Wind then answered the Amended Complaint.  ECF No. 76.

On August 25, 2025, Federal Defendants and Plaintiffs jointly moved for entry of a briefing schedule on the Federal Defendants' planned motion "to vacate BOEM's COP approval" and for "voluntary remand." ECF No. 74 at 1. The briefing schedule motion did not reveal any purported grounds for vacatur or remand, but made clear that the Federal Defendants had reached a final decision to withdraw the COP approval that they had issued less than nine months earlier. Accordingly, on September 3, 2025, US Wind amended its original answer as of right to add a "Cross Claim and Counterclaim" (the "Cross Claim") which alleges that the Federal Defendants'

decision to withdraw the COP approval violates OCSLA, the Due Process Clause and the APA. ECF No. 77, Cross Claim at 46–47. The Cross Claim includes a Counterclaim naming Plaintiffs as "Counterclaim Defendants" in light of their alleged interests in opposing the Federal Approvals. *Id.* at 48, ¶ 4.

On September 12, 2025, the Federal Defendants filed their "Motion for Voluntary Remand with Vacatur" (the "Vacatur Motion"), which notes that "Plaintiffs agree that the Court should remand with vacatur and dismiss their claims without prejudice." ECF No. 81 at 1. In support of the Vacatur Motion, the Federal Defendants disclosed that BOEM had made a final decision that its COP approval committed "error" by "underestimat[ing] impacts to operations by search and rescue helicopters attempting to navigate throughout the project area." *Id.* at 7; *see* ECF No. 81-1 ¶ 14. The Vacatur Motion also asserted that BOEM "misapplied the [OCSLA] § 1337(p)(4) factors in approving the COP" and "initially determined that impacts to commercial fisheries 'may not be sufficiently mitigated[.]" ECF No. 81 at 7–8. The Federal Defendants have informed the Court that they will proceed on the basis of these determinations "regardless of what happens with the" Vacatur Motion. Sept. 18, 2025 Tr. at 5:1–3.

## III.    STANDARD OF REVIEW

A challenge to Article III standing is a question of subject matter jurisdiction that is considered under Federal Rule of Civil Procedure 12(b)(1). *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). In a facial challenge to subject matter jurisdiction, the allegations in the complaint are assumed to be true and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Similarly, a motion to dismiss under Rule 12(b)(6) "test[s] the sufficiency of a complaint." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation omitted). A district court "'must accept as true all of the factual allegations contained in the complaint' and

'draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

## IV.    ARGUMENT

### A.    Plaintiffs Were Properly Joined as Necessary Parties Under Rule 19.

Plaintiffs seek dismissal of US Wind's claims under the APA, OCSLA and the Due Process Clause on the theory that US Wind's Cross Claim challenges the Federal Defendants' actions, not Plaintiffs' actions. ECF No. 83-1 at 1, 11, 16, 17. But that is beside the point. Plaintiffs have been joined to the Cross Claim under the mandatory joinder requirements of Fedederal Rule of Civil Procedure 19(a)(1). *See* ECF No. 77, Cross Claim at 48, ¶ 4. Plaintiffs fall squarely within the scope of those requirements.

"A necessary party should be ordered into the action" when Rule 19 requires it. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020). Rule 19 is applied in accordance with the principle that Federal Courts "give the Federal Rules of Civil Procedure their plain meaning." *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989)); *see also McKiver*, 980 F.3d at 951 (relying on the plain text of Rule 19). Under Rule 19(a), a party "must be joined" if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1). Consistent with this express language, "a plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under

Rule 19." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1076–79 (9th Cir. 2010) (citation omitted).[1]

The Cross Claim pleads that Rule 19(a)'s requirements are satisfied. Specifically, it alleges that Plaintiffs "seek to block development of the Project through their claims asserted in this case under the APA and one or more of the Subject Statutes, as well as through direct and indirect extrajudicial communications with the Federal Defendants." ECF No. 77, Cross Claim at 48, ¶ 4. On that basis, US Wind alleges that "Counterclaim Defendants claim interests relating to the subject of this Cross Claim and are so situated that disposing of the action in their absence may leave US Wind subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the Counterclaim Defendants' asserted interests." *Id.* For purposes of Plaintiffs' motion, these allegations are assumed to be true. *Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 467.

Plaintiffs cannot contest that Rule 19(a)(1)'s express requirements are satisfied. Their Amended Complaint specifically claims "interests" in the COP and other federal approvals that are the subject of the Cross Claim. *See, e.g.*, ECF No. 32 ¶ 92 ("Defendants' actions have deprived Plaintiffs of the procedural protections in NEPA and will irreparably harm Plaintiffs' interests."); *id.* ¶ 170 ("NMFS's decision to authorize the Project's construction and operation … have deprived the Plaintiffs of the substantive protections of the Marine Mammal Protection Act and threaten to irreparably harm the Plaintiffs' interests."). It is obvious that, should the Court adjudicate the Cross Claim against the Federal Defendants in Plaintiffs' absence, Plaintiffs'

---

[1] Notably, while Rule 20 allows permissive joinder of defendants only where "<u>any right to relief is asserted against them</u> jointly, severally, or in the alternative," Fed. R. Civ. P. 20(a)(2) (emphasis added), no such requirement appears in Rule 19(a).

separate pursuit of their challenges to the federal approvals could subject US Wind, as well as the Federal Defendants, to multiple inconsistent obligations.

The court in *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992), applied Rule 19(a) to require joinder in analogous circumstances. The court determined that a county was subject to joinder under Rule 19(a) where an APA claim challenged a decision by the Bureau of Land Management ("BLM") to approve the county's plan to improve a road. *Sierra Club*, 848 F.2d at 1078. The county's absence, the court explained, "would impede [BLM's] ability to defend the boundaries and legal uses of its right-of-way." *Id.* at 1077. The court also reasoned that BLM would "face a substantial risk of inconsistent obligations if the County, unbound by the outcome in this case, sought declaratory or other relief against BLM at variance with the orders in this case." *Id.* [2]

Here, similarly, Plaintiffs' absence from resolution of the Cross Claim could impede US Wind's ability to defend its lease rights and subject both it and the Federal Defendants to inconsistent obligations. If Plaintiffs are not party to the Cross Claim, they could attempt to withdraw their claims challenging the federal approvals in light of the Federal Defendants' reversal (just as the Vacatur Motion reports Plaintiffs intend to do) and pursue the same claims in the future without regard to how the Court adjudicates the Cross Claim. *See Sierra Club*, 848 F.2d at 1077.

---

[2] Research reveals no Fourth Circuit precedent addressing application of Rule 19 in these circumstances. The Fourth Circuit and other APA cases cited by Plaintiffs do not address Rule 19. *See City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019); *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); *W. State Univ. of S. Cal. v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1133 (C.D. Cal. 2004). (quoting 5 U.S.C. § 702). A Fifth Circuit decision declining to follow *Hodel, see Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989), is inconsistent with the Fourth Circuit requirement that the Federal Rules be applied in accordance with their plain meaning.

Should the Court rule that the Federal Defendants' decision to withdraw the COP approval was illegal, Plaintiffs could simply refile their current claims and attempt to secure a different result. The new lawsuit would present precisely the risk of multiple inconsistent obligations—for both US Wind and the Federal Defendants—that Rule 19(a) is intended to avoid.

Plaintiffs appear to argue that US Wind's use of the phrase "on information and belief" in the Cross Claim renders allegations about Plaintiffs "conclusory." ECF No. 83-1 at 12, 14–15. Not so. The first sentence of paragraph 4 unconditionally sets forth the specific factual basis for the allegations in the rest of the paragraph—Plaintiffs' efforts "to block development of the Project through their claims asserted in this case . . . as well as through direct and indirect extrajudicial communications with the Federal Defendants." ECF No. 77, Cross Claim at 48, ¶ 4. As Plaintiff's own authority recognizes, use of "information and belief" is appropriate when coupled with fact-specific allegations. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701–02 (4th Cir. 2023); *Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009); *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'") (citation omitted).

In any event, US Wind used the "information and belief" qualifier because, when it filed the Cross Claim on September 3, 2025, the Federal Defendants had not yet filed the Vacatur Motion and had not disclosed any specific basis for that relief. The Vacatur Motion, filed September 12, 2025, purported to justify vacatur and remand based on only a single purported "error": "an error in [BOEM's] prior conclusion that the COP satisfied § 1337(p)(4)(I) even though BOEM underestimated impacts to operations by search and rescue helicopters attempting to navigate

throughout the project area." ECF No. 81 at 7. The Vacatur Motion, which disclosed that "Plaintiffs agree that the Court should remand with vacatur and dismiss their claims without prejudice," *id.* at 1, conveniently tied this alleged error to new allegations in Plaintiffs' January 6, 2025, Amended Complaint, *id.* at 4, where Plaintiffs for the first time alleged "impacts on search and rescue operations," ECF No. 32 ¶ 75—a topic on which none of the Plaintiffs alleges any personal interest whatsoever. *See id.* ¶¶ 1–37. As it is now more than fair to infer that Plaintiffs and the Federal Defendants are collaborating to undermine the COP approval, US Wind would have no problem removing the "information and belief" qualifiers should the Court deem that necessary.

In sum, Plaintiffs are necessary parties under Rule 19(a)(1) and thus "must be joined" to the Cross Claim, regardless of whether US Wind has any direct claims against them.

### B.     US Wind Has Prudential Standing to Assert Counts VII through X.

Plaintiffs, confusing Article III standing with prudential standing,[3] wrongly assert as to Counts VII through X that US Wind does not fall within the zone of interests of NEPA, the ESA, the MMPA or the NHPA. As a regulated entity—and as a company devoting extraordinary resources to environmental protection and compliance with these statutes—US Wind falls within these statutes' zones of interest.

Prudential standing concerns "whether the statute grants the plaintiff the cause of action that he asserts," so courts "presume that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" *Bank of Am. Corp. v. City of Mia., Fla.*, 581 U.S. 189, 196–97 (2017) (citation omitted). The prudential

---

[3] ECF No. 83-1 at 6. Contrary to Plaintiffs' view, prudential standing and the zone-of-interests test go to the merits, not to Article III subject matter jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) ("[W]e have adverted to a 'prudential' branch of standing, a doctrine not derived from Article III . . . ").

standing test "is not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). Courts "first, determin[e] which interests the statute at issue arguably protects and second, determin[e] whether the agency action affects those interests." *Pye v. United States*, 269 F.3d 459, 470 (4th Cir. 2001); *Mayor & City Council of Ocean City, Md. v. U.S. Dep't of the Interior*, No. SAG-24-3111, 2025 WL 1827963, at *5 (D. Md. July 2, 2025). US Wind easily satisfies this standard.

It is elemental that "the zone-of-interest test . . . covers entities whose interests Congress intended to regulate." *GasPlus, L.L.C. v. U.S. Dep't of the Interior*, 510 F. Supp. 2d 18, 26 (D.D.C. 2007); *see also Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 979 F. Supp. 893, 900 (D.D.C. 1997) ("[A] party can meet the prudential standing test by qualifying either as a regulated interest or a protected interest."); *Bennett v. Spear*, 520 U.S. 154, 175–76 (1997) (prudential standing for APA claim existed where petitioners were two irrigation districts and operators of ranches within the districts). This is because "those who are regulated 'have the incentive to guard against any administrative attempt to impose a greater burden than that contemplated by Congress,' just as environmental groups may serve as watchdogs to assure that the agency fulfills its responsibilities under the law." *Babbitt*, 979 F. Supp. at 900 (quoting *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922 (D.C. Cir. 1989)). The only requirement is that the party must be "regulated by the particular regulatory action being challenged." *Id.* [4]

Here, as Plaintiffs' Amended Complaint recognizes, US Wind in its development of the Project is regulated by NEPA, ESA, MMPA, and NHPA. *See* ECF No. 32 at 66–102, 115, Third Cause of Action (NEPA); Fourth Cause of Action (ESA); Fifth Cause of Action (MMPA); Eighth

---

[4] The more stringent test Plaintiffs' cite applies only when the "<u>plaintiff is not itself the subject of the contested regulatory action</u>[.]" *Clarke*, 479 U.S. at 399 (emphasis added).

Cause of Action (NHPA). That is evident not only from US Wind's obligation to seek and obtain

federal agency approvals under each of these statutes as a condition of obtaining COP approval,

*see* ECF No. 77, Cross Claim ¶¶ 47–53, 95, 96, 99, 100, 103, 104, 107, 108, but also from the

wide range of measures US Wind has undertaken and will continue to undertake pursuant to these

statutes—and at Federal Defendants' direction—to protect environmental, wildlife, and historic

resources. Those measures were expressly imposed pursuant to NEPA,[5] the ESA,[6] the MMPA[7] and

the NHPA.[8][9] The Federal Defendants' and Plaintiffs' attempt to use the same statutes to void the

---

[5] *See, e.g.*, BOEM, Maryland Offshore Wind Final Environmental Impact Statement, Vol. I, Appx. G, https://www.boem.gov/sites/default/files/documents/Maryland%20Offshore%20Wind%20Final%20EIS_AppG_Mitigation_Monitoring_2024_30Aug2024.pdf (listing hundreds of measures US Wind committed to implementing to avoid, reduce, mitigate, or monitor impacts on environmental resources); ROD at 31, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ROD-OCS-A-0490.pdf (adopting mitigation measures from FEIS).

[6] NMFS, Endangered Species Act Section 7 Consultation Biological Opinion for Construction, Operation, Maintenance, and Decommissioning of the Maryland Wind Offshore Energy Project (Lease OCS-A 0490) 410-437 (June 18, 2024) https://www.boem.gov/sites/default/files/documents/renewable-energy/Maryland%20Wind%20NMFS%20Biological%20Opinion.pdf (detailing enforceable mitigation measures and requirements to minimize impacts to listed species including development and implementation of sound field verification plan and passive acoustic monitoring).

[7] 50 C.F.R. § 217.344 (specifying mitigation measures for the Project to protect marine mammals including startup and shutdown procedures, using specified high-resolution geophysical acoustic sources, and vessel strike avoidance); NMFS, Maryland Offshore Wind Project Letter of Authorization § 3 (Nov. 26, 2024), https://www.fisheries.noaa.gov/s3/2024-12/MDWind-2024LOA-LOA-OPR1.pdf.

[8] FEIS, Vol. I, Appx J-1, Atts. 3 and 4, https://www.boem.gov/sites/default/files/documents/Maryland%20Offshore%20Wind%20Final%20EIS_AppJ%20Attachment%20J-1%20MOA%20Att%201-6_0.pdf (requiring avoidance measures, archaeological monitoring, and reduction of visual effects to mitigate impacts to cultural resources); BOEM, Conditions of COP Approval Lease Number OCS-A 0490 § 7, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/03_6028_Conditions%20of%20COP%20Approval%20OCS-A%200490.pdf.

[9] The documents referenced in footnotes 6–9 may be considered on Plaintiffs' Motion because they represent the Federal Approvals referenced in the Cross Claim as well as Plaintiffs' Amended Complaint, and thus are "integral" to the pleadings. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d

Federal Approvals simply confirms that US Wind is regulated by these statutes. *See e.g.*, *GasPlus, L.L.C.*, 510 F. Supp. 2d at 26 ("GasPlus's interests were clearly regulated by the BIA's decision to void the Management Agreement.").

Because these statutes directly regulate US Wind, Plaintiffs' assertion that US Wind's interests are commercial or financial is irrelevant. In any event, even apart from US Wind's status as a regulated entity, the alignment between US Wind's commercial objectives and the objectives of the environmental statutes provides an independent basis for prudential standing. As for NEPA, "commercial entities are not *per se* excluded from NEPA's zone-of-interest." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1287 (D.C. Cir. 2005). Rather, "'[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test,' . . . '[c]ongruence of interests, rather than identity of interests, is the benchmark.'" *Id.* (quoting *Amgen, Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004)); *Greenspon v. Fed. Highway Admin.*, 488 F. Supp. 1374, 1377 (D. Md. 1980) ("[A] party is not 'disqualif(ied)' from asserting a legal claim under NEPA because the 'impetus' behind the NEPA claim may be economic.") (citation omitted).

Similarly, under ESA, although its zone of interest encompasses "species preservation," another goal "is to avoid needless economic dislocation produced by agency officials zealously but unintelligently pursuing their environmental objectives." *Bennett*, 520 U.S. at 176–77. Indeed "economic consequences are an explicit concern of the ESA." *Id.* at 177; *Am. Rivers, Inc. v. NOAA Fisheries*, No. CV-04-0061-RE, 2006 WL 1455629, at *14 (D. Or. May 23, 2006) ("For APA claims, the zone of interests protected by the ESA are sufficiently broad to include adverse economic consequences flowing from the enforcement of environmental restrictions."). Plaintiffs'

---

159, 166 (4th Cir. 2016); *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 482 (D. Md. 2019).

assertion, with no caselaw cited, that "the breadth of [the ESA] does not stretch to cover developers" with financial interests, ECF No. 83-1 at 10, is baseless.

For the MMPA, its "'zone of interests' extends to any party with 'conservationist, aesthetic, recreational, or economic interests' in marine mammal protection, 'who would be adversely affected or aggrieved by the failure of a party to procure a permit that is required under the MMPA.'" *Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-141-RCL, 2025 WL 973540, at *10 (D.D.C. Apr. 1, 2025) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1203 (9th Cir. 2004)). Here, any attempt to withdraw or revoke US Wind's LOA and ITR would not only impair US Wind's commercial objectives for the Project but also undermine the wide variety of mitigation measures it already has implemented to ensure adequate protection for marine mammals in the Project area.

Economic interests also are within the scope of NHPA protection. In *Battle Mountain Band of Te-Moak Tribe of W. Shoshone Indians v. U.S. Bureau of Land Mgmt.*, 302 F. Supp. 3d 1226, 1227 (D. Nev. 2018), an intervenor was the owner of mining rights on certain land. The intervenor received a permit from the federal government to convert certain land into a functional mining operation. *Id.* at 1231. The plaintiffs sued alleging that the government violated the NHPA. *Id.* at 1232. The court held the intervenor had prudential standing to pursue its cross claim against the government "because its interests, while partially economic in nature . . . fall within the underlying purpose of the NHPA." *Id.* at 1240. The court explained, in part, that the mining project being "approved under the requirements of NHPA, is part of that purpose." *Id.*[10]

---

[10] Plaintiffs' zone-of-interest cases are inapposite because, among other things, none of them involved claims brought by a regulated entity. *See Town of Stratford, Conn. v. FAA*, 285 F.3d 84 (D.C. Cir. 2002); *Cape Hatteras Access Pres. All. v. Jewell*, 28 F. Supp. 3d 537, 540 (E.D.N.C. 2014); *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1277–78 (1st Cir. 1996); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 61 (D.D.C. 2018); *Guindon v.*

Thus, by virtue of both its status as a directly regulated entity, and the alignment of its commercial objectives with the statutory environmental objectives, US Wind falls within the zone of interests of NEPA, the ESA, the MMPA and the NHPA. Insofar as the Court determines that the existing Cross Claim does not plead sufficient facts in this regard, US Wind seeks leave to amend to correct any such deficiency.

### C.    US Wind Has Adequately Pleaded its APA Claims.

Plaintiffs' argument as to Counts I, II and III of the Cross Claim, that US Wind does not "identify any final agency action" under the APA, ECF No. 83-1 at 13, is not correct. Plaintiffs appear to predicate this argument on the theory that US Wind's allegations are "directed entirely at actions taken by the federal government," not by Plaintiffs. *Id.* at 14. If so, the argument fails for the reasons discussed above regarding Rule 19(a). The argument also fails to the extent Plaintiffs contend that the Federal Defendants have not themselves taken final agency action. The Cross Claim and the record in this case show that, as alleged in the Cross Claim, the Federal Defendants have made a final decision to withdraw the COP approval and thereby terminate the Project.  ECF No. 77, Cross Claim at 55, ¶ 55.

"'Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13); *see id.* § 701(b)(2). The definition is read "comprehensively" to cover "every manner in which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001), including an

---

*Pritzker*, 31 F. Supp. 3d 169, 187 (D.D.C. 2014); *Flaherty v. Bryson*, 850 F. Supp. 2d 38, 48 (D.D.C. 2012); *Pye v. United States*, 269 F.3d 459 (4th Cir. 2001); *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004); *Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025); *Pac. Nw. Generating Co-op. v. Brown*, 38 F.3d 1058 (9th Cir. 1994); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978).

"official policy," *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018), even if the policy's details are "unclear," *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008). Agency action is "final" when (1) it "mark[s] the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (citation omitted).

Courts take a "pragmatic" and flexible approach to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (citation omitted). "The ultimate test . . . is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened" by decisions carrying "legal consequences." *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 425 (1942). Thus, final agency action can "result[] from a series of agency pronouncements rather than a single edict." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 n.7 (D.C. Cir. 1986). And "a plaintiff can satisfy the finality requirement without offering evidence of a formal or official statement regarding the agency's position," so long as the decision still has a "practical effect . . . sufficient to trigger judicial review." *Amadei*, 348 F. Supp. 3d at 165–66 (citation omitted); *accord Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*, 778 F. Supp. 3d 685, 748 (D. Md. 2025) (collecting cases), *appeal pending*, No. 25-1411 (4th Cir.). Just as a decision to issue—or not to issue—a particular permit, rule, or determination is final agency action, *see, e.g.*, *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1037 (D.C. Cir. 2002), so too is a decision to suspend, rescind, or withdraw one. *See e.g.*, *Chamblee v. Espy*, 100 F.3d 15, 17 (4th Cir. 1996); *MediNatura, Inc. v. Food & Drug Admin.*, 496 F. Supp. 3d 416, 444 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021). A decision "indefinite[ly] paus[ing]" a particular project is also "final agency action[] that cannot be exempted from judicial review merely by being

characterized as intermediate." *Massachusetts v. Trump*, No. 25-11221-WGY, 2025 WL 1836592, at *10 (D. Mass. July 3, 2025) (collecting cases).

The Vacatur Motion makes clear that Federal Defendants have taken action with respect to the Project, and that the action is final. According to the Motion and the accompanying declaration, Defendants already have made a final determination that (1) section 8(p)(4)(I) requires that a COP must prevent interference with reasonable ocean uses, except for "*de minimis* or reasonable" interference; (2) the Project COP rests on a "faulty" conclusion that the Project's interference with search-and-rescue operations or commercial fishing is only "minor"; and thus (3) the COP does not "compl[y] with [OCSLA] section 8(p)(4)(I)." ECF No. 81-1 ¶¶ 11–15; *see* ECF No. 81 at 7– 8; M-37059 (Dec. 14, 2020) (reinstated). According to the Federal Defendants, the consequence of these determinations is crystal clear: the prior COP approval has been withdrawn. In its place, "BOEM will issue a new decision with new analysis that may significantly impact, or outright moot, Plaintiffs' claims." ECF No. 81 at 8 (emphasis added).

The Vacatur Motion shows that the Federal Defendants decision to withdraw the prior COP approval marked "the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177–78. The Motion and accompanying declaration explain that the decision was the outcome of the "re-evaluation for this Project" pursuant to the "Presidential Memorandum" issued by President Trump "on his first day in office" entitled "*Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*" (the "Presidential Memorandum"). ECF 81 at 3–4 (citing ECF No. 81-1 ¶¶ 8, 11). Specifically, the determinations "[i]mplemented the directive" in the Presidential Memorandum to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy

leases." ECF No. 81 at 7 (emphasis added; citing Presidential Memorandum § 1); *see* ECF No. 81-1.

The inevitable effect of the determinations is to nullify US Wind's express lease right to conduct activities permitted by the previously approved COP within the lease area. The Federal Defendants' attempt to dismiss this inevitability as "speculative," ECF No. 81 at 9, is disingenuous. If there were any possibility of Federal Defendants reapproving the same COP, they would not have asked the Court to vacate their prior approval. The Federal Defendants' decision is "final" because there is "no doubt" about the ultimate result: the Project will not be allowed to proceed. *Venetian Casino*, 530 F.3d at 929. Even if US Wind were to go along with the charade that the COP might eventually be reapproved in some other form, the inevitable delays in achieving that result would mean an indefinite suspension of US Wind's lease activities, another form of final agency action. *Massachusetts*, 2025 WL 1836592, at *10–11 (finding final agency action based on the Presidential Memorandum's "de facto suspension" of "wind energy development"); *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 43–45 (D.R.I. 2025) (same finding regarding de facto dismantling of federal statutory functions). Allowing the Project to languish in an indefinite "reconsideration" posture is just as final as cancelling it outright. *See, e.g.*, *Louisiana v. Biden*, 622 F. Supp. 3d 267, 291–92 (W.D. La. 2022) (holding "interim postponement" final agency action). US Wind has adequately pleaded that the Federal Defendants' decision to withdraw COP approval is final agency action.

Plaintiffs seek dismissal of US Wind's APA claims in Counts VI through X on the theories that those counts "seek judicial 'validation' of federal agency action," and are "duplicative" of Plaintiffs' own APA claims and of US Wind's defenses to those claims. ECF No. 83-1 at 19-20. Both theories fail. As to the first, judicial review of the Federal Defendants' decision to revoke the

COP approval pursuant to 5 U.S.C. § 702 appropriately includes review of all of the Federal Approvals to confirm that no basis exists for the revocation decision. The Federal Defendants' Vacatur Motion, which is now being held in abeyance at the Federal Defendants' request, specifically asserts (albeit baselessly) that Federal Defendants plan to reconsider all of the Federal Approvals. *See* ECF No. 81 at 10 ("On remand, Interior will conduct a new analysis under [OCSLA] § 1337(p)(4), as well as any required technical and environmental reviews, including, at a minimum, an assessment of the sufficiency of its existing environmental reviews under NEPA, the NHPA, and the ESA."). This Court's review of all of the Federal Approvals is therefore essential to review of the Federal Defendants' revocation decision.

Plaintiffs' theory that Counts VI through X duplicate their own APA claims disregards the fact that Plaintiffs have decided to abandon those claims in favor of vacatur and remand. The Vacatur Motion recites that "Plaintiffs agree that the Court should remand with vacatur <u>and dismiss their claims without prejudice</u>." ECF No. 81 at 1 (emphasis added). Plaintiffs cannot contend that US Wind's claims duplicate claims which Plaintiffs no longer intend to pursue to judgment.

In sum, US Wind has adequately pleaded all of the APA claims in the Cross Claim.

### D.    US Wind Has Adequately Pleaded a Protected Property Interest.

Plaintiffs challenge US Wind's Due Process Clause claim on the theory that US Wind's lease and COP approvals "are at most a conditional and revocable benefit or approval subject to ongoing federal oversight." ECF No. 83-1 at 17. That theory is baseless.

"A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (citation modified). Holders of "issued licenses" have a particularly strong claim for protection: "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a

livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). "<u>In such cases the licenses are not to be taken away without</u>" the requisite "<u>procedural due process.</u>" *Id.* (emphasis added). Further, under controlling Fourth Circuit precedent: "<u>A license issued by the state which can be suspended or revoked only upon a showing of cause creates a property interest protected by the Fourteenth Amendment</u>." *Richardson v. Town of Eastover*, 922 F.2d 1152, 1156–57 (4th Cir. 1991) (emphasis added; citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979)). Consistent with these principles, courts routinely find protected property interests in governmental licenses and permits. *See, e.g.*, *Richardson*, 922 F.3d at 1157–58 (business operator's license); *Bell*, 402 U.S. at 539 (driver's license); *Ihnken v. Gardner*, 927 F. Supp. 2d 227, 236–38 (D. Md. 2013) (land use permit).[11]

The same principles apply here. Plaintiffs do not and cannot contest that BOEM in fact granted US Wind COP approval through its September 2024 ROD and December 2024 approval letter, and that the Project "receiv[ed] all the necessary agency approvals to proceed with construction and operation." ECF No. 77 at 54–55, Cross Claim ¶¶ 50, 51, 54. Plaintiffs' sole stated grounds for calling the approval "conditional and revocable" are statutory and regulatory provisions which, as Plaintiffs concede, only allow a "lease suspension or prohibition of operation" or a lease "cancellation" for a narrow set of specified reasons: "a threat of serious, irreparable, or immediate harm to damage to life, property, mineral deposits, or the marine, coastal or human environment," "serious harm or damage to life, property, national security, or the environment" or "the lessee['s] fail[ure] to comply with OCSLA[.]" ECF No. 83-1 at 17–18 n.99 (citing 43 U.S.C. § 1334(a)(1), 43 U.S.C. § 1334(a)(2), 30 C.F.R. § 556.1102). As US Wind's COP and lease

---

[11] *See also, e.g.*, *Trinity Broad. of Fla., Inc. v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000) (FCC broadcast license); *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (NMFS fishing quota permit); *KTK Mining of Va., LLC v. City of Selma, Ala.*, 984 F. Supp. 2d 1209, 1225–26 (S.D. Ala. 2013) (building permit); *P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston*, 696 F. Supp. 788, 798 (D.R.I. 1988) (building permit).

rights cannot be suspended or cancelled except "upon a showing of cause" as specified in applicable statutes and regulations—none of which Federal Defendants have even attempted to invoke, by the way—the COP approval necessarily "creates a property interest." *Richardson*, 922 F.2d at 1156–1157.

Moreover, where, as here, revocation of a governmental permit deprives the plaintiff of rights "as a lessee by contract," the plaintiff's contractual rights also implicate due process protections. *Ihnken*, 927 F. Supp. 2d at 237–238 In *Ihnken*, this Court held that the defendant county's revocation of a permit to conduct a festival on a farm deprived by plaintiff festival producer of his property interest by preventing him from exercising "all of the land use rights permitted by" the lease. *Id.*; *see also New Orleans Home for Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386, 404–05 (E.D. La. 2012) (plaintiff "has identified a clear property right in the lease agreement of the facility, which would terminate upon the cessation of the facility's operation as a nursing home"). Here, US Wind's Lease grants US Wind the right to "conduct activities… in the [leased area]… that are described in a … COP that has been approved by the Lessor," and US Wind's rights "are limited to those activities described in" an approved COP. [12] As Federal Defendants maintain in the Vacatur Motion, their revocation decision, if effective, will therefore foreclose US Wind from "perform[ing] any activity" in its lease area.  ECF No. 81-1 ¶ 4. US Wind's express lease rights thus also implicate due process protections. [13]

---

[12] Lease §§ 2(a), (b), available at https://www.boem.gov/sites/default/files/documents/renewable-energy/OCS-A-0489_OCS-A-0490-Lease-Consolidation.pdf.

[13] Plaintiffs' Due Process Clause cases are distinguishable because, among other things, none involves a federal agency's purported withdrawal of a prior federal approval, and none involves a plaintiff whose rights under a contractually binding lease would be destroyed by the withdrawal. *See Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63 (4th Cir. 1992); *3883 Conn. LLC v. D.C.*, 191 F. Supp. 2d 90 (D.D.C. 2002); *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32 (D.C. Cir. 1997); *see also Hillside Prods., Inc. v. Duchane*, 249 F. Supp. 2d 880, 893 (E.D. Mich. 2003) (noting the distinction between "whether Plaintiffs had a right to the [land use

In sum, US Wind's US allegations are sufficient to establish a protected property interest under the Due Process Clause.[14]

## V.    CONCLUSION

US Wind's Counterclaim against Plaintiffs properly joins them to the Cross Claim against the Federal Defendants as required by Rule 19(a)(1). US Wind falls within the zone of interests of each applicable statute cited in the Cross Claim. US Wind has adequately pleaded final agency action as to its APA claims and a protected property interest as to its Due Process Claim. Accordingly, Plaintiffs' motion to dismiss should be denied. To the extent the Court determines there is any deficiency in US Wind's allegations, US Wind seeks leave to amend to address such deficiency.

---

permit] in the first instance," and "whether the City, which had already granted … the [permit] had the authority to revoke that valuable property interest").

[14] Plaintiffs' argument that the APA forecloses a separate constitutional claim, ECF No. 83-1 at 18-19, is specious. Plaintiffs are contesting, and presumably will continue to contest, US Wind's APA and Due Process Clause claims, and US Wind is entitled to plead in the alternative.

Dated: October 8, 2025                    Respectfully submitted,

                                          By: */s/ Toyja E. Kelley, Sr.*
                                          Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)
                                          Emily Huggins Jones (*pro hac vice*)
                                          Gregory L. Waterworth (D. Md. Bar No. 20938)
                                          Noah J. Mason (*pro hac vice*)
                                          **TROUTMAN PEPPER LOCKE LLP**
                                          701 8th Street, N.W.
                                          Suite 500
                                          Washington, D.C. 20001
                                          Telephone: (202) 220-6900
                                          Facsimile: (202) 220-6945
                                          toyja.kelley@troutman.com
                                          emily.hugginsjones@troutman.com
                                          greg.waterworth@troutman.com
                                          noah.mason@troutman.com

                                          Hilary Tompkins (*pro hac vice*)
                                          Sean Marotta (*pro hac vice*)
                                          **HOGAN LOVELLS US LLP**
                                          555 13th Street N.W.
                                          Washington, D.C. 20004
                                          Telephone: (202) 637-5617
                                          hilary.tompkins@hoganlovells.com
                                          sean.marotta@hoganlovells.com

                                          David Newmann (*pro hac vice*)
                                          **HOGAN LOVELLS US LLP**
                                          1735 Market St., 23d Floor
                                          Philadelphia, PA 19103
                                          Telephone: (267) 675-4600
                                          david.newmann@hoganlovells.com

                                          ***Attorneys for Defendant-Intervenor US Wind, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, a true and correct copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR US WIND, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS US WIND, INC.'S COUNTERCLAIM** has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on Plaintiffs' and Defendants' counsel of record via the Court's electronic filing system.

Dated: October 8, 2025

<u>*/s/ Toyja E. Kelley, Sr.*</u>
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)

*Counsel for US Wind, Inc.*