# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| **MAYOR AND CITY COUNCIL**<br>**OF OCEAN CITY MARYLAND**, *et al.* | * |
| | * |
| Plaintiffs/Cross-Defendants | * |
| v. | * |
| **UNITED STATES DEPARTMENT**<br>**OF THE INTERIOR,** *et al.* | *    Civil Action No: 1:24-cv-03111-SAG |
| Defendants/Cross-Defendants | * |
| and | * |
| **US WIND, INC.** | * |
| Defendant-Intervenor/Cross-Plaintiff | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT-INTERVENOR AND CROSS-PLAINTIFF US WIND INC.'S REPLY**
**IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ...................................................................................................1

II.     US WIND IS LIKELY TO SUCCEED ON THE MERITS .................................................2

      a.      US Wind's Cross-Claims Satisfy Ripeness and Standing Requirements. ...............2

      b.      US Wind's APA Challenges to the Revocation Decision Are Likely to Succeed. ........................................................................................................5

      c.      US Wind's OCSLA Claim is Likely to Succeed. ...................................................10

      d.      US Wind's Due Process Claims Are Likely to Succeed........................................12

III.    US WIND'S SHOWING OF IRREPARABLE HARM IS UNCONTROVERTED. ........14

      a.      The Revocation Decision Irreparably Harms US Wind. ........................................14

      b.      US Wind Did Not Delay Its Motion for a Preliminary Injunction. .......................15

      c.      US Wind's Corporate Structure is Immaterial.......................................................16

      d.      Plaintiffs' " Cost of Doing Business" Argument Fails. .........................................17

IV.     THE GOVERNMENT AND PLAINTIFFS FAIL TO DEMONSTRATE THAT A PRELIMINARY INJUNCTION WILL HARM THEM, OR THAT THEY ARE ACTING IN THE PUBLIC INTEREST ........................................................................18

V.      CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998)..................................................................17

*Air N. Am. v. Dep't of Transp.*,
   937 F.2d 1427 (9th Cir. 1991) ..................................................................10

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
   771 F.Supp.3d 717 (D. Md. 2025)..............................................................19

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
   778 F.Supp.3d 685 (D. Md. 2025), *appeal pending*, No. 25-1411 (4th Cir.) ...........5

*Amoco Prod. Co. v. Fry*,
   118 F.3d 812 (1997).................................................................................14

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (D.C. Cir. 2000).............................................................5, 9

*Atl. Coast Pipeline, LLC v. 5.63 Acres, More or Less, in Buckingham Cnty., Va.*,
   2018 WL 1097051 (W.D. Va. Feb. 28, 2018) .........................................16

*Barrick Goldstrike Mines, Inc. v. Browner*,
   215 F.3d 45 (D.C. Cir. 2000)......................................................................5

*Bell v. Burson*,
   402 U.S. 535 (1971)...........................................................................12, 13

*Bowen v. Pub. Agencies Opposed To Soc. Sec. Entrapment*,
   477 U.S. 41 (1986).....................................................................................4

*Bracco Diagnostics, Inc. v. Shalala*,
   963 F.Supp.20 (D.D.C. 1997)...................................................................18

*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*,
   23 Fed. App'x 134 (4th Cir. 2001) ...........................................................16

*Chevron, U.S.A., Inc. v. FERC*,
   193 F.Supp.2d 54 (D.D.C. 2002)..............................................................11

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
   375 F.3d 412 (6th Cir. 2004) ....................................................................12

*City of N.Y. v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019) ..................................................................15

*Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*,
   367 U.S. 316 (1961)......................................................................11, 12

*Clarke v. CFTC*,
   74 F.4th 627 (5th Cir. 2023) ..............................................................5, 7

*Connecticut v. Doehr*,
   501 U.S. 1 (1991)..................................................................................14

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ..................................................................3

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017)................................................................................4

*E. Tenn. Nat. Gas Co. v. Sage*,
   361 F.3d 808 (4th Cir. 2004) ................................................................15

*Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*,
   140 F.Supp.3d 47 (D.D.C. 2015) ..........................................................16

*Fort Sumter Tours, Inc. v. Andrus*,
   440 F.Supp.914 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977) ......9

*Fort Sumter Tours, Inc. v. Andrus*,
   564 F.2d 1119 (4th Cir. 1977) ............................................................3, 7

*Foss v. Nat'l Marine Fisheries Serv.*,
   161 F.3d 584 (9th Cir. 1998) ................................................................13

*Fox Television Stations, Inc. v. FCC*,
   280 F.3d 1027 (D.C. Cir. 2002) ..............................................................5

*Frozen Food Express v. United States*,
   351 U.S. 40 (1956)..................................................................................9

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980)................................................................................7

*Greatness v. Fed. Election Comm'n*,
   831 F.3d 500 (D.C. Cir. 2016)..............................................................19

*Hornbeck Offshore Servs., LLC v. Salazar*,
   696 F.Supp.2d 627 (E.D. La. 2010) ......................................................11

*Ihnken v. Gardner*,
    927 F.Supp.2d 227 (D. Md. 2013) ...........................................................................13

*KTK Mining of Va., LLC v. City of Selma, Ala.*,
    984 F.Supp.2d 1209 (S.D. Ala. 2013)......................................................................13

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne,*
    *LLC*,
    713 F.3d 187 (4th Cir. 2013) ......................................................................................3

*Louisiana v. Biden*,
    622 F.Supp.3d 267 (W.D. La. 2022).........................................................................7

*Louisiana v. Haaland*,
    No. 2:23-CV-01157, 2023 WL 6450134 (W.D. La. Sep. 21, 2023), *order*
    *modified, appeal dismissed in part*, 86 F.4th 663 (5th Cir. 2023) ..........................11

*Massachusetts v. Trump*,
    790 F.Supp.3d 8 (D. Mass. 2025) ..............................................................................6

*Mayor & City Council of Balt. v. Trump*,
    416 F.Supp.3d 452 (D. Md. 2019) ..............................................................................8

*Mediplex of Mass., Inc. v. Shalala*,
    39 F.Supp.2d 88 (D. Mass. 1999) ............................................................................16

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978)......................................................................................................13

*Mobil Oil Expl. & Producing Se., Inc. v. United States*,
    530 U.S. 604 (2000).............................................................................................8, 12

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes*
    *Powell*,
    915 F.3d 197 (4th Cir. 2019) ....................................................................................18

*Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, & Maintain a*
    *Nat. Gas Pipeline Over Tracts of Land*,
    No. 7:17-CV-00492, 2018 WL 648376 (W.D. Va. Jan. 31, 2018)...........................16

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*,
    397 F.Supp.3d 430 (S.D.N.Y. 2019).........................................................................6

*Nat. Res. Def. Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) .....................................................................................7

*P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston*,
    696 F.Supp.788 (D.R.I. 1988)..................................................................................13

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) .................................................................................................3, 4

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) ........................................................................................................6

*Petraco-Valley Oil & Refin. Co. v. U.S. Dep't of Energy*,
633 F.2d 184 (Temp. Emer. Ct. App. 1980) ...........................................................16

*Pillsbury Co. v. United States*,
22 C.I.T. 769 ( Ct. Int'l Trade 1998) .......................................................................10

*Retail Indus. Leaders Ass'n v. Fielder*,
475 F.3d 180 (4th Cir. 2007) ...............................................................................3, 4

*Richardson v. Town of Eastover*,
922 F.2d 1152 (4th Cir. 1991) ...........................................................................12, 13

*Sackett v. EPA*,
566 U.S. 120 (2012) ......................................................................................................8

*Sansotta v. Town of Nags Head*,
724 F.3d 533 (4th Cir. 2013) .....................................................................................13

*Satellite Broad. And Commc'ns Ass'n v. FCC*,
275 F.3d 337 (4th Cir. 2001) .......................................................................................3

*Scotts Valley Band of Pomo Indians*, No. 1:25-CV-00958, 2025 WL 1639901
(D.D.C. June 10, 2025) ...............................................................................................18

*Seko Customs Brokerage, Inc. v. United States*,
719 F.Supp.3d 1279 (Ct. Int'l Trade 2024) ...........................................................18

*Severstal Exp. GMBH v. United States*,
39 ITRD 3084 (Ct. Int'l Trade 2018) .....................................................................17

*Sierra Club v. Nat'l Marine Fisheries Serv.*,
711 F.Supp.3d 522 (D. Md. 2024) ............................................................................12

*Snider Int'l Corp. v. Town of Forest Heights*,
906 F.Supp.2d 413 (D. Md. 2012), *aff'd*, 739 F.3d 140 (4th Cir. 2014) ...............13

*Stenlund v. Marriott Int'l, Inc.*,
172 F.Supp.3d 874 (D. Md. 2016) ............................................................................14

*The Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ....................................................................................................12

*The Last Best Beef, LLC v. Dudas*,
   506 F.3d 333 (4th Cir. 2007) ...........................................................................12

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
   529 F.3d 1352 (Fed. Cir. 2008)........................................................................11

*Trinity Broad. of Fla., Inc. v. FCC*,
   211 F.3d 618 (D.C. Cir. 2000) .........................................................................13

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016)................................................................................5, 7, 8

*Watt v. Energy Action Educ. Found.*,
   454 U.S. 151 (1981)..........................................................................................4

*White v. Franklin*,
   637 F.Supp.601 (N.D. Miss. 1986) ................................................................10

*Whitman v. Am. Trucking Assn's*,
   531 U.S. 457 (2001)..........................................................................................5

## Statutes

5 U.S.C. § 551(8) .................................................................................................10

5 U.S.C. § 551(13) .................................................................................................5

5 U.S.C. § 558 .....................................................................................................10

5 U.S.C. § 702 .....................................................................................................15

43 U.S.C. §§ 1334(a)(1), (2) ...............................................................................12

43 U.S.C. § 1337(p)(4) ...................................................................................2, 6, 8

43 U.S.C. § 1349(a)(1) ..........................................................................................8

43 U.S.C. § 1349(a)(3) ........................................................................................11

## Other Authorities

30 C.F.R. § 585.102(a)...........................................................................................2

30 C.F.R. § 585.422 .............................................................................................12

## I.    INTRODUCTION

The Government's and Plaintiffs' Oppositions to the Motion for Preliminary Injunction filed by US Wind (ECF Nos. 106 & 107) highlight that the Government's decision to revoke its approval of US Wind's Construction and Operations Plan for the Maryland Offshore Wind Project satisfies all requirements for injunctive relief. As to success on the merits, the Government offers no substantive defense of its actions. Rather, it contends that its purported "ongoing" review of the COP and the Project forecloses US Wind's claims on standing, ripeness and "final agency action" grounds, and negates any possibility of irreparable harm. These arguments fail. The Revocation Decision[1] meets all requirements for judicial review and threatens irreparable harm by suspending the construction-related activities that US Wind is legally entitled to and obligated to perform right now, subjecting the Project to substantial delays and risking the Project's outright cancellation and US Wind's bankruptcy absent Court intervention. For their part, Plaintiffs chime in mainly to point the finger at the Government, insisting the Plaintiffs were not involved in the Government's Revocation Decision. This is a straw man. US Wind seeks injunctive relief against the Government, not Plaintiffs. Plaintiffs also try their hand at opposing US Wind's claims on the merits, but they offer only cursory, baseless arguments that even the Government will not endorse.

Notably, neither the Government nor Plaintiffs contest that, if the requirements for entry of a preliminary injunction are satisfied—and they plainly are—the scope of the injunction US Wind has requested is appropriate. Pending the conclusion of these proceedings, the Revocation Decision and any related action by the Government to vacate, remand, withdraw, rescind, or in any way undermine BOEM's approval of the COP should be enjoined.

---

[1] Unless otherwise indicated, capitalized terms are defined by the Motion.

## II.    US WIND IS LIKELY TO SUCCEED ON THE MERITS

### a.    US Wind's Cross-Claims Satisfy Ripeness and Standing Requirements.

The Government's ripeness and standing arguments, ECF No. 106 at 5–11, lack merit because they rest on the baseless theory that "BOEM's re-evaluation" of the COP Approval "is ongoing and no final decision has been made." *Id.* at 5–6. As discussed at greater length in US Wind's Opposition to the Government's Motion to Dismiss (the "MTD Opposition"), the Government's statements bely this theory, revealing that the Revocation Decision is the product of multiple final decisions that cause US Wind actual and imminent harm. *See* MTD Opp. at 9-15.

Specifically, BOEM made a final decision, citing purported authority, to alter the legal standard for evaluating the COP's compliance with Section 8(p)(4) of the Outer Continental Shelf Lands Act ("OCSLA") 43 U.S.C. § 1337(p)(4). BOEM approved the COP under the "balancing" standard adopted in binding regulation, 30 C.F.R. § 585.102(a) (the "Section 8(p)(4) Rule"), but BOEM has now concluded that the COP must be reviewed under a more restrictive interpretation imposed by the DOI Solicitor on May 1, 2025. ECF No. 81-1 ¶¶ 11–12. BOEM also made a final decision, citing purported evidence, that, under this new, retroactively applied interpretation, BOEM's "prior analysis approving the COP" made a "legal error" by "underestimat[ing] impacts to search and rescue operations within the project area" and by failing to "adequately ensure that all activities in the COP will be carried out in a manner that provides for reasonable uses of the OCS, such as commercial fishing." ECF No. 81 at 9–10 (emphasis added); ECF No. 81-1 ¶¶ 14–15. And BOEM made a final decision that this "legal error" requires that the COP approval be "vacate[d]" and replaced by a "new decision." ECF No. 81 at 4, 9–10; ECF No. 81-1 ¶¶ 14–15.

That's not all. The Government also made a final determination that the Project is subject to Section 2(a) of the January 20, 2025 Presidential Wind Memorandum ("Wind Memo"), under which BOEM claims the Government must "refrain from issuing new or renewed approvals for .

2

. . offshore wind projects 'pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices.'" ECF No. 81-1 ¶¶ 9, 18. So, by definition, while the approvals ban remains in effect, the Government's "new decision on the COP" (ECF No. 105-1 at 3) cannot be an "approval," only a "disapproval." In the meantime, the approvals ban also effects a suspension of Project construction activities because US Wind requires multiple additional post-COP Government approvals for those activities. Supplemental Declaration of Jeff Grybowski ("Supp. Decl.") ¶¶ 7–8, attached as Exhibit A.

Nowhere does the Government state that it could change its mind as to any of these determinations—collectively comprising the Revocation Decision—or that any is subject to further review. The Revocation Decision is as final as it gets. For ripeness purposes, "no further action from the [agency] is needed" where, as here, BOEM "has already … manifested its views" that the COP Approval is invalid, *Cooksey v. Futrell*, 721 F.3d 226, 239–41 (4th Cir. 2013), and has "no intention of voluntarily abandoning" that position. *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013). US Wind's challenges to the Revocation Decision are "predominantly legal"—the decision squarely violates the Lease, OCLSA and associated regulations, the Due Process Clause and the APA—so the "fitness" prong of the ripeness analysis is satisfied. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)).[2]

---

[2] *See also Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1123 (4th Cir. 1977) ("issues … are legal in nature" where the "court must decide, as federal courts often must in reviewing administrative action, the precise scope of plaintiff's statutory entitlement and whether such entitlement was improperly denied"); *Satellite Broad. And Commc'ns Ass'n v. FCC*, 275 F.3d 337, 369 (4th Cir. 2001) (whether agency "has articulated a reasonable explanation for its action" is "purely legal" for ripeness purposes).

The evidence is uncontroverted that, particularly in the context of the unrebutted evidence of the Government's year-long assault on wind energy, ECF No. 92-1 at 7–11 (citations omitted), the decision is causing US Wind hardship sufficient to satisfy ripeness, and actual and imminent injury sufficient to satisfy standing. Among other things, the decision deprives US Wind of its Lease and statutory right to proceed with construction in accordance with the approved COP, Supp. Decl. ¶ 7, 8; ECF No. 77, Cross-Claim ¶¶ 1, 3, 82, 83, 86; prevents US Wind from conducting construction preparatory activities that it would otherwise be performing right now, ECF No. 92-4 ¶ 36; Supp. Decl. ¶ 7, 8; subjects US Wind to increased supply and borrowing costs as a result of construction delays, *id.* ¶ 47; Supp. Decl. ¶ 11; forces US Wind to defer entering into critical supply and vessel contracts, ECF No. 92 ¶¶ 43–46; Supp. Decl. ¶ 11; delays the completion of the Project, ECF No. 92-4 ¶¶ 35, 38, 39, 42; Supp. Decl. ¶ 13; and risks causing creditors to declare US Wind in default of its loans or to withhold the additional financing required to complete the Project, resulting in US Wind's bankruptcy. ECF No. 92-4 ¶ 52. Case law is clear that such harms readily satisfy Article III requirements.[3]

Against this clear evidence of actual and imminent injury, the Government insists that US Wind "must wait until" some other "final decision" is made. ECF No. 106 at 9. That is not the law. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pac. Gas*, 461 U.S. at 201–202 (citation omitted); *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d at 184–85 (same). Here, US Wind is not

---

[3] *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 161-162 (1981) (DOI's failure to maximize OCS lease value caused "distinct and palpable injury" to California's "financial stake in federal OCS leasing") (citation omitted); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Bowen v. Pub. Agencies Opposed To Soc. Sec. Entrapment*, 477 U.S. 41, 48–50, 51 n.17 (1986) (agreeing that "agencies alleged an injury sufficient to confer standing because they claimed that [a federal statutory amendment] deprived them of their contractual rights"); *Pac. Gas*, 461 U.S. at 201–202 ("[t]o require [an energy developer] to proceed without knowing whether the [agency action] is valid would impose a palpable and considerable hardship" sufficient to satisfy ripeness).

4

required to "await" the Government's inevitable future action to formally cancel the Project based on the Revocation Decision. The Revocation Decision is causing US Wind harm and injury right now. Supp. Decl. ¶¶ 7-13. US Wind's cross-claims are therefore justiciable.

> **b.**    **US Wind's APA Challenges to the Revocation Decision Are Likely to Succeed.**

The Government's sole stated basis for contesting US Wind's likelihood of success on its APA challenges to the Revocation Decision (Cross Claim Counts I-III) is that "US Wind fails to challenge any 'final agency action.'" ECF No. 106 at 11. That argument fails because the evidence shows that the Revocation Decision meets both requirements for final agency action: it "mark[s] the consummation of the agency's decision-making process," and it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). [4] The Government offers no other basis for challenging these APA claims on the merits, and Plaintiffs' cursory APA arguments lack any merit whatsoever, so US Wind's APA claims alone meet the likelihood-of-success requirement.

As more fully discussed in US Wind's MTD Opposition at 16-21, the consummation requirement is satisfied because the evidence shows that BOEM "for all practical purposes has ruled definitively" as to the validity of the COP Approval, *Hawkes*, 578 U.S. at 597 (citation omitted), and has reached "a settled agency position" as to all elements of the Revocation Decision. *Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000); *see also, e.g., Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F.Supp.3d 685, 748 (D.

---

[4] The Government does not and cannot dispute that the Revocation Decision constitutes "agency action." The APA defines that term to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or the denial thereof, or failure to act." 5 U.S.C. § 551(13). The definition is read "comprehensively" to cover "every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). Just as a decision to issue—or not issue—a particular permit, rule, or determination is an agency action, *see, e.g., Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1037 (D.C. Cir. 2002), so too is a decision to suspend, rescind, or withdraw one—*i.e.*, the precise actions taken by the Government here. *See, e.g., Clarke v. CFTC*, 74 F.4th 627, 637 (5th Cir. 2023).

Md. 2025), *appeal pending*, No. 25-1411 (4th Cir.); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000). In particular, BOEM has ruled definitively that DOI's interpretation of OCSLA Section 8(p)(4) adopted on May 1, 2025, applies retroactively to the COP, even though it contravenes the formally promulgated Section 8(p)(4) Rule, and that, "[b]ased in part on" this change of statutory interpretation, "the decision to approve the COP did not fully comply with each of the factors in section 8(p)(4) of OCSLA." ECF No. 81-1 ¶¶ 11, 12 (emphasis added); *see* ECF No. 92-7 § 3. DOI's official adoption of a statutory interpretation by itself constitutes final agency action, particularly where, as here, it supersedes a formally promulgated regulation. *See Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*, 397 F.Supp.3d 430, 446–50 (S.D.N.Y. 2019); *Perez v. Mortg. Bankers Ass'n,* 575 U.S. 92, 101 (2015).

BOEM also has ruled definitively and reached the settled position, based on the FEIS "other record documents" that, under DOI's new statutory interpretation, BOEM "failed to account for all the impacts that the [Project] may cause" and "understated or obfuscated impacts that were then improperly weighed" in approving the COP. ECF No. 81-1 ¶ 13 (emphasis added). The Government has represented to the Court that these "errors"—by themselves—are so "serious" that they require vacating the COP Approval. ECF No. 81 at 10 (emphasis added). And BOEM has ruled definitively and reached the settled agency position that Section 2(a) of the Wind Memo forecloses any "new or renewed approvals" for the Project. ECF No. 81-1 ¶ 9, 18. Wind Memo Section 2(a) already has been held to be "de facto[] final" for APA purposes, consistent with the general principle that "significant pauses and blanket moratoria are final agency actions." *Massachusetts v. Trump*, 790 F.Supp.3d 8, 26 (D. Mass. 2025) (emphasis added; quoting *Louisiana v. Biden*, 622 F.Supp.3d 267, 291–92 (W.D. La. 2022)). *A fortiorari,* BOEM's specific

application of Wind Memo Section 2(a) to bar any new or renewed approvals for the Project is final.[5]

Courts in analogous cases hold that final agency action occurs where, as here, the Government makes determinations that are likely to result in denial of the plaintiff's contract or permit, whether or not the agency issues a formal denial. *See, e.g., Andrus*, 564 F.2d at 1123 (final agency action occurred because the agency's "interpretation of the statutory preference [for an incumbent contractor] and its legal relationship with the [contractor] have become fixed[,]" even though no contract with competing bidder had been executed); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627 (5th Cir. 2023) (agency's determination "as a preliminary matter that [its staff's no-action letter] is void and should be withdrawn" was final agency action, even though the agency "invite[d] the [plaintiff] to submit any objections it may have[.]"). In any event, the Government's claim that its decisions have not been "formalized," ECF No. 106 at 10, is specious. Those decisions are set forth in a declaration to this Court submitted by a high-ranking U.S. official "under penalty of perjury." ECF No. 81-1 at 8. Nothing could be more "formalized."

As to the "effects" requirement for finality, as further discussed in the MTD Opposition at 22-24, the Revocation Decision plainly affects US Wind's "rights or obligations" and carries "legal consequences," *Hawkes*, 578 U.S. at 597; and also have "practical effect[s]" on US Wind's "day-to-day business." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239, 243 (1980). As this Court has recognized, "[a]gency action has legal consequences if it 'alters the legal regime.' . . . So too does action that grants or withdraws a regulatory 'safe harbor.'" *Mayor & City Council of Balt. v.*

---

[5] Even accepting the Government's baseless theory that BOEM nominally retains the option to re-approve the COP at some point in the future after the Wind Memo § 2(a) ban is lifted, the consummation requirement is satisfied, because the Revocation Decision represents an "interim agency resolution" during the pendency of the ban. "[A]n interim agency resolution" still "counts as final agency action" where it "is the final word from the agency on what will happen up to the time of any different permanent decision." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020).

*Trump* ("*Baltimore*"), 416 F.Supp.3d 452, 500 (D. Md. 2019) (citations omitted). Here, the Revocation Decision literally altered the legal regime governing the COP by replacing the "balancing" standard set forth in the formally promulgated Section 8(p)(4) Rule with the far more restrictive interpretation retroactively "reinstate[d]" on May 1, 2025 by DOI's M-Opinion 37086—an interpretation BOEM already has determined the COP cannot satisfy. ECF No. 81-1 ¶¶ 11, 12. Where, as here, the agency adopts a legal position that "severely limits the [complainant's] ability to obtain a permit for" an existing project, the "legal consequences" requirement for finality is satisfied. *Sackett v. EPA*, 566 U.S. 120, 126 (2012).

The Revocation Decision also withdraws the regulatory and contractual "safe harbor" that US Wind enjoyed following COP Approval in 2024. With that approval, under the express Lease terms, US Wind had a "<u>COP that has been approved by the Lessor</u>," and thus became entitled to "<u>conduct activities … that are described in</u>" the COP—*i.e.*, the construction and operation of the Project. ECF No. 92-6 § 2 (emphasis added). These Lease rights, directly enforceable under OCSLA, 43 U.S.C. § 1349(a)(1), created a safe harbor by preventing the Government from suspending or cancelling any COP permit or activity except as authorized by the Lease or by "any other contractually cross-referenced [statutory or regulatory] provision." *Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 620, (2000). Yet the Government is now asserting the power to suspend or cancel COP activities and permits, through the purported expedient of "reconsideration," without satisfying the Lease and statutory requirements for doing so. Here, as in *Baltimore*, BOEM's withdrawal of the "safe harbor" for an approved COP is itself final agency action. *See also Hawkes*, 578 U.S. at 599–600.

The legal and practical effects of the Revocation Decision on US Wind's day-to-day business are clear. Courts recognize that the effects test is satisfied when, even without any

enforcement action, an agency "leads private parties or State . . . authorities to believe that it will" implement a particular policy, *Appalachian Power*, 208 F.3d at 1021–22, or announces a policy that forms "the basis for [regulated entities] in ordering and arranging their affairs." *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956) (citation omitted). The Revocation Decision has had precisely such impacts on US Wind. The immediate practical effect of the Government's Revocation Decision has been to stop US Wind's development activities dead in their tracks. Supp. Decl. ¶ 7-9, 13. Faced with BOEM's clearly stated position that the COP approval on which the Project and its Lease rights depend is invalid for multiple reasons, and that the Project is barred from receiving any "new or renewed approvals," US Wind has been forced to suspend the bulk of its development activities indefinitely. Supp. Decl. ¶ 3, 8; ECF No. 92-4 ¶¶ 42, 44. Unless the Revocation Decision is enjoined, the practical effect of this *de facto* suspension could be to put US Wind out of business altogether, destroying the Project in its entirety. *See* Supp. Decl. ¶ 9; ECF No. 92-4 ¶ 52; *see also Fort Sumter Tours, Inc. v. Andrus*, 440 F.Supp.914, 920 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977) ("final agency action" satisfied where, as a result of agency's threatened refusal to renew the plaintiff's contract, plaintiff "face[d] the possible loss of a business" and the loss of the value of assets used in carrying out the business). The APA's "final agency action" requirement is satisfied.

Plaintiffs' cursory and partial challenges to the merits of the APA claims also fail. Most notably, Plaintiffs (like the Government) offer no response on the merits to US Wind's lead APA claims: that "the Revocation Decision is arbitrary and capricious … because the Government cannot provide a reasoned explanation for its about-face and has failed to consider US Wind's reliance interests in its COP approval," ECF No. 92-1 at 20–21; and that the Revocation Decision is "not in accordance with law" because it violates OCSLA and associated regulations. *Id.* at 21–

9

22. Plaintiffs' (and the Government's) failure to address the merits of these claims operates as a concession that they are likely to succeed. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (failure to respond concedes the point).

As to US Wind's claim under 5 U.S.C. § 558, ECF No. 92-1 at 23, Plaintiffs argue only that the COP approval is not a "license" for purposes of that statue. ECF No. 107 at 11–12. But Plaintiffs ignore the statutory definition of "license," which expressly extends to among other things, "the whole or a part of an agency permit, certificate, underline approval,…or other form of permission," 5 U.S.C. § 551(8) (emphasis added), and thus plainly encompasses BOEM's COP "approval."[6] Plaintiffs next contest US Wind's undue political influence claim, ECF No. 92-1 at 24, on the ground that US Wind did not "offer any evidence of what Ocean City Plaintiffs allegedly did that was 'undue or even influential." ECF No. 107 at 11–12. But US Wind had no need to offer such evidence. Instead, it relied on the "voluminous *public* evidence" cited at length in US Wind's brief "that improper political considerations are driving the Government's decision-making process." ECF No. 92-1 at 24. That evidence stands conspicuously uncontested by either the Government or Plaintiffs, confirming US Wind's likelihood of success.

   **c.    US Wind's OCSLA Claim is Likely to Succeed.**

As with its challenge to US Wind's APA claims, the Government offers no substantive rebuttal to US Wind's claim that the Revocation Decision violates OCSLA by depriving US Wind of its right to conduct activities under the approved COP and by effectuating a *de facto* suspension or cancellation of those activities without satisfying the Lease and statutory requirements for cancellation and suspension. ECF No. 92-1 at 15–18. Instead of challenging this claim on the

---

[6] Courts have interpreted this definition to be "extremely broad." *Air N. Am. v. Dep't of Transp.*, 937 F.2d 1427, 1437 (9th Cir. 1991); *see also Pillsbury Co. v. United States*, 22 C.I.T. 769, 772 ( Ct. Int'l Trade 1998) (citing cases); *White v. Franklin*, 637 F.Supp.601, 610 (N.D. Miss. 1986).

merits, the Government argues only that US Wind "failed to provide the required 60-day notice …
before filing the claims." ECF No. 106 at 15–16. But as US Wind has explained, it was excused
from this notice requirement under OCSLA's express statutory exception for violations that
"would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3); ECF No. 92-1
at 15 n.25; ECF No. 77, Cross-Claim ¶ 84. For reasons discussed above, the Government's
Revocation Decision immediately affects US Wind's legal interest by making it impossible for US
Wind to conduct the approved COP activities that it would otherwise be conducting right now in
accordance with the Lease and the COP, causing dire near-term and long-term effects for the
Project and US Wind. These exigencies align with other cases where courts have applied the notice
exception. *Chevron, U.S.A., Inc. v. FERC*, 193 F.Supp.2d 54, 64–65 (D.D.C. 2002); *Hornbeck
Offshore Servs., LLC v. Salazar*, 696 F.Supp.2d 627, 636 n.8 (E.D. La. 2010); *Louisiana v.
Haaland*, No. 2:23-CV-01157, 2023 WL 6450134, at *7 (W.D. La. Sep. 21, 2023), *order modified,
appeal dismissed in part*, 86 F.4th 663 (5th Cir. 2023). Here, as in *Chevron*, the Government's
contention that US Wind should have waited another 60 days while experiencing the immediate
effects of the Revocation Decision is "simply nonsensical." 193 F.Supp.2d at 65.

For their part, Plaintiffs challenge the OCSLA claim on the theory that "the Government
always retains 'the authority to reconsider [its] decisions.'" ECF No. 107 at 7–8 (citations omitted).
That assertion is false. An agency cannot "reconsider its decisions … in a manner that is contrary
to a statute" or "where a statute forbids the exercise of such power." *Tokyo Kikai Seisakusho, Ltd.
v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008) (citation omitted). Thus, "where a statute
does expressly provide for reconsideration of decisions, the agency is obligated to follow the
procedures for reconsideration set forth in the statute." *Id.* (citing *Civ. Aeronautics Bd. v. Delta
Air Lines, Inc.*, 367 U.S. 316, 329 (1961)). Here, as Plaintiffs concede, ECF No. 107 at 8, OCSLA

and associated regulations expressly limit the circumstances under which DOI may require "the suspension or temporary prohibition of any operation or activity … <u>pursuant to any lease or permit</u>," or the "<u>cancellation of any lease or permit</u>." 43 U.S.C. §§ 1334(a)(1), (2) (emphasis added); *see also* 30 C.F.R. § 585.422. The Lease incorporates those and other limits on "suspension" and "cancellation" of both the Lease and the COP. ECF No. 92-6 §§ 2, 8. Plaintiffs (like the Government) make no claim that the Revocation Decision satisfies any of these requirements. Thus, because BOEM's purported unlimited power to "reconsider" the COP approval would effectively nullify the express contractual and statutory cancellation and suspension requirements, OCSLA forecloses it. *Civ. Aeronautics Bd.*, 367 U.S. at 328; *see also Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 620 (2000). [7] US Wind is likely to succeed on is OCSLA claim.

> **d.    US Wind's Due Process Claims Are Likely to Succeed.**

The Government does not dispute that US Wind has a property interest in its Lease and COP Approval. Plaintiff seems to contest the point, but has no basis for doing so. "[A] property interest in a benefit" protected by the Due Process Clause results from "a legitimate claim of entitlement to it," as "defined by existing rules or understandings that stem from an independent source." *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (citation modified). Holders of "issued licenses" have a particularly strong claim for protection. *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Richardson v. Town of Eastover*, 922 F.2d 1152, 1156–57 (4th Cir. 1991).

---

[7] The cases Plaintiffs cite, none involving OCSLA, are distinguishable because the agency actions they addressed followed or did not contradict statutory reconsideration procedures. *See Sierra Club v. Nat'l Marine Fisheries Serv.*, 711 F.Supp.3d 522, 535–37 (D. Md. 2024) (reinitiation of consultation as provided by the Endangered Species Act); *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 339–41 (4th Cir. 2007) (cancellation of trademark registrations pursuant to a "discrete and narrow exception" to the Lanham Act); *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 414 (6th Cir. 2004) (remand pursuant to NEPA).

Consistent with these principles, courts routinely find protected property interests in governmental licenses and permits like the COP Approval and US Wind's associated Lease rights.[8]

The Government's only argument (echoed by Plaintiffs) is that it "'never deprived' US Wind of its property rights because it has not withdrawn, revoked, suspended, or taken any other action on the COP approval or the lease." ECF No. 106 at 16. That argument fails for all the reasons discussed above, *supra* at 5-9, but it is also irrelevant. It is elemental that the Due Process Clause provides a remedy not only for completed deprivations of property interests but also of "<u>threatened</u>" ones (emphasis added). *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12–16, (1978) (finding due process implicated by the "threat of termination of service"); *Snider Int'l Corp. v. Town of Forest Heights*, 906 F.Supp.2d 413, 423–24 (D. Md. 2012), *aff'd*, 739 F.3d 140 (4th Cir. 2014) (due process claim may be based on "the threatened deprivation of adequate procedures"). Here, the Government does not and cannot dispute that, at a minimum, it has made a clear threat to revoke the COP Approval.

The Government does not contest that, to the extent it has not already occurred, revocation of the COP Approval would constitute a deprivation of property. As the Government's own otherwise distinguishable case notes, deprivation may be established by a regulatory act "that deprives an owner of all economically valuable uses of the" property in question. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (citation omitted).[9] The Government acknowledges that, without the approved COP, US Wind cannot conduct "any activity" on its

---

[8] *See, e.g.*, *Richardson*, 922 F.3d at 1157–58 (business operator's license); *Bell*, 402 U.S. at 539 (driver's license); *Ihnken v. Gardner*, 927 F.Supp.2d 227, 236–38 (D. Md. 2013) (land use permit); *See also, e.g., Trinity Broad. of Fla., Inc. v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000) (FCC broadcast license); *Foss v. Nat'l Marine Fisheries Serv.*,161 F.3d 584, 588 (9th Cir. 1998) (NMFS fishing quota permit); *KTK Mining of Va., LLC v. City of Selma, Ala.*, 984 F.Supp.2d 1209, 1225–26 (S.D. Ala. 2013) (building permit); *P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston*, 696 F.Supp.788, 798 (D.R.I. 1988) (building permit).

[9] In *Sansotta*, the court recognized that interfering with ownership rights can constitute a due process violation, but found no violation because the town in that case was simply enforcing a traditional "nuisance ordinance." 724 F.3d at 541. No such issue is presented here.

13

Lease, thus precluding any valuable use of the Lease. Even "temporary or partial impairments to" US Wind's Lease and COP rights "merit due process protection." *Amoco Prod. Co. v. Fry*, 118 F.3d 812, 819 (1997) (quoting *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991)).

## III.    US WIND'S SHOWING OF IRREPARABLE HARM IS UNCONTROVERTED.

### a.    The Revocation Decision Irreparably Harms US Wind.

The Government's rebuttal to US Wind's irreparable harm relies almost exclusively on the fallacy—thoroughly debunked in US Wind's MTD Opposition and Section II.b. above—that BOEM has made no final decision. ECF No. 106 at 17–18.[10] In so doing, the Government effectively concedes (just as it has on the merits) that the substantive harms that US Wind has demonstrated flow from losing its COP approval meet the standard for a preliminary injunction. *Id.* at 17.[11] In any event, the Government's claim that it has not yet formally revoked the COP Approval is all the more reason to enjoin the Revocation Decision: for now, there is still time for this Court to prevent the harms that the Government implicitly concedes result from that decision.

Moreover, the Revocation Decision is irreparably harming US Wind *right now*. *See* Supp. Decl. ¶¶ 7-13. The Revocation Decision is currently preventing US Wind from conducting an array of necessary engineering and procurement activities to prepare for construction of the Project that it is entitled to build pursuant to OCSLA and its lease, *id.* ¶¶ 7–8, 11, which has adverse knock-on effects on, among other things, US Wind's lending rates, debt covenant compliance and engagement with vendors. *Id.* ¶¶ 9–10. These harms will endure absent injunctive relief.[12]

---

[10] Plaintiffs advance the same meritless argument in their opposition brief. ECF No. 107 at 13-14.

[11] *See Stenlund v. Marriott Int'l, Inc.*, 172 F.Supp.3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument[,] Plaintiff concedes the point.").

[12] Plaintiffs quote selectively from US Wind's declaration to argue that its harms should be discounted as "speculative, future injuries." ECF No. 107 at 16-18. This argument fails for several reasons. First, as discussed, the Government has made a final decision to vacate US Wind's COP approval; US Wind's harms flow directly from that decision and are therefore imminent and not speculative. Second, the fact that US Wind acknowledges some uncertainty regarding the precise degree of several of the impacts does not render its harm "speculative." In any event, the vast majority of

     **b.**     **US Wind Did Not Delay Its Motion for a Preliminary Injunction.**

The Government also makes the farcical claim that US Wind has not been irreparably harmed because of the timing of its preliminary injunction motion. ECF No. 106 at 18–19. The Court should give this argument no credence. Contrary to the predicate of this argument, US Wind filed its motion just 33 days after the Government disclosed the legal and factual basis for its previously vaguely worded threats to seek "vacatur." That disclosure took place when the Government filed its September 12 Vacatur Motion (ECF No. 81), an event followed by weeks of shape-shifting of the Government's position, including September 18 statements to this Court that the Government did not need Court approval to disturb the COP. ECF No. 92-3. The Government then changed tack during a conference among the parties on September 26, 2025, announcing to US Wind and Plaintiffs that it was no longer going to "pursue" its Vacatur Motion, and instead would seek a stay of the case. The Government moved for a stay on October 2, 2025, ECF No. 86, US Wind opposed, and this Court denied it on the same day. ECF Nos. 87, 88. At the October 7, 2025 status hearing, the Government pivoted yet again, informing the Court that it no longer intended to withdraw its Vacatur Motion, but instead asked the Court to hold it in abeyance pending the outcome of the Court's decision on the merits of the case. On October 15, 2025, a mere eight days after the Government settled on a procedural posture for its Vacatur Motion, US Wind filed its Motion for a Preliminary Injunction. US Wind thus sought emergency relief within a timeframe that reflects the direness of its circumstances and the seriousness of the imminent

---

US Wind's imminent harms as a result of the Revocation Decision are either certain to occur or *have already occurred and are ongoing*. Suppl. Decl. ¶¶ 7-11; ECF No. 92-4 ¶¶ 37-48. Plaintiffs also suggest in passing that US Wind's harms may not be irreparable because they are economic or financial in nature. ECF No. 107 at 16. But as noted in US Wind's initial brief, economic harms from the inability to finish a project on time or obtain financing are routinely found to be irreparable. ECF No. 92-1 at 25; *see also, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828–29 (4th Cir. 2004) (granting preliminary injunction to keep pipeline project on schedule). This is particularly the case where, as here, sovereign immunity bars recovery of monetary damages under the APA. *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019), citing 5 U.S.C. § 702.

harm it faces. *See, e.g., Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 Fed. App'x 134, 138–39 (4th Cir. 2001) (finding that a one-year delay in the plaintiff's request for injunctive relief did not preclude a finding of irreparable harm as a matter of law where the plaintiff partially explained the delay and the defendant was not prejudiced by the delay).

### c.     US Wind's Corporate Structure is Immaterial.

Plaintiffs advance an argument that US Wind cannot face irreparable harm from the cancellation of its COP approval because it can just be "bail[ed] out" by its parent company. ECF 107 at 14–15. Courts within the Fourth Circuit have routinely found parent corporations irrelevant to the question of whether irreparable harm exists. *See, e.g., Atl. Coast Pipeline, LLC v. 5.63 Acres, More or Less, in Buckingham Cnty., Va.*, 2018 WL 1097051, at *15 (W.D. Va. Feb. 28, 2018) (holding that a party seeking a preliminary injunction's "relationship to its parent company is largely irrelevant to" the inquiry of harm); *see also Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, & Maintain a Nat. Gas Pipeline Over Tracts of Land*, No. 7:17-CV-00492, 2018 WL 648376, at *16 (W.D. Va. Jan. 31, 2018), *objections sustained in part and overruled in part on different grounds*, No. 7:17-CV-00492, 2018 WL 1193021 (W.D. Va. Mar. 7, 2018) (declining to "consider arguments about corporate structure" regarding a parent corporation "when evaluating the issue of harm.").[13] Indeed, consideration of parent corporations in the irreparable harm assessment is "akin to piercing the corporate veil," and "the corporate form is not to be lightly

---

[13] Plaintiffs support their argument by cherry-picking quotes from cases that are inapposite when read in full. In *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 140 F.Supp.3d 47 (D.D.C. 2015), the court found the financial strength of a parent company to be one of many factors counseling against a finding of irreparable harm, but relied primarily on the fact that plaintiff's alleged economic harm was fully compensable in litigation and "plaintiff's business remain[ed] robust." *Id.* at 52–54. Here, US Wind's harms are non-compensable and existential regardless of how much money its parent corporation may or may not. In *Petraco-Valley Oil & Refin. Co. v. U.S. Dep't of Energy*, 633 F.2d 184, 200 (Temp. Emer. Ct. App. 1980), the financial condition of the parent company was only relevant to irreparable harm inquiry because of a U.S. Department of Energy regulation requiring it to treat as a firm "a parent and the consolidated and unconsolidated entities (if any) which it directly or indirectly controls." No such regulation applies here. And *Mediplex of Mass., Inc. v. Shalala,* 39 F.Supp.2d 88, 100 (D. Mass. 1999), the subsidiary was *granted* a preliminary injunction, with the court holding that survival of parent company that "might be able to bail out Mediplex mitigates but does not eliminate this irreparable harm."

cast aside." *Severstal Exp. GMBH v. United States*, 39 ITRD 3084 (Ct. Int'l Trade 2018), citing *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998).

    **d.**    **Plaintiffs' " Cost of Doing Business" Argument Fails.**

Plaintiffs argue that US Wind cannot be irreparably harmed because the manifold financial and reputational losses associated with the revocation of its COP approval are simply a "cost[] of doing business" and the "self-inflicted consequences of commercial risk-taking." ECF No. 107 at 18–22 (citation modified). This argument is misplaced for several reasons.

First, Plaintiffs misapprehend the harms US Wind would suffer if the Project was cancelled. Critically, those harms include the demise of US Wind's entire business, ECF No. 92-4 ¶¶ 51–52, which no one contests would be an irreparable loss arising from the revocation of US Wind's COP approval. Moreover, the $320 million that US Wind has spent on the Project thus far, *id.* ¶¶ 53–65, which includes expenditures that post-date COP approval, *id.* ¶¶ 35–36, Supp. Decl. ¶ 4, was part of the ordinary sunk costs of project development. If US Wind is able to build and operate the Project, those costs will naturally be recovered as part of its expected revenues and profits. ECF No. 92-4. ¶ 66. If the Government succeeds in killing the Project, the vast majority of these expenditures will be irreparably lost. *Id.* ¶ 53.

Second, the policy implications of Plaintiffs' argument are staggering. By Plaintiffs' logic, no project developer should ever invest any money in reliance on the Federal government obeying its own statutes, regulations, and contracts—let alone respecting the finality of its permit approvals. *See* ECF No. 107 at 21–22 (scolding US Wind for continuing to invest in the Project while the Trump administration was "vocally express[ing] opposition to offshore wind," shutting down offshore wind permitting in the Wind Memo, and "reinstat[ing] a more restrictive interpretation of OCSLA[.]"); *c.f.* Supp. Decl. ¶ 4 (describing US Wind's reasonable reliance on the integrity of its contractual and statutory rights).

Plaintiffs cite no cases that support this dystopian vision.[14] And indeed, multiple courts have recognized that actions jeopardizing prior investments or contracts (even in heavily regulated industries) can constitute irreparable harm to justify preliminary injunctive relief. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 219 (4th Cir. 2019) (holding that service contracts entered into by pipeline prior to final approvals were not "self-inflicted" harms that prevented a preliminary injunction); *see also Bracco Diagnostics, Inc. v. Shalala*, 963 F.Supp.20, 29 (D.D.C. 1997) (finding irreparable harm to medical device company after decision by the FDA where the company undertook substantial investment of time and money that "can never be recouped"). Far from negating US Wind's irreparable harms, Plaintiffs' backwards logic succeeds only in shining a spotlight on the unduly politicized nature of the Government's decision-making process—itself a violation of the APA. ECF No. 92-1 at 24.

## IV. THE GOVERNMENT AND PLAINTIFFS FAIL TO DEMONSTRATE THAT A PRELIMINARY INJUNCTION WILL HARM THEM, OR THAT THEY ARE ACTING IN THE PUBLIC INTEREST

Neither the Government nor Plaintiffs describe with any specificity how a preliminary injunction that keeps the Government from breaking the law and violating US Wind's rights would harm the Government's interests. Nor do they undercut the innumerable reasons the Project is in the public interest.

The Government obliquely references "Interior's obligation to ensure responsible and safe use of the OCS" and quotes its statutory obligations under OCSLA, ECF No. 106 at 19–20, but in

---

[14] The cases Plaintiffs cite are inapposite. In *Seko Customs Brokerage, Inc. v. United States*, 719 F.Supp.3d 1279, 1288 (Ct. Int'l Trade 2024), the court declined to find irreparable harm arising out of the imposition of penalties on the plaintiff for failing to comply with regulations. *Id.* at 1288. This case is the polar opposite: the Government has not alleged that US Wind has done anything wrong; rather, US Wind faces harms arising from the *Government's* conduct. And in *Scotts Valley Band of Pomo Indians*, No. 1:25-CV-00958 (TNM), 2025 WL 1639901 (D.D.C. June 10, 2025), the court found no irreparable harm where the plaintiffs did not actually show that they lost any money on contracts that were canceled as a result of the rescission of an agency decision. *Id.* at *4. That is markedly different from US Wind's circumstances, where it has expended $320 million and its existence is in jeopardy. ECF No. 92-4 ¶¶ 51-65.

fact, US Wind's requested injunction would *help* the Government to proceed in accordance with its OCSLA obligations by, *inter alia*, ensuring it complies with its obligations under US Wind's lease. *See* ECF No. 92-1 at 15–18; *see also Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 771 F.Supp.3d 717, 808 (D. Md. 2025) (citations and quotations omitted) ("Logically, there is generally no public interest in the perpetuation of unlawful agency action. On the other hand, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.").[15]

Plaintiffs, for their part, seek to distract this Court from the myriad harms that the cancellation of the Project would cause to US Wind and the residents of Maryland and Delaware by submitting a non-expert declaration, signed by the very individual who has spearheaded Plaintiffs' political lobbying campaign against the Project which fails to rebut the benefits of the Project described by US Wind, the State of Maryland, the State of Delaware, and United Steelworkers. *Compare* ECF No. 107-1 with ECF No. 92-4 ¶¶ 67–77, ECF No. 98 (State of Delaware Amicus Brief), ECF No. 102 (State of Maryland Amicus Brief), ECF No. 104 (United Steelworkers Amicus Brief); *see also* February 11, 2025 Letter from D. Stevenson *et al.* to Sec. Burgum[16] (urging Sec. Burgum to revoke permits held by numerous offshore wind projects, including the Project). Mr. Stevenson's declaration does not establish his credentials to opine on any of the covered topics, and most of the arguments made therein have already been advanced in

---

[15] The Government unconvincingly asserts that "the government's interest is the public interest," ECF No. 106 at 19–20, *citing Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016). This case does *not* stand for the proposition that anything the Government seeks to do is *per se* in the public interest, and indeed the D.C. Circuit there enjoined the defendant federal agency after finding that (as here) the public's interest in protecting constitutional rights overrides narrower agency interests. *Id.* at 511-512.

[16] *See* Letter from David Stevenson *et al.* to Sec. Burgum at DOI (Feb. 11, 2025) *available at* https://www.cfact.org/wp-content/uploads/2025/02/CFACT-Letter-to-Secretary-Burgum.pdf

comments on public dockets where decision-makers were able to fully consider them.[17] This Court should thus give Mr. Stevenson's declaration no weight in determining that the balance of equities and public interest favor the issuance of a preliminary injunction.

## V.    CONCLUSION

For the foregoing reasons, this Court should grant US Wind's request for preliminary injunctive relief.

*[signatures follow]*

---

[17] *See* Letter from David Stevenson to Delaware Department of Natural Resources and Environmental Control (June 5, 2024), *available at* https://documents.dnrec.delaware.gov/Admin/Hearings/2024-P-MULTI-0007/comments/David-Stevenson-Attachment.pdf (advancing nearly identical arguments regarding project emissions reductions, tourism); Letter from David Stevenson to BOEM (Oct. 23, 2023), *available at* https://www.regulations.gov/comment/BOEM-2023-0050-0087 (same).

Dated: December 5, 2025

Respectfully submitted,

By: */s/ Toyja E. Kelley*
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)
Emily Huggins Jones (*pro hac vice*)
Gregory L. Waterworth (D. Md. Bar No. 20938)
**TROUTMAN PEPPER LOCKE LLP**
701 8th Street, N.W., Suite 500
Washington, D.C. 20001
Telephone: (202) 220-6900
Facsimile: (202) 220-6945
toyja.kelley@troutman.com
emily.hugginsjones@troutman.com
greg.waterworth@troutman.com

Hilary Tompkins (*pro hac vice*)
Sean Marotta (*pro hac vice*)
**HOGAN LOVELLS US LLP**
555 13th Street N.W.
Washington, D.C. 20004
Telephone: (202) 637-5617
hilary.tompkins@hoganlovells.com
sean.marotta@hoganlovells.com

David Newmann (*pro hac vice*)
**HOGAN LOVELLS US LLP**
1735 Market St., 23d Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
david.newmann@hoganlovells.com

*Attorneys for Defendant-Intervenor and Crossclaim Plaintiff US Wind, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on December 5, 2025, I filed and served the foregoing motion on counsel of record through this Court's CM/ECF system.

By: *<u>/s/ Toyja E. Kelley</u>*
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)