IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MAYOR AND CITY COUNCIL OF OCEAN CITY, MARYLAND,** *et al.* | * * * * |
| Plaintiffs, | * * |
| v. | Civil Case No.: SAG-24-03111 |
| | * * |
| **UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.* | * * * |
| Defendants/Cross-Defendants, | * * * |
| and | * * |
| **US WIND, INC.** | * * |
| Defendant-Intervenor/Cross-Plaintiff. | * |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case concerns Defendant-Intervenor US Wind, Inc.'s longstanding plan to construct an offshore wind project off the Atlantic Coast of Maryland. ECF 32. After the Department of the Interior ("DOI") approved the Construction and Operations Plan ("COP") for this project, a large group of public and private entities (collectively, "Plaintiffs") challenged the approval in this lawsuit against the DOI, the Bureau of Ocean Energy Management ("BOEM"), the National Marine Fisheries Service, and representatives of those agencies in their official capacities (collectively, "Federal Defendants"). *Id.* US Wind, which intervened in the lawsuit, has now filed a motion for preliminary injunction to enjoin what it perceives as the government's decision to revoke the COP. ECF 92. Both Federal Defendants, ECF 106, and Plaintiffs, ECF 107, opposed this motion, and US Wind filed a reply, ECF 121. On December 10, 2025, this Court held a hearing

on the motion. ECF 125. For the reasons explained below, US Wind's motion for preliminary injunction will be denied.

I. **BACKGROUND**

US Wind holds a lease to construct and operate an offshore wind project off the Atlantic Coast of Maryland. ECF 32 ¶ 55. In December, 2024, the DOI formally approved US Wind's COP for this project. *Id.* ¶ 62. Plaintiffs brought this suit challenging the COP approval on several grounds. *See generally id.*

Shortly thereafter, President Trump took office and issued an executive memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects." 90 Fed. Reg. 8363 (Jan. 20, 2025) (the "Presidential Wind Memo"). That memorandum directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President." *Id.* It also prohibits the issuance of new or renewed approvals of wind energy projects, pending a review of current wind leasing and permitting practices. *Id.* A court in the District of Massachusetts recently vacated as violative of the Administrative Procedure Act ("APA") an order issued by the Acting Secretary of the Interior implementing the suspension of new and renewed approvals pursuant to the Presidential Wind Memo. *New York v. Trump*, Civ. No. 25-cv-11221-PBS, 2025 WL 3514301, *18 (D. Mass. Dec. 8, 2025).

In September, 2025, following actions in this and other cases that US Wind perceived as indicating hostility to wind projects generally and an intent to revoke the COP approval for this project specifically, US Wind amended its answer to lodge cross claims against Federal

2

Defendants. ECF 77. As pertinent here, US Wind has alleged that the government's revocation of the COP approval violates the APA, the Outer Continental Shelf Lands Act ("OCSLA"), and the Due Process Clause of the Fifth Amendment. *Id.*

Shortly thereafter, Federal Defendants filed a motion to remand and vacate the COP approval, citing BOEM's intent to reconsider the COP approval pursuant to the Presidential Wind Memo. ECF 81. Alongside this motion, Federal Defendants filed a declaration of Adam Suess (the "Suess Declaration"). ECF 81-1.

The following facts are derived from the Suess Declaration. *Id.* Adam Suess is the acting Assistant Secretary for Land and Minerals Management for the DOI, and, as part of that role, he oversees BOEM. *Id.* ¶¶ 1–2. The Acting Solicitor for the DOI has withdrawn a prior Solicitor's opinion interpreting OCSLA and has directed offices within the DOI to reevaluate any action that relied on the prior opinion. *Id.* ¶ 11. Pursuant to that opinion and the Presidential Wind Memo, DOI is reviewing the COP approval. *Id.* ¶ 12. Based in part on its reliance on the prior Solicitor's opinion, Mr. Suess believes that the DOI's decision to approve the COP did not comply with OCSLA. *Id.* ¶¶ 12–15. Mr. Suess states, "Were the Court to remand and vacate the COP Approval decision, the Department would review the COP, and upon completion of any required technical and environmental reviews, BOEM would reach a new decision on the COP: to either approve, disapprove, or approve with conditions." *Id.* ¶ 16.

This Court denied Federal Defendants' motion to remand and vacate without prejudice, concluding that it needed the administrative record to determine whether remand or vacatur is appropriate but not precluding BOEM from conducting an internal reevaluation of the COP approval. ECF 118. In response to this motion and the Suess Declaration, US Wind filed the instant

3

motion for preliminary injunction, seeking to enjoin implementation of what it perceives as a decision to revoke the COP. ECF 92.

During the hearing held on the instant motion, US Wind represented that it is not currently awaiting any federal approval or response to any filing related to the project. However, it is also not currently proceeding with the next steps in developing the project, such as completing the Facility Design Report, because of the significant cost of that undertaking and the risk that US Wind would lose that investment given the alleged decision to revoke the COP approval. Federal Defendants, in turn, represented that DOI has begun reevaluating existing leases pursuant to the Presidential Wind Memo but has not yet begun its reevaluation of this project.

## II.   LEGAL STANDARD

A preliminary injunction is warranted when the movant demonstrates four elements: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The movant must establish all four elements to prevail. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

A preliminary injunction affords "an extraordinary and drastic remedy" prior to trial. *See Munaf v. Green*, 553 U.S. 674, 689–90 (2008); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating that preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances") (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). Because preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are

particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.* (quoting *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)).

### III. DISCUSSION

US Wind argues that the Suess Declaration, and the motion to remand and vacate filed with it, reveal that BOEM has decided to revoke the COP approval. As an initial matter, this Court is skeptical that a declaration prepared in the context of litigation, largely phrased in terms of a government official's own personal views, could reflect any decision on behalf of an agency. For the purpose of this motion, however, this Court will construe the declaration as reflecting the views of BOEM, because it is clear that US Wind has not met its burden of showing that BOEM has adopted any final agency action to revoke the COP approval.

As pertinent here, Federal Defendants and Plaintiffs argue that US Wind has not demonstrated likelihood of success on the merits of any of its cross claims because the issues involved are not yet ripe. For largely the same reasons, they further contend that US Wind has identified no final agency action that could support its APA claims specifically. In the administrative context, the ripeness doctrine prevents "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967). Similarly, the APA provides that only "final agency action" is "directly reviewable" by a court. 5 U.S.C. § 704.

Both the Supreme Court and the Federal Circuit appear to have viewed questions of ripeness and final agency action as coextensive when an agency action is at issue. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 239–43 (1980) (analyzing agency action under the ripeness test and concluding that the agency action was not final); *see also U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348–50 (Fed. Cir. 2005) (applying the same analysis to determine whether an action constituted "final agency action ripe for review"); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362–64 (Fed. Cir. 2008) (considering both the final agency action and ripeness tests and noting that non-final agency action is not ripe for review). Accordingly, this Court will consider both the ripeness and final agency action tests together.

In determining whether a case is ripe, a court must consider both the fitness of the issues involved for judicial review and the hardship to the parties from delaying judicial review. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* A claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581 (1985)).

Final agency action, in turn, requires that the agency action (1) marks the "'consummation' of the agency's decisionmaking process," rather than "a merely tentative or interlocutory" decision, and (2) is "one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (first quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970). A court

6

must conduct a practical, rather than formalistic, review of an agency action to determine whether it is final. *See Fort Sumter Tours, Inc. v. Andrus*, 440 F. Supp. 914, 918 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977) ("[I]t is not the label affixed to the action of the agency, but rather a realistic appraisal of the consequences of the action which must govern.").

US Wind has failed to satisfy the first prong of both tests because it has pointed to no action that marks the "consummation" of a decision-making process, and because future uncertainties remain. A "threshold determination that further inquiry is warranted" does not constitute a final agency action ripe for review. *See Standard Oil*, 449 U.S. at 241 (concluding that an agency's complaint averring "reason to believe" that a company had violated a statute was not final agency action because it was not a definitive statement of position and served only to initiate further investigation); *see also Tokyo Kikai Seisakusho*, 529 F.3d at 1363–64 (citing *Standard Oil* and concluding that an agency's stated intent to reopen review on an issue did not constitute final agency action because it did not mark the consummation of a decision-making process). The Suess Declaration states an intent to reexamine the COP, or a "threshold determination that further inquiry is warranted." Furthermore, although it suggests that the analysis underlying the COP approval was flawed, it expresses no view of the ultimate legality of the COP. Rather, it states an intent to further examine that question. ECF 81-1 ¶ 16.

The facts here closely resemble those in *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025). That case involved actions from which plaintiffs had inferred that interim agency leadership had determined to shut down the Consumer Financial Protection Bureau, a purported final agency action. *Id.* Specifically, interim agency leadership had closed agency headquarters, cancelled several contracts, terminated many employees, and paused most agency activities while they were evaluated for "consistency with the goals of the Administration." *Id.* at

7

771–72. The court concluded that the challenge to the purported agency shutdown was not yet ripe. *Id.* at 785. The court reasoned that even if the interim leadership had made "an abstract decision" to shut down the agency, that decision was not final because agency consideration remained ongoing and there remained opportunities to change course before the decision resulted in the denial of any agency service. *Id.* at 786. More specifically, the court determined that an agency-wide email from interim leadership directing employees to cease all work without prior approval did not constitute final agency action because it did not mark the consummation of any decision-making process or definitively decide anything. *Id.* at 781–82. Rather, it reflected a new administration's attempt to assess agency activities. *Id.* at 781.

As in *Vought*, the Suess Declaration reflects a new administration's clear intent to reassess the prior action of an agency. US Wind has understandably inferred from the Suess Declaration (and the multitude of indications from this Administration of its hostility to wind energy projects generally) that BOEM has already decided that it will revoke the COP. But no such decision has yet been made final. Even if the Suess Declaration reflects "an abstract decision" to revoke the COP, as in *Vought*, agency consideration remains ongoing, and there remain opportunities for BOEM to depart from that inferred abstract decision before any decision resulting in the denial of an agency service, such as an approval necessary to continue development, is made. Accordingly, US Wind's claims are not ripe because they depend upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

Furthermore, US Wind has failed to satisfy the second prong of both the ripeness and final agency action tests because it has identified no action from which "legal consequences will flow" or that could support a conclusion that US Wind faces a legally cognizable hardship. Regarding the hardship prong, the Supreme Court in *Abbott Laboratories v. Gardner* recognized a significant

8

cost in having to choose between complying with an agency decision or facing civil or criminal liability. 387 U.S. at 152–53. In contrast, "any business uncertainty associated with awaiting a final decision from an agency is different in kind and legal effect from the hardship identified in *Abbott Laboratories* and insufficient to turn a threshold agency decision into a final agency action ripe for review." *U.S. Ass'n of Importers of Textiles & Apparel*, 413 F.3d at 1350 (rejecting argument that actions "based on the businesses' perceived uncertainty concerning whether, when, and to what extent import relief might be imposed in the future, but not on any legally binding requirement presently imposed" constituted hardship).

Here, even if the Suess Declaration could be interpreted as reasonably reflecting a decision to revoke the COP in the future, that decision has not yet had any legal effect. Instead, the approved COP remains in effect, so unlike in *Abbott Laboratories*, no law would impose civil or criminal liability on US Wind if it continued to develop the project. Although US Wind has understandably chosen to cease its activities related to the project because it does not want to risk further loss of investment if the COP is eventually revoked, that choice is a strategic business choice, rather than one compelled by the threat of legal liability. As understandable and significant as US Wind's "business uncertainty" is under these circumstances, as in *U.S. Ass'n of Importers of Textiles & Apparel*, that uncertainty cannot transform the actions at issue here, which have imposed no "legally binding requirement," into final agency action.

*Vought*, again, is instructive. In that case, the court noted that the actions allegedly reflecting a decision to shut down the agency did not require the plaintiffs to engage in or refrain from any conduct. *Vought*, 149 F.4th at 787. Furthermore, the court reasoned that "if [the plaintiffs'] fears come to pass," they could protect all of their rights by bringing suit at that juncture. *Id.* Although the court acknowledged that the plaintiffs had to wait to do so until the

agency denied them "a discrete service," it concluded that that delay was "not a hardship," but "par for the course," even in cases in which "plaintiffs' lives and livelihoods" depend on prompt delivery of services. *Id.*

US Wind similarly must wait to see "if [its] fears come to pass" and BOEM makes some decision that has some legal consequence, such as the denial of "a discrete service" that US Wind needs from BOEM to continue its project or a formal revocation of the COP, which would legally preclude US Wind from continuing its project. This Court acknowledges the risk to US Wind in further investment to reach that point but, like the *Vought* Court, perceives nothing unusual about such a requirement, even in cases involving dire circumstances. Accordingly, US Wind has failed to demonstrate that the purported decision to revoke the COP has subjected it to any legal consequences or legally cognizable hardship.

This Court is not persuaded otherwise by two cases that US Wind emphasized during the hearing on its motion. One of them, *Fort Sumter Tours, Inc. v. Andrus*, involved a National Park Service concessioner that, as a "satisfactory concessioner," was entitled to a statutory preference over other bidders in the renewal of its contract. 440 F. Supp. at 916. During negotiations concerning the renewal, the Park Service alerted the plaintiff concessioner that it had lost its statutory preference and that the Park Service would negotiate a new contract with another bidder. *Id.* at 917. Both the district court and Fourth Circuit concluded that the question of whether the Park Service had unlawfully deprived the plaintiff of its statutory preference was ripe for review even before the Park Service awarded the contract to the other bidder. *Id.* at 919; *Fort Sumter Tours*, 564 F.2d at 1123. The Fourth Circuit reasoned that the agency's interpretation of the statutory preference and its application to the plaintiff had "become fixed" such that no further agency action regarding the plaintiff was contemplated. *Fort Sumter Tours*, 564 F.2d at 1123. In

contrast, here, no decision to revoke the COP has become fixed. Even if the Suess Declaration were interpreted as reflecting a fixed decision by BOEM that the new Solicitor's opinion applies to the COP, thereby fixing a new interpretation of OCSLA as regards the COP, the Suess Declaration itself contemplates further agency action to determine the application of that revised interpretation to the COP. ECF 81-1 ¶ 16.

The other case, *Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023), bears even less resemblance to this case. In *Clarke*, the Fifth Circuit concluded that an agency's withdrawal of a no-action letter constituted final agency action. *Id.* at 639. The court determined that legal consequences flowed from the no-action letter, which withdrew the agency's discretion and therefore bound it. *Id.* at 638. The withdrawal of the letter restored that discretion to take action. *Id.* As a result, the plaintiffs had to either change their conduct or risk liability. *Id.* at 639. As described above, however, no decision to date has compelled US Wind to change course or risk legal liability. US Wind may continue to develop the project under the approved COP that remains in force. It simply has made a business decision not to do so in light of the political headwinds it perceives.

Accordingly, this Court concludes that US Wind has failed to identify any action by Federal Defendants constituting final agency action ripe for review. Because this Court may not review non-final agency action until there exists final agency action, US Wind has not satisfied its burden of demonstrating likelihood of success on the merits of its claims. Thus, US Wind's motion for preliminary injunction must be denied, without prejudice to its renewal at a later date.

## IV. CONCLUSION

For the reasons stated above, US Wind's motion for preliminary injunction, ECF 92, will be denied. A separate Order follows.

Dated: December 15, 2025

/s/
Stephanie A. Gallagher
United States District Judge