**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF OCEAN CITY, MARYLAND, *et al.*, )<br>)<br>*Plaintiffs*, )<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF INTERIOR, *et al.*, )<br>)<br>*Federal Defendants*, )<br>and )<br>)<br>US WIND, INC. )<br>)<br>*Defendant-Intervenor*. )<br>_____ ) | Case No.: 1:24-cv-03111-SAG |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT-INTERVENOR'S CROSS CLAIMS**

# INTRODUCTION

US Wind's cross claims against Federal Defendants should be dismissed. As this Court recently held in denying US Wind's motion for preliminary injunction (Dkt. No. 127) ("Mem. Op."), Federal Defendants have not taken any action with respect to the prior COP approval or US Wind's lease. Thus, US Wind has not challenged a final agency action and the cross claims are unripe. And because no present, legal conflict exists between US Wind and Federal Defendants, US Wind's claims seeking declaratory judgment are not justiciable. US Wind has therefore failed to show that this Court has jurisdiction over any of its cross claims, so this Court should dismiss them all.

US Wind's OCSLA and procedural due process claims should also be dismissed for failure to state a claim. US Wind does not dispute that it failed to comply with OCSLA's sixty-day notice provision and has not otherwise shown that any exception to OCSLA's notice requirement applies. Nor has US Wind shown the deprivation of any protected property interest that could give rise to a due process claim.

The Court should therefore dismiss US Wind's cross claims for lack of jurisdiction and failure to state a claim.

# ARGUMENT

**I.     This Court lacks jurisdiction over US Wind's cross claims.**

The Court should dismiss US Wind's cross claims for a lack of jurisdiction. US Wind's APA, OCSLA, and due process claims all challenge the same alleged action: the government's alleged decision to revoke the COP. But US Wind failed to allege facts sufficient to show that the government has in fact made a final decision on the COP that is ripe for review. And US Wind cannot show a present legal conflict with Federal Defendants, as required for jurisdiction over its declaratory judgment claims.

### A. US Wind identified no action by Federal Defendants constituting final agency action ripe for review.

US Wind's APA, OCSLA, and due process claims, Counts I–V, should be dismissed without prejudice. As the Court has already found, BOEM's threshold determination that the COP approval must be reevaluated is just that: a decision to reevaluate. It is not a final agency action regarding the COP. That decision is yet to be made and is therefore not ripe for review. *See* Mem. Op. 5–11. US Wind has not met the tests for either ripeness or final agency action because (1) the decision to reevaluate does not mark the consummation of the agency's decisionmaking process with respect to the COP, which depends on future uncertainties; and (2) US Wind has not shown any legal consequences from the reevaluation process.[1] US Wind's effort to cobble together a final agency action for various agency statements or internal directives is not supported in law or fact.

#### 1. US Wind fails to allege any action that is the consummation of BOEM's decision making, and future uncertainties remain.

US Wind's allegations fail to satisfy the first prong of both the ripeness and final agency action tests. The only decision BOEM has made is to reevaluate the COP approval. The Suess Declaration is not, and does not purport to be, BOEM's final word on the COP. Instead, the Suess Declaration noted that the analysis of the COP approval was flawed, so BOEM intends to reevaluate the COP approval and apply the correct legal standard. Suess Decl. ¶ 16, Dkt. No. 81-1. That decision to reevaluate is a "threshold determination that further inquiry is warranted" and is not a final agency action ripe for review. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980). When the reevaluation is complete, BOEM may approve the COP, disapprove, or approve with conditions. Suess Decl. ¶ 16. Until that happens, the agency may still "change course," meaning there

---

[1] In its opposition, US Wind contends that it is Federal Defendants' burden to prove it is entitled to prevail as a matter of law. Opp'n to Mot. to Dismiss 9, 16, Dkt. No. 122 ("Opp'n"). That contention is wrong. In the Fourth Circuit, both ripeness and final agency action are jurisdictional, and "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

has been no consummation of BOEM's decisionmaking process. *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1363 (Fed. Cir. 2008) (finding that a memorialized intention to reopen review was not a "final agency action" under the APA, in part because it "leaves room for [the agency] to change course"). No matter what decision the agency ultimately makes, the agency should be provided with the opportunity to state its reasons and bases for that action. Granting immediate judicial review would deny BOEM "an opportunity to correct its own mistakes." *Standard Oil*, 449 U.S. at 242.

As the Court has already explained in denying US Wind's preliminary injunction motion, the cases emphasized by US Wind do not persuade otherwise. The claims in those cases were found to be ripe because they involved "fixed" agency actions with immediate legal consequences. In *Fort Sumter Tours, Inc. v. Andrus*, the agency's denial of a statutory preference was a final determination requiring no further action. 564 F.2d 1119, 1123 (4th Cir. 1977). Similarly, in *Clarke v. Commodity Futures Trading Commission*, the withdrawal of a no-action letter was not subject to any further agency review and it immediately forced the plaintiffs to change their conduct to avoid liability. 74 F.4th 627, 638–39 (5th Cir. 2023). In contrast, BOEM has not revoked or taken any other action with respect to the COP, and the Suess Declaration explicitly contemplates further agency action. Because the COP approval remains in force, US Wind's decision to halt development is a voluntary business choice rather than the result of a compelled decision.[2]

---

[2] In the motion to dismiss, Federal Defendants cited *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 786 (D.C. Cir. 2025) for support that the agency actions were not final and unripe. On December 17, 2025, the D.C. Circuit granted en banc review and vacated the panel's judgment that vacated the lower court's preliminary injunction. "As a consequence, the panel's decision has 'no precedential value.'" *United States v. Weathers*, 186 F.3d 948, 953 n.4 (D.C. Cir. 1999). The other cases cited in the motion amply support the same propositions. *See, e.g.*, *Mayor & City Council of Baltimore v. Consumer Fin. Prot. Bureau*, 775 F. Supp. 3d 921, 945 (D. Md. 2025).

3

"Accordingly, US Wind's claims are not ripe because they depend upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Mem. Op. 8 (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

### 2. US Wind has not identified any action from which "legal consequences will flow" or that could support a conclusion that US Wind faces a legally cognizable hardship.

US Wind also cannot demonstrate "adverse effects of a strictly legal kind" necessary to meet the second prong of both the ripeness and final agency action tests. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). There has been no change in US Wind's legal position during the reevaluation, as both the COP approval and lease are still in effect and US Wind maintains all rights under those approvals during the reevaluation. And US Wind cannot allege BOEM has denied them anything from which legal consequences could flow, as they have not recently taken any steps to move the development forward. *See* Mem. Op. 4 (noting "US Wind represented that it is not currently awaiting any federal approval or response to any filing related to the project"). During the reevaluation, US Wind is "free to conduct its business as it sees fit," *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003), and is in no risk of facing any civil or criminal liability if it keeps moving forward with post-COP plans necessary for construction.

The hardships US Wind has raised relate to business decisions. Opp'n 15, 23–24. But "any business uncertainty associated with awaiting a final decision from an agency is … insufficient to turn a threshold agency decision into a final agency action ripe for review." *U.S. Ass'n of Imps. of Textiles & Apparel v. United States*, 413 F.3d 1344, 1350 (Fed. Cir. 2005) (citing *Standard Oil*, 449 U.S. at 242). Requiring US Wind to wait until a final decision is made or until the agency denies it a discrete service does not amount to hardship. Indeed, there is "nothing unusual" about having to face risks to investments while waiting for a decision that has some legal consequence. Mem. Op. at 10; s*ee also Standard Oil*, 449 U.S. at 243 (issuance of an administrative complaint "had no

4

legal force or practical effect upon [plaintiff's] daily business other than the disruptions that accompany any major litigation.").[3]

Contrary to US Wind's contentions, *Pacific Gas & Electric Company v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190 (1983), does not support the company's hardship claims. *See* Opp'n 15. In *Pac. Gas & Elec.*, the Supreme Court found that a challenge to a California law that put a moratorium on new nuclear power plant construction was ripe because the preemption challenge to that provision required no "further development." 461 U.S. at 201. It found, however, that a challenge to a second provision that required case-by-case storage determinations before new construction could be approved was unripe. *Id.* at 203. Because the Energy Commission had not yet made those determinations, the Court could not know how the decision would affect the plaintiffs and judicial consideration had to "await further developments." *Id.* This case resembles the latter provision that the Court found unripe. The reevaluation of the COP is project specific and yet to be completed, so the Court "cannot know" how BOEM will decide. *Id.* If BOEM once again approves the COP, US Wind's challenge would be unnecessary and moot; and if it disapproves the COP or approves with modifications that US Wind finds unpalatable, US Wind can challenge that decision at that time (assuming other jurisprudential requirements are met). "In these circumstances, a court should not stretch to reach an early, and perhaps premature, decision" as to US Wind's claims. *See id.*

"Accordingly, US Wind has failed to demonstrate that the purported decision to revoke the COP has subjected it to any legal consequences or legally cognizable hardship." Mem. Op. 10.

---

[3] Because BOEM has not taken any action on US Wind's lease or the prior COP approval, US Wind also lacks the causation necessary for Article III standing for its cross claims. BOEM's reevaluation does not create any "palpable and imminent" injury-in-fact for US Wind, see *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). And the possibility that a future decision may harm US Wind's interest is not sufficient for Article III purposes. The Court could therefore also dismiss US Wind's APA, OCSLA, and due process claims for lack of standing.

5

### 3. US Wind cannot create a final agency action through a collection of decisions.

As shown in Federal Defendant's motion and above, there is no ripe or final decision that could give rise to US Wind's cross claims. Faced with this conclusion, US Wind changed course. In each brief filed in response to the various motions related to the cross claims, US Wind has expanded its challenge to now include the effects of the Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* ("Presidential Wind Memo"), 90 Fed. Reg. 8363, 8363 (Jan. 20, 2025); the May 2025 M-Opinion 37086 ("Zerzan Opinion"); and Federal Defendants' motion to remand and vacate (Dkt. No. 81) supported by the Suess Declaration (Dkt. No. 81-1). That collection of government directions and interpretations cannot form a single action that is final and ripe.

*First*, none of those documents are alleged in the cross claims to be the purported agency action that US Wind challenges. *See generally* Am. Answer, Dkt. No. 77. The cross claims do not mention or cite the Presidential Wind Memo or the Zerzan Opinion, and it was impossible to cite the motion for remand or the Suess Declaration because US Wind filed its cross claims nine days *before* the government filed its motion. Thus, the cross claims would suffer from a pleading failure. And US Wind "may not introduce new allegations or new facts in an opposition to a defendant's motion to dismiss." *Hooker v. Disbrow*, No. 1:16-CV-1588-GBL-JFA, 2017 WL 1377696, at *4 (E.D. Va. Apr. 13, 2017).

*Second*, US Wind's attempt to create a final agency action that is ripe by combining the effects of policy decisions, statutory interpretations, and legal briefs should be rejected. The agency conduct challenged must be "specific," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990), and "discrete," *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019). The challenged conduct thus cannot be, as US Wind asserts in its opposition, a "series of actions" taken

6

over several "weeks." Opp'n 4. US Wind's attempt show that a single final decision has been made by pointing to "many individual actions" therefore fails. *See Nat'l Wildlife*, 497 U.S. at 893.

Looking at each of the alleged decisions individually confirms what this Court has previously held—the agency action challenged is unripe and not final. Starting with the Presidential Wind Memo, US Wind argues in its opposition that the government decision is final because section 2(a) of the Presidential Wind Memo would not allow BOEM to approve the COP. Opp'n 18–19. But section 2(a) of the Presidential Wind Memo did not direct anything with respect to US Wind's COP and does not even mention the project. In any event, Interior's purported decision to implement section 2(a) of the Presidential Wind Memo has now been vacated and therefore cannot support US Wind's theory. *New York v. Trump*, No. 25-CV-11221-PBS, 2025 WL 3514301, at *18 (D. Mass. Dec. 8, 2025).

Turning next to the Zerzan Opinion, US Wind argues in its opposition that the Zerzan Opinion "changed the legal standard." Opp'n 22-23. But that M-Opinion does not dictate any one outcome for the individual approvals that are under review and it has not affected the legal rights or obligations for US Wind. Nor, as explained above, has the M-Opinion's interpretation been applied to US Wind's COP. *See* Suess Decl. ¶ 16.

Last, US Wind in its opposition points to the motion to remand and the Suess Declaration as evidence that a final decision is made. Opp'n 18. But as the Court already found, the Suess Declaration merely "states an intent to reexamine the COP." Mem. Op. 7. And while the Suess Declaration "suggests that the analysis underlying *the COP approval* was flawed, it expresses no view of the ultimate legality of *the COP*." *Id.* (emphasis added). As part of the reevaluation, BOEM will reconsider the COP under OCSLA 8(p)(4). Suess Decl. ¶¶ 12–16. But that review is still ongoing, and no decision has been made as to whether the COP should have been approved, disapproved, or approved with modification. *See id.* ¶ 16.

7

After disposing of these materials, all that is left is the decision to reevaluate the COP approval. As shown above, and as this Court already found, that decision is not justiciable. US Wind argues, however, that BOEM's decision to review the COP approval is foreclosed by statute. Opp'n 13–14. That contention is wrong. The statutes, regulations, and lease provisions US Wind cites apply only to a lease "suspension" and "cancellation," not a reevaluation. Opp'n 14 (citing 43 U.S.C. §§ 1334(a)(1), (2); 30 C.F.R. § 585.422; Dkt. No. 92-6 § 8). BOEM has not suspended or cancelled the lease, nor has BOEM issued a stop work order while it conducts its review. Those provisions therefore do not apply. And nothing in the statutes or regulations limit the agency's well-established and implicit statutory authority to reconsider its own decisions. *See FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009); *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007). OCSLA, in fact, provides the Secretary authority for continued oversight after COP approval. *See* 43 U.S.C. § 1337(p)(4) (stating in the present tense that "[t]he Secretary shall ensure that any activity under this subsection is carried out in a manner that provides for" the listed factors).

In sum, the Court should once again find that US Wind's cross claims are not based on any final agency actions and are not ripe for review. The cross claims should be dismissed.

### B. US Wind's declaratory judgment claims should be dismissed because no adverse legal interest exists between US Wind and Federal Defendants.

US Wind's arguments regarding the viability of its declaratory judgment claims (Counts IV–X) similarly fail to address the jurisdictional deficiencies of these claims. As the Court has recently held, US Wind "has identified no action from which legal consequences will flow or that could support a conclusion that US Wind faces a legally cognizable hardship." Mem. Op. 8. Thus, BOEM's intention to reconsider the COP approval cannot function as the legal adverse interest necessary to establish jurisdiction over US Wind's declaratory judgment claims. *See Aetna Life*

8

*Ins. v. Haworth*, 300 U.S. 227, 240–241 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.").

And in any event, the Court should decline jurisdiction. *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) ("Under the Declaratory Judgment Act, federal courts have discretion in deciding whether to hear a declaratory action."). The Court has now entered a scheduling order for cross-motions for summary judgment on Plaintiffs' OCSLA, NEPA, ESA, MMPA, and NHPA claims. US Wind can address any arguments on the legality of the prior COP approval in its cross motion on those claims, and the Court can adjudicate the questions contemplated in Counts VI–X through the normal course. *See Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (declining jurisdiction over duplicative claims where "a finding in favor of Plaintiffs" would mean "an *actual judgment,* rather than a mere declaration, would be entered" and thus "the Court need not issue a separate declaratory judgment on the merits of the action"). The Court should therefore dismiss US Wind's declaratory judgment claims.

## II.    US Wind fails to state viable OCSLA and due process claims.

US Wind fails to state a claim for relief under OCSLA or the due process clause. First, US Wind failed to provide the required notice under OCSLA and does not identify any immediate threat to its interests that would warrant its abandonment of the requirement. Second, US Wind cannot establish any deprivation sufficient to assert a due process claim, nor is there any "threat" constituting a deprivation.

### A.    US Wind failed to comply with OCSLA's 60-day notice requirement.

US Wind claims that it need not comply with OCSLA's mandatory notice requirement because Interior has made a decision with immediate effect on US Wind's COP approval and lease rights. Opp'n 27. But US Wind fails to identify any immediate threat to its legal interests, let alone one that would have occurred within the 60-day window mandated by OCSLA. *Id.* As outlined

9

above, Interior has not taken any action that would affect US Wind's COP approval or its interests under the lease. *Supra* 2–7; *see also* Mem. Op. 8 (holding that US Wind "identified no action from which 'legal consequences will flow' or that could support a conclusion that US Wind faces a legally cognizable hardship."). US Wind's collected cases, Opp'n 27, are all easily distinguished and involve immediate action that would take place within the 60-day notice window. US Wind's COP approval remains intact and there are no immediate threats or actions that might "detrimentally affect the plaintiffs' legal interest" before the 60-day notice period is up. *Chevron, U.S.A., Inc. v. FERC*, 193 F. Supp. 2d 54, 64–65 (D.D.C. 2002).

US Wind needed to comply with the mandatory notice period under OCSLA. 43 U.S.C. § 1349(a)(2); *Duke Energy Field Services Assets, LLC v. FERC*, 150 F. Supp. 2d 150, 154–56 (D.D.C. 2001). By failing to do so, US Wind's claim is now barred by statute, and Count IV should be dismissed.

    **B. US Wind fails to state a viable due process claim because it shows no deprivation of any property right.**

US Wind's due process claim should be dismissed because it fails to allege any deprivation of its property interests. US Wind's Opposition argues that it suffers a threatened deprivation of property sufficient to satisfy a due process claim. Opp'n 28. But Interior's reconsideration is not a "threat" to deprive US Wind of any rights granted under its COP approval or lease. And US Wind does not allege any concrete deprivation of its property rights.

*First*, US Wind argues that the reconsideration amounts to a "threat" to its property interests, *id.*, but this argument lacks merit and neither of US Wind's cited cases provide any support. In *Memphis*, the company had terminated services multiple times for disputed nonpayment, and respondents claimed the threat of another termination constituted a due process claim. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 5–6, 11 (1978). The Court held that "[b]ecause petitioners may terminate service only 'for cause,' respondents assert a legitimate claim of

10

entitlement within the protection of the Due Process Clause." *Id.* at 11–12. The company demonstrated a history of terminating service without the required showing of cause, and the threat of another such violation was sufficient for respondents to assert a due process claim. *Snider* also involved repeated deprivations of due process procedures. *Snider Intern. Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 419 (D. Md. 2012). Accordingly, the Court found that plaintiffs who did not avail themselves of those procedures could still demonstrate an injury sufficient for standing purposes due to the threatened deprivation. *Id.* at 423–24. Both cases involved an explicit, repeated threat to deprive plaintiffs of their property interests and are easily distinguished.

Interior, by contrast, intends to reconsider its decision to approve US Wind's COP, and the agency has the inherent statutory authority to reconsider its own past decisions. *See Fox Television Stations*, 556 U.S. at 515; *The Last Best Beef*, 506 F.3d at 340. Interior's new decision on US Wind's COP may result in a disapproval, approval, or approval with conditions, but there is no explicit "threat" to deprive US Wind of any rights under the current COP approval or lease. "US Wind may continue to develop the project under the approved COP that remains in force. It simply has made a business decision not to do so in light of the political headwinds it perceives." Mem. Op. 11. The mere possibility of harm to a property interest, at some future date, is not enough to allege a "threat" of deprivation.

*Second*, as outlined in Federal Defendants' opening brief, US Wind fails to identify any deprivation because Interior has not taken any action to withdraw, revoke, suspend, or otherwise impact US Wind's COP approval or lease. Fed. Defs.' Mot. to Dismiss 18 (Dkt. No. 105-1). To the extent that US Wind incorporates arguments raised elsewhere in its Opposition, Opp'n 28, consequential injuries, such as reputational harm or market reactions, also cannot form the basis of a due process claim. *See Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 120–21 (D.C. Cir. 2010). By failing to allege a deprivation to its property rights, US Wind's procedural due process claim fails.

11

**CONCLUSION**

For the reasons stated above and in Federal Defendants' Motion to Dismiss, US Wind's Opposition fails to establish that this Court has jurisdiction. US Wind's cross claims remain a premature challenge to an incomplete agency reevaluation. Because there is no final agency action, US Wind cannot cure its lack of standing or the unripeness of its claims. And US Wind has offered no viable argument for its failure to provide notice under OCSLA or its inability to identify a deprivation of any protected property interest. The Court should grant the Motion and dismiss US Wind's cross claims in their entirety.

Dated: December 19, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Samuel Vice*
SAMUEL VICE, Trial Attorney
CA Bar No. 324687
DEVON TICE, Trial Attorney
CA Bar No. 357918
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-514-4352 (Tice)
Email: devon.tice@usdoj.gov
Tel: 202-305-0434 (Vice)
Email: samuel.vice@usdoj.gov

BONNIE BALLARD
Trial Attorney, Maryland Bar No. 2211280027
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-1513
Fax: (202) 305-0275
Email: bonnie.m.ballard@usdoj.gov

*Attorneys for Federal Defendants*