IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **MAYOR AND CITY COUNCIL OF OCEAN CITY MARYLAND**, *et al.* | * |
| Plaintiffs/Cross-Defendants, | * |
| v. | |
| **UNITED STATES DEPARTMENT OF THE INTERIOR**, *et al.* | * Civil Action No: 1:24-cv-03111-SAG |
| Defendants/Cross-Defendants. | * |
| and | * |
| **US WIND, INC.** | |
| Defendant-Intervenor/Cross-Plaintiff | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT-INTERVENOR AND CROSS-PLAINTIFF US WIND'S SURREPLY IN RESPONSE TO FEDERAL DEFENDANTS' MOTION TO DISMISS CROSS CLAIMS**

The Government's reply introduces two discrete, related issues that have not previously been addressed in this matter. *See* ECF No. 129. The first is the relevance of this Court's decision denying US Wind's motion for preliminary injunction to the Government's pending motion to dismiss US Wind's cross claims. The second is the significance of the D.C. Circuit's recent decision to vacate *National Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025), on which this Court's preliminary injunction decision heavily relied. The Government breezes past both issues. The Court should not.

*First*, contrary to the Government's apparent assumption, the conclusions this Court reached in denying US Wind's preliminary injunction do not—and cannot—dictate dismissal on a

1

Rule 12(b)(1) motion. *See* ECF No. 129 at 2-8. A preliminary injunction is "an extraordinary and drastic remedy." ECF No. 127 at 4 (quoting *Munaf v. Green*, 553 U.S. 674, 689-690 (2008)). Because that relief "involve[s] the exercise of very far-reaching power," it is "to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). And a preliminary injunction is just that—preliminary. Relief is warranted only if the court finds "the movant is *likely to succeed* on the merits" and satisfies the other three requirements. ECF No. 127 at 4 (emphasis added).

An assessment at the preliminary injunction stage is thus necessarily tentative and not binding on this Court for purposes of the motion to dismiss. *See, e.g.*, *Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602, 619 n.11 (D. Md. 2019) ("[P]reliminary injunctions are by [their] very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by [their] for-the-time-beingness.") (quoting *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 573-574 (7th Cir. 1999)) (second and third alterations in original). Not surprisingly then, courts have generally cautioned that, even where "an inability to establish a" likelihood of success on threshold issues "requires denial of the motion for preliminary injunction," it does not mandate "dismissal of the case." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Accordingly, this and other courts regularly deny motions to dismiss even when denying motions for preliminary injunctions that raise the same issues. *See, e.g.*, *Just City, Inc. v. Bonner*, 758 F. Supp. 3d 785 (W.D. Tenn. 2024); *Advance Am. v. Federal Deposit Ins. Corp.*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017); *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 543-553 (D. Md. 2014).[1]

---

[1] *See also, e.g.*, *Tohono O'odham Nation v. United States Dep't of the Interior*, 138 F.4th 1189, 1202-04 (9th Cir. 2025) (reversing where district court "relied solely on its order denying the

This principle holds true here, where "the jurisdictional facts" underlying the question of whether there is final agency action that is ripe for review are "inextricably intertwined with those central to the merits." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In such circumstances, "a presumption of truthfulness should attach to the plaintiff's allegations" even if they are factually disputed. *Id.* at 193. So a "trial court should . . . afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.* Accordingly, rather than dismiss on threshold grounds, the court "should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)); *see generally* 5B Wright & Miller's Federal Practice & Procedure § 1349 (4th ed. 2025) (motions to dismiss under Rule 12(b) "should be granted sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the merits").

That describes this case. In its opposition to US Wind's preliminary injunction motion, the Government specifically raised ripeness and final agency action to challenge US Wind's "likelihood of success on the merits," ECF No. 106 at 5-14, and the Court addressed the issues in that context, ECF No. 127 at 5. Indeed, the question of whether ripeness and "final agency action" are satisfied here is inextricably intertwined with factual merits issues as to the validity of the Government's challenged actions with respect to the COP.

For example, those issues necessarily overlap with US Wind's allegation that the Lease and OCSLA and its implementing regulations foreclose the Government's "reconsideration" process absent compliance with specific standards and procedures the Government concedes it has not

---

preliminary injunction" in granting motion to dismiss); *Oxford House, Inc. v. Township of N. Bergen*, 158 F.4th 486, 496 (3d Cir. 2025) (reversing where district court deemed amendment futile because it had denied preliminary injunction).

3

met. *See* ECF No. 77 at 60 ¶ 83; *see also* ECF No. 122 at 12-14 (explaining that the "Government's purported 'reconsideration' procedure . . . is foreclosed by" the Lease and "OCSLA and associated regulations"), ECF No. 122 at 23 (arguing Revocation Decision is final agency action because it withdrew the "safe harbor" created by virtue of the Lease, OCSLA, and associated regulations). Whether the Government has finally adopted the Zerzan M-Opinion and decided to revoke the COP as part of a pretextual "reconsideration" process are likewise inextricably intertwined with US Wind's claims that such action is arbitrary and capricious, contrary to law, and pretextual under the APA. *See* ECF No. 77 at 56-57 ¶¶ 62-63 (Count I, alleging that the Revocation Decision is unsupported, conclusory departure from the Government's prior position, which fails to account for US Wind's significant reliance interests); *id.* at 57-58 ¶¶ 68-71 (Count II, alleging that the Revocation Decision is a result of a "coordinated and targeted campaign" of political pressure); *see also New York v. Trump*, No. 25-cv-11221, 2025 WL 3514301 at *7-9 (D. Mass. Dec. 8, 2025) (agencies' application of Wind Memo was final where it indisputably altered the legal status quo for processing "applications for leases, permits, and other authorizations necessary for wind project development," with an indefinite period of reconsideration, amounting to a "de facto suspension of the law with respect to wind energy development").[2]

US Wind should therefore be allowed to proceed with its claims at the pleadings stage—notwithstanding the Court's determination that US Wind has not yet shown a likelihood of success

---

[2] Notably, the mere fact that the Government conceded at oral argument that Section 2(a) of the Wind Memo has effectively been invalidated is insufficient. Because the ban has been vacated, US Wind is entitled to a judgment that the Federal Defendants' purported "reconsideration," which amounts to a refusal to process approvals for US Wind's Project, is unlawful. *See D.A.M. v. Barr*, 486 F. Supp. 3d 404, 416 (D.D.C. 2020) ("when a court with jurisdiction finds that the plaintiffs before it were harmed by an agency decision issued under an illegal rule, the court should vacate that wrongful decision as a remedy"); *see also* ECF No. 77 at 47 ¶ 2 (pleading that the Revocation Decision is "inextricably tied" to the Administration's broader anti-wind efforts).

on its claims due to ripeness and final agency action considerations. *See Kerns*, 585 F.3d at 196 (reversing dismissal of claims under Rule 12(b)(1) where jurisdictional allegations were intertwined with merits).

**Second**, and in any event, the D.C. Circuit's decision to vacate *Vought*—which this Court found to "closely resemble" the facts here—highlights that the Court's conclusion at the preliminary injunction stage that there is no final or ripe agency action should not control the Court's evaluation of the motion to dismiss. ECF No. 127 at 7-10.

*Vought* involved an appeal from a grant of a preliminary injunction. 149 F.4th at 770. As relevant here, that decision turned on whether a "putative" final agency decision to shut down the Consumer Financial Protection Bureau could be "infer[red]" from "various discrete 'actions.' " *Id.* at 782. The panel thought not, because plaintiffs did not "point to [a] definitive statement regarding an agency shutdown"—so even if the government had made "an abstract decision to shut down the Bureau," that "decision was not final." *Id.* at 785-786. And the panel concluded that plaintiffs would not suffer "unusual hardship from postponing review" because they could easily "return[] to court when the controversy ripens" and the Bureau "denied them a discrete service." *Id.* at 786.

Judge Pillard disagreed. Her forceful dissent stressed the "remarkable" nature of the panel's definitive-statement requirement—particularly where the government deliberately avoided "the ordinary tools of openly reasoned and vetted agency decision making" in implementing a "concerted and coordinated campaign" to carry out a "goal stated publicly by the President and his subordinates," and the parties had not yet conducted "discovery into the internal machinations of Bureau leadership." *Id.* at 806, 816-817 (Pillard, J., dissenting). In her view, there was "no plausible reason" to allow agencies to "immunize" their actions from judicial review merely by "obfuscat[ing]" them. *Id.* at 816; *see id.* at 820 (expressing concern that "an agency may . . .

completely evade judicial review of its activities . . . if it can just keep its . . . plans non-public until they are *fait accompli*").

The majority decision in *Vought* is no longer good law. On December 17, 2025, the D.C. Circuit granted the plaintiffs' petition for rehearing en banc and vacated the panel's decision. *National Treasury Emps. Union v. Vought,*, No. 25-5091, 2025 WL 3659406, at *1 (D.C. Cir. Dec. 17, 2025) (per curiam). As the Government begrudgingly admits in a footnote, the panel's decision thus has "no precedential value." ECF No. 129 at 3 n.2 (quoting *United States v. Weathers*, 186 F.3d 948, 953 n.4 (D.C. Cir. 1999)). Yet the Court's preliminary injunction decision deemed *Vought* "instructive," ECF No. 127 at 9, and relied on that case in concluding that the Suess Declaration reflects only "an abstract"—and thus non-final—decision" because, "as in *Vought*, agency consideration remains ongoing," *id.* at 8. Echoing *Vought*, the Court further found that, even though forcing US Wind to "wait to see if its fears come to pass" could have "dire" consequences, there was "nothing unusual about such a requirement." *Id.* at 9 (quotation marks and brackets omitted). In light of *Vought*'s vacatur, however, the Court cannot rely on that same reasoning at the motion to dismiss stage. *A fortiori*, at the pleadings stage, US Wind's allegations "that BOEM has already decided that it will revoke the COP" should be sufficient to establish a final agency action and to withstand dismissal. ECF No. 127 at 8.

The Government's actions present the very concerns raised by the *Vought* dissent. Prior to US Wind's deadline for adding its cross claims as of right, the Government had announced its intention to seek vacatur and remand but had not yet revealed its purported grounds for doing so. Then, after US Wind filed its cross claims, the Government provided a sworn statement of a high-level official, with no other administrative record, to support its decision to vacate the COP approval, indicating for the first time that it would retroactively subject US Wind to a new, binding

6

legal opinion of the Solicitor; that there were deficiencies regarding the Project's effects analysis; and that it would reconsider a "new COP decision" for an indefinite period of time. ECF No. 81-1 ¶¶ 10, 18. These actions support finding that US Wind has adequately pled that the Government has engaged in actions reviewable by this Court, notwithstanding the absence of a formal, officially-issued agency statement vacating the COP. There is "no plausible reason" for allowing the Government to evade review of those actions, taken pursuant to the President's "concerted and coordinated [anti-wind] campaign," simply because the government deliberately eschewed ordinary decision-making tools—particularly because US Wind has not yet had the benefit of "discovery into [BOEM's] internal machinations." *Vought*, 149 F.4th at 806, 816-817 (Pillard, J., dissenting).

In any event, insofar as the Court determines that the cross claims do not currently plead sufficient detail as to finality and ripeness, US Wind seeks leave to amend to provide that detail. *See* ECF No. 90 at 21 (seeking "leave to amend," "[t]o the extent the Court determines there is any deficiency in US Wind's allegations"); *see, e.g.*, *Habash v. City of Salisbury*, No. 04-cv-2338, 2007 WL 9780388, at *1 (D. Md. Aug. 8, 2007) ("Courts in this circuit and elsewhere have consistently held that leave to amend should be granted absent bad faith, undue prejudice to the opposing party, or futility of amendment.") (quotation marks omitted). Amendment is particularly appropriate here in light of several factual developments post-dating US Wind's Cross Claims, including: the filing of the *Suess* declaration and the Government's motion to remand with vacatur, ECF Nos. 81, 81-1; and the decision in *New York v. Trump*, 2025 WL 3514301 at *7-9, which found the indefinite pause and alteration of the legal status quo with respect to wind projects to be final agency action. US Wind would also seek leave to conduct expedited discovery on these issues, which are deeply intertwined with the merits. *See Kerns*, 585 F.3d at 196 (reversing dismissal of claims under Rule

7

12(b)(1) and remanding for discovery where jurisdictional allegations were intertwined with merits).

For these reasons, and those in US Wind's prior briefing, the Court should deny the Government's motion to dismiss US Wind's cross claims.

Dated: December 22, 2025

Respectfully submitted,

By: /s/ *Toyja E. Kelley*
Toyja E. Kelley, Sr. (D. Md. Bar No. 26949)
Emily Huggins Jones (*pro hac vice*)
Gregory L. Waterworth (D. Md. Bar No. 20938)
**TROUTMAN PEPPER LOCKE LLP**
701 8th Street, N.W., Suite 500
Washington, D.C. 20001
Telephone: (202) 220-6900
Facsimile: (202) 220-6945
toyja.kelley@troutman.com
emily.hugginsjones@troutman.com
greg.waterworth@troutman.com

Hilary Tompkins (*pro hac vice*)
Sean Marotta (*pro hac vice*)
**HOGAN LOVELLS US LLP**
555 13th Street N.W.
Washington, D.C. 20004
Telephone: (202) 637-5617
hilary.tompkins@hoganlovells.com
sean.marotta@hoganlovells.com

David Newmann (*pro hac vice*)
**HOGAN LOVELLS US LLP**
1735 Market St., 23d Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
david.newmann@hoganlovells.com

***Attorneys for Defendant-Intervenor and Cross Claim Plaintiff US Wind, Inc.***